Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Robert K. Friedl (SBN 134947)
Robert.Friedl@capstonelawyers.com
Tarek H. Zohdy (SBN 247774)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Capstone Law APC
1840 Century Park East, Suite 450
Los Angeles, California 90067
Telephone:   (310) 556-4811
Facsimile:    (310) 943-0396

Attorneys for Plaintiff Irene Fernandez

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA—SOUTHERN DIVISION

| | |
|---|---|
| IRENE FERNANDEZ, individually, and on behalf of other members of the general public similarly situated,<br><br>          Plaintiffs,<br><br>     vs.<br><br>HOME DEPOT, U.S.A., Inc., a Delaware corporation,<br><br>          Defendant. | Case No.: SACV-13-648-DOC (RNBx)<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  May 11, 2015<br>Time:  8:30 a.m.<br>Place:  Courtroom 9D<br><br>Complaint Filed: April 24, 2013 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 11, 2015 at 8:30 a.m., in Courtroom 9D of the above-captioned Court, located at 411 West Fourth Street, Santa Ana, CA 92701-4516, the Honorable David O. Carter presiding, Plaintiff Irene Fernandez, on behalf of herself and all others similarly situated, will, and hereby does, move this Court to:

1.      Preliminarily approve the settlement described in the Settlement Agreement, attached as Exhibit A to the Declaration of Jordan L. Lurie;

2.      Conditionally certify the Settlement Class;

3.      Approve distribution of the proposed Notice of Class Action Settlement and Claim Form to the Settlement Class;

4.      Appoint Plaintiff Irene Fernandez as the Class Representative;

5.      Appoint Capstone Law APC as Class Counsel;

6.      Appoint a claims administrator selected by Home Depot; and

7.      Set a hearing date and briefing schedule for final settlement approval and Plaintiff's fee and expense application.

This Motion is based upon:  (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement; (3) the Declaration of Robert K. Friedl; (4) the Settlement Agreement; (5) the Notice of Class Action Settlement; (6) the Claim Form; (7) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; (8) the records, pleadings, and papers filed in this action; and (9) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on April 1, 2015.

1     Dated:  April 20, 2015                Respectfully submitted,

2                                         Capstone Law APC

3

4                       By: _____

                                      Jordan L. Lurie

5                                      Robert K. Friedl

                                     Tarek H. Zohdy

6                                      Cody R. Padgett

7                       Attorneys for Plaintiff Irene Fernandez

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

3   I.    INTRODUCTION ............................................................................. 1

4   II.   FACTS AND PROCEDURE ............................................................ 3

5       A.   Overview Of The Litigation .................................................... 3

6       B.   Plaintiff's Investigation And Discovery ................................. 5

7       C.   The Parties Engaged In Arm's-Length Settlement Negotiations ................. 6

8       D.   Material Terms Of The Proposed Class Action Settlement ........................ 6

9           1.   The Proposed Settlement Class ........................................... 6

10           2.   The Settlement Benefits ...................................................... 7

11           3.   A Narrow Release ............................................................... 7

12           4.   A Consumer-Friendly Claims Process ............................... 8

13           5.   The Proposed Notice to the Settlement Class ..................... 9

14           6.   Proposed Attorneys' Fees, Litigation Expenses, and Service

15                 Awards ............................................................................... 9

16   III.  ARGUMENT ................................................................................ 10

17       A.   The Court Should Grant Preliminary Approval of the Class

18          Settlement ............................................................................. 10

19           1.   The Standard for Preliminary Approval Has Been Met ..... 10

20           2.   The Settlement Is Reasonable In Light of the Strengths and

21                 Weaknesses of Plaintiff's Case ......................................... 12

22           3.   The Risk, Expense and Complexity of the Case, Including the

23                 Risk of Decertification, Favor Approval of the Settlement ............... 15

24           4.   The Amount Offered In Settlement Supports Approving the

25                 Settlement .......................................................................... 16

26           5.   The Settlement Was Finalized After a Thorough Investigation ......... 17

27           6.   The Views of Experienced Counsel Should Be Accorded

28                 Substantial Weight ............................................................ 18

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

B.  Conditional Class Certification Is Appropriate for Settlement
Purposes................................................................................ 19

1.  The Proposed Class Meets the Requirements of Rule 23.................. 19

2.  The Proposed Class Is Sufficiently Numerous .................................. 19

3.  There are Questions of Law and Fact that Are Common to the
Class .................................................................................. 20

4.  Plaintiff's Claims Are Typical of the Proposed Settlement Class...... 20

5.  Plaintiff and Plaintiff's Counsel Will Adequately Represent the
Interests of the Proposed Settlement Class ......................................... 21

6.  Common Issues Predominate Over Individual Issues ........................ 21

7.  Class Settlement Is Superior to Other Available Means of
Resolution........................................................................... 22

C.  The Proposed Class Notice Adequately Informs Settlement Class
Members About the Case and Proposed Settlement................................... 23

IV.  CONCLUSION .................................................................... 24

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Acosta v. Trans Union*, 243 F.R.D. 377 (C.D. Cal. 2007) ...........................................11

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) .................................... 19, 23

*Armstrong v. Board of School Directors*, 616 F.2d 305 (7th Cir. 1980)....................10

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001)........................................................21

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010) .................... 15, 22

*Churchill Village v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ....................... 12, 19, 24

*Edwards v. First Am. Corp*, 610 F.3d 514 (9th Cir. 2010) .........................................14

*Eisen v. Porsche Cars North American, Inc.*,
  Case No. 11-09405, 2014 U.S. Dist. LEXIS 14301,
  2014 WL 439006 (C.D. Cal. Jan. 30, 2014) .................................................... 18, 19

*Franklin v. Kaypro*, 884 F.2d 1222 (9th Cir. 1989) .................................................10

*Grant v. Capital Mgmt. Servs., L.P.*,
  No. 10-2471-WQH, 2014 U.S. Dist. LEXIS 29836
  (S.D. Cal. Mar. 5, 2014) ...........................................................................................11

*Gribble v. Cool Transps., Inc.*, 2008 U.S. Dist. LEXIS 115560
  (C.D. Cal. 2008)...........................................................................................................11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)...................... 10, 20, 21, 22

*In re M.L. Stern Overtime Litig.*, No. 07-0118-BTM, 2009 U.S. Dist.
  LEXIS 31650 (S.D. Cal. Apr. 13, 2009)....................................................................10

*In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)......................17

*In re Netflix Privacy Litig.*, No. 5:11-CV-00379-EJD, 2013 U.S. Dist.
  LEXIS 37286 (N.D. Cal. Mar. 18, 2013)...................................................................11

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) .........................................18

*In re Portal Software Inc. Sec. Litig.,* No. C-03-5138 VRW, 2007 U.S.
  Dist. LEXIS 88886 (N.D. Cal. Nov. 26, 2007)........................................................16

1   *In re Toys 'R' Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438
2       (C.D. Cal. 2014) .................................................................................... 13, 15, 17
3   *Johansson-Dohrmann v. CBR Sys.*, No. 12-1115-MMA,
4       2013 U.S. Dist. LEXIS 103863 (S.D. Cal. July 24, 2013) ..................................... 11
5   *Lane v. Facebook, Inc.*, No. 08-3845-RS,
6       2010 U.S. Dist. LEXIS 24762 (N.D. Cal. Mar. 17, 2010) .................................... 16
7   *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998) .............. 16, 17
8   *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246 (11th Cir. 2003) ........................... 15
9   *Long v Tommy Hilfiger U.S.A.*, 671 F.3d 371(3d Cir. 2012) ..................................... 13
10  *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718 (9th Cir. 2007) .................... 21
11  *Marisol v. Giuliani*, 126 F.3d 372 (2nd Cir. 1997) ................................................... 21
12  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ....................... 24
13  *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523
14      (C.D. Cal. 2004) .................................................................................................... 12
15  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .......... 12, 16
16  *Parra v. Bashas,' Inc.*, 536 F.3d 975 (9th Cir. 2008) ............................................... 20
17  *Peikoff v. Paramount Pictures Corp.*, No. 15-cv-00068-VC,
18      Dkt. No. 13 (N.D. Cal. Mar. 25, 2015) ........................................................... 14, 15
19  *Ramirez v. Trans Union, LLC*, 301 F.R.D. 408 (N.D. Cal. 2014) ....................... 20, 22
20  *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014) ............................................... 22
21  *Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) ................................................. 20
22  *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) .......................... 16
23  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) ................................................. 13
24  *Satchell v. Fed. Express Corp.*, 2007 U.S. Dist. LEXIS 99066
25      (N.D. Cal. 2007) ................................................................................................... 11
26  *Serna v. Big A Drug Stores, Inc.*, No. 07-0276 CJC,
27      2007 U.S. Dist. LEXIS 82023 (C.D. Cal. Oct. 9, 2007) ........................................ 14
28  *Shlahtichman v 1-800 Contacts, Inc.*, 615 F.3d 794 (7th Cir. 2010) ......................... 13

*Stanton v. Boeing Company*, 327 F.3d 938 (9th Cir. 2003) ..........................................10

*Syed v. M-I LLC*, No. 1:14-742-WBS, 2014 U.S. Dist. LEXIS 150748

 (E.D. Cal. Oct. 22, 2014) ................................................................ 14, 15

*Torres v. Pet Extreme*,

 No. 13-01778-LJO, 015 U.S. Dist. LEXIS 5136

 (E.D. Cal. Jan. 15, 2015) ............................................ 14, 15, 16, 17

*Torrisi v. Tuscson Elec.*, 8 F.3d 1370 (9th Cir. 1993)....................................12

*Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482 (E.D. Cal. 2010) .................16

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114

 (E.D. Cal. 2009) ........................................................................19

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)..............................20

*Willes v State Farm Fire & Cas. Co*., 512 F.3d 565 (9th Cir. 2008).........................13

*Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010).........................23


**FEDERAL STATUTES**

15 U.S.C. §§ 1681 *et seq* (Fair & Accurate Credit Transactions Act) ............... 2, 6, 22

15 U.S.C. §§ 1681 *et seq*. (Fair Credit Reporting Act (FCRA))......................... *passim*

Fed. R. Civ. P. 23............................................................... 19, 23, 24

Fed. R. Civ. P. 23(a) ............................................................ 19, 20

Fed. R. Civ. P. 23(a)(1) ...............................................................19

Fed. R. Civ. P. 23(a)(2) ...............................................................20

Fed. R. Civ. P. 23(a)(4) ...............................................................21

Fed. R. Civ. P. 23(b)(3) .................................................. 19, 21, 22, 23

Fed. R. Civ. P. 23(c)(2)(B) .......................................................... 23, 24

Fed. R. Civ. P. 23(e)(1) ...............................................................23

Fed. R. Civ. P. 23(e)(1)(A)...............................................................10


**STATE STATUTES**

Cal. Civ. Code § 1785.3(c) ...............................................................................3

Cal. Civ. Code § 1786.2(c) ...............................................................................3

**SECONDARY AUTHORITIES**

Manual for Complex Litigation (4th ed. 2004) ............................................. 10, 11, 19

## I.      INTRODUCTION

Plaintiff Irene Fernandez moves the Court to preliminarily approve a class action settlement with Defendant Home Depot U.S.A., Inc. ("Defendant" or "Home Depot") that confers substantial relief to all Settlement Class Members.  The Settlement Agreement submitted for the Court's approval resolves Plaintiff's claims that Home Depot violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*., by including a release of liability in two  preauthorization background disclosure forms, the "the AIMS Form" (Exhibit 1 to the Settlement Agreement) and "the 2009 Form" (Exhibit 2 to the Settlement Agreement).

Plaintiff now moves for preliminary approval of the Settlement Agreement that secures significant benefits for the Class without the delay and risks associated with trial and potential appeals.  Under the Settlement, all Settlement Class Members who do not submit valid and timely Requests for Exclusion will automatically receive a $15 Settlement Cash Payment check without having to fill out a Claim Form.  Settlement Settlement Class Members who submit a valid and timely Claim Form ("Claimants") will receive a Settlement Class Payment check in an amount between Thirty-Five Dollars ($35) and One Hundred Dollars ($100), instead of $15, depending on the claims rate as follows:  if the claims rate is below 15%, Claimants will receive a pro rata increase in their award based on the amount of funds that would have been paid had the claims rate been 15%.  Any such increase shall be capped at $100 per Claimant.  (Settlement Agreement ¶ 38.)  This two- tier approach further explained below, was negotiated by the parties with the assistance of a mediator, and guarantees a minimum payment  to everyone in the Class and allows any Class member who elects to fill out a claim form to qualify for additional payments.  Home Depot estimates that there are approximately 120,000 people in the Settlement Class.  (Declaration of Robert K. Friedl ("Friedl Decl.") ¶ 3.)

In addition to this monetary relief, Home Depot has agreed to no longer use the allegedly offending forms, and to use a background check form that complies

1    with the FCRA.  (Settlement Agreement ¶ 37.)

2         In exchange for these benefits, Settlement Class Members release  their FCRA

3    and related California law claims related to the allegedly offending pre-authorization

4    forms, including any adverse action claims.  (Settlement Agreement ¶ 47.)

5         Plaintiff has prosecuted these claims diligently for two years.  During that

6    time, Plaintiff has conducted a thorough investigation of her claims and Home

7    Depot's defenses.  As part of the investigation, Plaintiff's counsel, among other

8    things, culled through various background check forms that Home Depot used to

9    conduct background checks for over 340,000 applicants.  Plaintiff's counsel also

10   reviewed over 3,000 documents produced by Home Depot including  background

11   check policies, record retention policies, and  actual background check disclosure and

12   authorization forms signed by applicants  for employment at Home Depot during the

13   class period.  (Friedl Decl. ¶ 4.)

14        In addion, Plaintiff's counsel reviewed documents supporting Home Depot's

15   contention that its alleged violations of the FCRA and related statutes was not

16   "willful."  Finally, Plaintiff's counsel interviewed a designated Home Depot

17   representative who is familier with this case regarding the forms used by Home

18   Depot, its policies and efforts to comply with the FCRA and related statutes.  (Friedl

19   Decl. ¶ 5.)

20        Plaintiff's counsel also analyzed the case law on the FCRA, including whether

21   Home Depot "willfully failed to comply" with the FCRA's requirements (*see* 15

22   U.S.C. § 1681n(a)), as well as other types of actions, included the related Fair &

23   Accurate Credit Transactions Act, 15 U.S.C. §§ 1681 *et seq*. ("FACTA"), where

24   "willfulness" and "proof of actual injury" are frequently disputed.

25        With a full understanding of the strengths and weaknesses of her case, Plaintiff

26   engaged in arms'-length negotiations with Home Depot, finally reaching an

27   agreement following extensive negotiations during and after a mediation before the

28   Honorable Howard Wiener (Ret.).  Under Justice Wiener's guidance, the parties first

1   negotiated the settlement benefits for the class, and only after the benefits were

2   finalized did they negotiate attorneys' fees and enhancement payments.  (Friedl Decl.

3   ¶¶ 6-7.)

4           In light of the risks of continuing with this litigation, Plaintiff submits that this

5   proposed settlement, which guarantees that all Settlement Class Members will be

6   paid, is fair, reasonable, and adequate.  Accordingly, the parties respectfully request

7   that the Court enter an order (a) granting preliminary approval of the Settlement; (b)

8   certifying the proposed Settlement Class; (c) appointing Plaintiff as the Class

9   Representative; (d) appointing Capstone Law APC ("Capstone") as Class Counsel;

10  (e) approving the parties' proposed form and method of giving Settlement Class

11  Members notice of the action and the proposed Settlement; (f) directing that notice be

12  given to Settlement Class Members in the proposed form and manner[1]; and (g)

13  setting a hearing date and briefing schedule for final settlement approval and

14  Plaintiff's fee and expense application.

15  **II.    FACTS AND PROCEDURE**

16          **A.    Overview Of The Litigation**

17          Founded in 1978, Home Depot is the largest home improvement retailer in the

18  United States.  During the Class Period beginning on April 24, 2011, Home Depot

19  employed approximately 350,000 people nationwide.

20          On or about April 25, 2011, Plaintiff applied for a job with Home Depot by

21  completing an employment application.  As part of the application proces, Plaintiff

22  signed two background check authorization forms.  These forms have been

23  designated "the AIMS Form" (Exhibit 1 to the Settlement Agreement) and  "the 2009

24  Form" (Exhibit 2 to the Settlement Agreement).  Home Depot estimates that

25  approximately 120,000 other applicants signed these forms during the Class Period

26  and were the subject of background checks procured by Home Depot.[2]  (Friedl Decl.

27

28

---

[1] Home Depot is presently still taking bids for a Class Administrator.

[2] 15 U.S.C. Section 1681a(d)(1)(B), 15 U.S.C. Section 1681a(e), Cal. Civ.

¶ 3.)

The AIMS form discloses that the applicant "may be the subject of a consumer report requested by [defendant] from an outside agency, which may contain information about [applicant's] credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, and mode of living, whichever are applicable."  In addition, the AIMS form also contains the following provisions:

> I release Home Depot and/or its agents and any person or entity which provides information pursuant to this authorization from any and all liabilities, claims or lawsuits in regard to the information obtained from any and all of the above referenced sources.
>
> I further agree that the giving of false, misleading or incomplete information either on my employment application or this form, will be grounds for the denial or termination of my employment
>
> The Home Depot is an equal opportunity employer and does not discriminate against applicants or employees with regard to race, color, gender, sexual orientation, age, religion, national origin, disability, or any characteristic protected by applicable law.  I understand that inquiries on this form which ask for my address and date of birth are for identification purposes only.  I understand that age is not considered in making employment decisions at Home Depot and that Home Depot will not have access to my date of birth unless and until a conditional offer of employment has already been made to me.

The 2009 Form similarly states that Home Depot intends to conduct a background investigation that may involve obtaining a consumer report or investigative consumer report from an outside agency.  In addition, the 2009 Form also contains the following provisions:

> I release Home Depot and/or its agents and any person or entity that information pursuant to this authorization from any and all liabilities, claims, or lawsuits in regard to the information obtained from any and all of the above referenced sources.

Code Section 1786.2(c), and Cal. Civ. Code Section 1785.3(c).

I agree that the giving of any false, misleading, or incomplete information either on my employment application or this form will be grounds for the denial or termination of employment.

Plaintiff alleges that Home Depot violated the FCRA.  Specifically, the FCRA requires that the "preauthorization" form, which discloses the employer's intent to obtain a credit report or background check on a current or prospective employee, must contain only the disclosure.  (Complaint ¶ 53.)  This means that the form may not include any extraneous information, such as a release of liability for the employer; any release must be separate from the disclosure.  According to Plaintiff, Home Depot violated the FCRA by including releases of liability in their preauthorization background and/or credit check disclosure forms.  (*Id.*)

### B.    Plaintiff's Investigation And Discovery

Prior to filing of this action, Plaintiff thoroughly investigated  her claims.  Plaintiff  also has conducted investigation and discovery after filing the action in order to prove up her claims and rebut  Home Depot's defenses.

The investigation was complicated because, during the class period, Home Depot conducted background checks on over 340,000 applicants, but only some of these background checks used the allegedly violative AIMS Form and 2009 Form.  As part of the investigation, Plaintiff's counsel reviewed over 3,000 documents produced by Home Depot in order to confirm which forms were used and by whom during the class period.  Plaintiff's counsel also reviewed Home Depot's  background check policies, record retention policies, and the actual background check disclosure and authorization forms signed by various applicants who applied for employment at Home Depot duing the class period.  (Friedl Decl. ¶ 4.)  Plaintiff's counsel also reviewed documents supporting Home Depot's contention that its alleged violations of the FCRA and related statutes was not "willful."  Finally, Plaintiff's counsel interviewed a designatied Home Depot representative who is familier with this case, the forms used by Home Depot, its policies and efforts to comply with the FCRA and related statutes.  (Friedl Decl. ¶ 5.)  Because this case turns on Home Depot's legal

defense that Settlement Class Members suffered no "actual injury" and that Home Depot's noncompliance was purportedly not "willful" under the FCRA, Plaintiff's counsel thoroughly analyzed the evolving, and often conflicting case law governing FCRA class actions, as well as law governing related statutes such as FACTA.  All of this  review and investigation allowed Plaintiff's counsel to structure a settlement that provides benefits directly to the persons who were required to use the violative forms. (Friedl Decl. ¶ 13.)

### C.    The Parties Engaged In Arm's-Length Settlement Negotiations

The proposed Settlement was the culmination of protracted discussions between the parties following a thorough analysis of the pertinent facts and law at issue.  On December 4, 2013, the parties attended a mediation in San Diego conducted by the Honorable Howard B. Wiener.  (Friedl Decl. ¶ 6.)  In advance of the mediation, the parties submitted mediation briefs setting forth their positions. (*Id.*)  Although the parties did not agree to final terms at the mediation, counsel for the parties continued to engage in settlement discussions.  (*Id.*)

Following protracted negotiations, the parties, with the assistance of Justice Wiener, were able to reach an agreement on all material terms of the proposed relief to the Class.  (Friedl Decl. ¶ 7.)  Only after the parties had reached this agreement did they negotiate attorneys' fees, costs, and incentive awards.  (*Id.*)  Ultimately, the parties reached an agreement on these terms as well, formalizing all terms in the Settlement Agreement.  (*Id.* ¶ 8; Exh. A.)

### D.    Material Terms Of The Proposed Class Action Settlement

### 1.    The Proposed Settlement Class

Settlement Class Members consists of all persons who, between April 24, 2011 to May 11, 2015, applied for employment with Home Depot and executed the AIMS form or the 2009 Form and do not opt-out of the settlement.  (Settlement Agreement ¶¶ 29, 35.)

### 2.    The Settlement Benefits

Under the Settlement, all Settlement Class Members who do not submit valid and timely Requests for Exclusion will receive a $15 Settlement Cash Payment check without having to fill out a Claim Form.  Settlement Class Members who submit a valid and timely Claim Form ("Claimants") will receive a Settlement Cash Payment check in an amount between Thirty-Five Dollars ($35) and One Hundred Dollars ($100), instead of $15, depending on the claims rate as follows:  if the claims rate is below 15%, Claimants will receive a pro rata increase in their award based on the amount of funds that would have been paid had the claims rate been 15%.  Any such increase shall be capped at $100 per Claimant.

In other words, each class member gets $15 automatically even without submitting a claim form, for a total minimum payout of $1.8 million (120,000 class members x $15=$1.8M).  If 15% of the class (or 18,000 claimants) submit claim forms, those claimants will get $35 each, instead of $15, for a total additional amount of $630,000.  This is the minimum additional amount that Home Depot agrees to pay, even if the percentage of class members who submit claims falls below 15%.  If less than 15% of the class submits claims, their pro rata recovery increases, up to a maximum of $100 per claimant.  For example, if  7% of the estimated 120,000 class members (i.e. 8,400 class members) timely return claim forms, they would share $630,000 (15% of 120,000 x $35) and receive $75 each ($630,000 ÷ 8,400).    (Settlement Agreement ¶ 28.  *See* Friedl Decl. ¶ 10.)  If 6,300 class members or less submit claims forms, they would each receive $100.  ($630,000 ÷ $100 max. per Claimant = 6,300 Claimants.)

In addition to this monetary relief, Home Depot has agreed to no longer use the offending forms, and to use a background check form that complies with the FCRA.  (Settlement Agreement ¶ 37.)

### 3.    A Narrow Release

In exchange for benefits and for other good and valuable consideration,

Settlement Class Members who have not timely and properly opted out of the settlement will execute a release of claims that the Class has arising out of or relating to the facts alleged or asserted in the operative Complaint. This includes the following:

> (a) any claim for an alleged violation of any provision of the Fair Credit Reporting Act, 15 U.S.C. section 1681, *et seq.*, the California Consumer Credit Reporting Agencies Act, California Civil Code section 1785, *et seq.*, the California Investigative Consumer Reporting Agencies Act, California Civil Code section 1786, *et seq.*, California Business and Professions Code section17200, or any comparable provision of federal, state or local law in any way relating to or arising out of the employment application process, including the procurement of, use of, disclosure of intent to procure, or authorization to procure or use a consumer report, investigative consumer report, credit check, background check, criminal history report, reference check or similar report; and (b) any claim for an alleged violation of any adverse action requirements of the Fair Credit Reporting Act, 15 U.S.C. section 1681, *et seq.*, including, without limitation, 15 U.S.C. section 1681(b)(3)(A), the California Consumer Credit Reporting Agencies Act, California Civil Code section 1785, *et seq.*, the California Investigative Consumer Reporting Agencies Act, California Civil Code section 1786, *et seq.*, California Business and Professions Code section 17200, or any comparable provision of federal, state or local law in any way relating to or arising out of adverse employment action in connection with the employment application process.

(Settlement Agreement ¶ 48.) This release is narrowly and appropriately tailored to the allegations asserted by Plaintiff in this Complaint. In addition, Plaintiff Fernandez will execute a broader release, releasing any known or unknown claims she may have had against Home Depot.

### 4. A Consumer-Friendly Claims Process

The parties have negotiated a default automatic payment procedure to minimize the burden to Settlement Class Members. All Settlement Class Members are entitled to receive a check for $15 without having to submit a claim form. (Settlement Agreement ¶ 28.)

To receive an additional payment in the manner described paragraph 28 of the Settlement Agreement, Settlement Class Members need only submit to a simple claims process placing minimal burdens.  Clamants will not need to supply documentary proof of employment or other verification.  Instead, for a Claim Form to be accepted as valid a Claimant need only: (a) confirm that he or she applied for employment with Home Depot during the Covered Period; (b) identify the location of the Home Depot store to which his/her application was submitted; (c) waive any "adverse action" claims under the FCRA; and (d) sign and return the completed Claim Form.  (*See* Settlement Agreement ¶¶ 14, 51; Exhibit 4.)

### 5.       The Proposed Notice to the Settlement Class

No more than forty-five (45) days after the Court has issued an order preliminarily approving this Settlement, Home Depot's Claims Administrator will mail a Court-approved Notice of Settlement and Release of Claims Form (Settlement Agreement Exhibit 3), along with a Court-approved Claim Form (Settlement Agreement Exhibit 4), to all Settlement Class Members via first-class U.S. Mail, postage prepaid and return service requested.  The Notice shall be mailed to each Settlement Class Member's last known mailing address using the U.S. Postal Service's database of verifiable mailing addresses (the CASS database) and the National Change-of-Address database.  (Settlement Agreement ¶ 51.)  The costs of administration, including the reasonable costs of the Settlement Administrator, will be paid by Home Depot.  (Settlement Agreement ¶ 46.)

### 6.       Proposed Attorneys' Fees, Litigation Expenses, and Service Awards

Plaintiff will seek an order from the Court awarding Class Counsel their reasonable attorneys' fees and out-of-pocket costs incurred in this Action in an amount no greater than Nine Hundred Ninety-Five Thousand Dollars ($995,000). Home Depot agrees not to oppose Plaintiff's motion for approval of an award of attorneys' fees and costs as up to that amount.  (Settlement Agreement ¶ 45.)

Plaintiff may apply to the Court for an award of Five Thousand Dollars ($5,000) to Plaintiff Irene Fernandez as consideration for her service as a Named Plaintiff and as consideration for the general release she is giving Home Depot.  (Settlement Agreement ¶ 39.)

## III.    ARGUMENT

### A.    The Court Should Grant Preliminary Approval of the Class Settlement

#### 1.    The Standard for Preliminary Approval Has Been Met

Class action settlements must be approved by the court, and notice of the settlement must be provided to the class before the action can be dismissed.  Fed. R. Civ. P. 23(e)(1)(A).  Court approval occurs in three steps: (1) preliminary approval of the proposed settlement, including (if the class has not already been certified) conditional certification of the class for settlement purposes; (2) notice to the class providing them an opportunity to object or exclude themselves from the settlement; and (3) a final fairness hearing concerning the fairness, adequacy, and reasonableness of the settlement.  *See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

In reviewing class action settlements, the court should give "proper deference to the private consensual decision of the parties."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  This reflects the longstanding policy in favor of encouraging settlement of class action suits, as "[l]itigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. . . .  The economics of litigation are such that pre-trial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process."  *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989).

In the preliminary approval stage, the Court first determines whether a class exists.  *Stanton v. Boeing Company*, 327 F.3d 938, 952 (9th Cir. 2003).  Then, the Court evaluates "whether the settlement is within the range of possible approval, such

that there 'is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.'" *In re M.L. Stern Overtime Litig.*, No. 07-0118-BTM, 2009 U.S. Dist. LEXIS 31650, at *10 (S.D. Cal. Apr. 13, 2009) (quoting *Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980)); *see also, Acosta v. Trans Union*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.") (emphasis in original).  In other words, the Court makes only a preliminary determination of the settlement's fairness, reasonableness, and adequacy, granting preliminary approval unless the settlement terms are so unacceptable that a formal fairness hearing would be a waste of time.  *See* Manual for Complex Litigation § 21.632.

At the outset, the fairness and reasonableness of a settlement agreement is presumed "where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel."  *In re Netflix Privacy Litig.*, No. 5:11-CV-00379-EJD, 2013 U.S. Dist. LEXIS 37286, at *11 (N.D. Cal. Mar. 18, 2013).  This Settlement is the product of arms'-length negotiations conducted over many months, with both sides agreeing to the final terms after mediating with the Honorable Howard B. Wiener, a distinguished mediator respected by California courts.[3]  "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."  *Satchell v. Fed. Express Corp.*, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. 2007).  Thus, this non-

---

[3] *See*, *e.g.*, *Johansson-Dohrmann v. CBR Sys.*, No. 12-1115-MMA, 2013 U.S. Dist. LEXIS 103863, at **12-22 (S.D. Cal. July 24, 2013) (crediting Judge Wiener's efforts and approving a class action settlement); *see also Grant v. Capital Mgmt. Servs., L.P.*, No. 10-2471-WQH, 2014 U.S. Dist. LEXIS 29836 (S.D. Cal. Mar. 5, 2014) (finding that Judge Wiener's involvement as a mediator "is a factor weighing in favor of a finding of non-collusiveness").

1    collusive Settlement is entitled to "a presumption of fairness." *Gribble v. Cool*
2    *Transps., Inc.*, 2008 U.S. Dist. LEXIS 115560, at *26 (C.D. Cal. 2008).

3          In addition, the Court may consider some or all of the following factors in
4    evaluating the reasonableness of a settlement: the extent of discovery completed and
5    the stage of proceedings; the strength of the plaintiff's case and the risk, expense,
6    complexity, and likely duration of further litigation; the risk of maintaining class
7    action status throughout trial; the amount offered in settlement; and the experience
8    and views of counsel. *See Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th
9    Cir. 2004). "Under certain circumstances, one factor alone may prove determinative
10   in finding sufficient grounds for court approval." *Nat'l Rural Telecom. Coop. v.*
11   *DIRECTV, Inc.*, 221 F.R.D. 523, 525-526 (C.D. Cal. 2004) (citing *Torrisi v. Tuscson*
12   *Elec.*, 8 F.3d 1370, 1376 (9th Cir. 1993)).

13                **2.    The Settlement Is Reasonable In Light of the Strengths and**
14                        **Weaknesses of Plaintiff's Case**

15         "An important consideration in judging the reasonableness of a settlement is
16   the strength of the plaintiffs' case on the merits balanced against the amount offered
17   in the settlement." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221
18   F.R.D. 523, 525-26 (C.D. Cal. 2004). In assessing the strength of the plaintiff's case
19   and the probability for success, "the district court's determination is nothing more
20   than an amalgam of delicate balancing, gross approximations, and rough justice."
21   *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)
22   (internal quotation omitted). There is "no single formula" to be applied, but the court
23   may presume that the parties' counsel and the mediator arrived at a reasonable range
24   of settlement by considering Plaintiff's likelihood of recovery. *Rodriguez v. West*
25   *Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

26         Here, there is no dispute that Home Depot used forms that included both the
27   disclosure form and a release of liability on one document. Plaintiff contends that
28   Home Depot's use of this document in employment applications facially violates the

1  FCRA, which provides, in relevant part:

> Except as provided in subparagraph (B), a person may
> not procure a consumer report, or cause a consumer
> report to be procured, for employment purposes with
> respect to any consumer, unless—(i) *a clear and
> conspicuous disclosure has been made in writing* to
> the consumer at any time before the report is procured
> or caused to be procured, *in a document that consists
> solely of the disclosure*, that a consumer report may be
> obtained for employment purposes; and (ii) that
> consumer has authorized in writing (which
> authorization may be made on the document referred to
> in clause (i)) the procurement of the report by that
> person.

15 U.S.C. §1681b(b)(2)(A)(i) (emphasis added).

However, the analysis does not end there.  Plaintiff must also prove that the violation was "willful" under 15 U.S.C. § 1681n(a).  In *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-59 (2007), the United States Supreme Court explained that "willful" applies not only to "knowingly" violating the FCRA, but to actions that constitute a "reckless disregard of statutory duty."  *See also Willes v State Farm Fire & Cas. Co.*, 512 F.3d 565, 566 (9th Cir. 2008) (applying the "reckless disregard" standard).  Although *Safeco* clarified that a plaintiff need not establish that defendant "knowingly and intentionally" committed the violations, the Court left room for defendants to claim "reasonable construction" or even "careless construction" of the Act as a defense.  *See*, *e.g.*, *Shlahtichman v 1-800 Contacts, Inc.*, 615 F.3d 794 (7th Cir. 2010) (holding that a defendant was not liable for statutory damages because the violation arose from a "reasonable construction" that the truncation requirement of § 1681c(g) was inapplicable to email receipts);  *Long v Tommy Hilfiger U.S.A.*, 671 F.3d 371(3d Cir. 2012) (holding that defendant were not liable under the FCRA because their practice was merely a "careless interpretation" of the law and is not a "willful" violation).

The availability of these defenses to Home Depot, coupled with Plaintiff's burden to show that Home Depot engaged in "reckless disregard of statutory duty,"

make it challenging for Plaintiff to prove ultimate liability. *See In re Toys 'R' Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 451 (C.D. Cal. 2014) (finding that the "strength of plaintiff's case" factor "weighs in favor of settlement" where "willfulness" under FCRA is a triable issue); *see also Torres v. Pet Extreme*, No. 13-01778-LJO, 2015 U.S. Dist. LEXIS 5136, *13 (E.D. Cal. Jan. 15, 2015) (Findings & Rec. of Mag. Judge) ("Given the uncertainty of litigating this issue of willfulness [under 15 U.S.C. §1681n]…[this] weighs in favor of settlement").

Indeed, two California district courts recently dismissed similar claims brought by other plaintiffs. *See Peikoff v. Paramount Pictures Corp.*, No. 15-cv-00068-VC, Dkt. No. 13 (Order Granting Defendant's Motion to Dismiss), *2 (N.D. Cal. Mar. 25, 2015) (finding that employee's inclusion of a liability waiver provision in an FCRA disclosure is not willful and dismissing claim); *Syed v. M-I LLC*, No. 1:14-742-WBS, 2014 U.S. Dist. LEXIS 150748, **8-10 (E.D. Cal. Oct. 22, 2014) (same). These courts rejected that facial violations alone could merit liability under the FCRA, holding that a defendant cannot be found to have "plausibly" acted in reckless disregard of a statutory duty "even if inclusion of the [waiver] in [defendant's] disclosure form did not comply with a strict reading of 15 U.S.C. §1681b(b)(2)'s requirement that the document consists solely of the disclosure and authorization." *Peikoff*, at *2; *see also Syed*, 2014 U.S. Dist. LEXIS 150748, at *9 (finding that defendant's understanding of the FCRA as not barring the inclusion of a waiver on the disclosure form is "not objectively unreasonable" and dismissing claim with prejudice). As some courts have categorically rejected the theory of liability advanced here, Plaintiff faces substantial risk of a complete loss in this case.

Moreover, the parties dispute whether or not Plaintiff must prove that class members suffered "actual injury" notwithstanding statutory noncompliance. Although the Ninth Circuit has held that a plaintiff alleging a statutory violation will satisfy Article III standing (*see Edwards v. First Am. Corp*, 610 F.3d 514, 517 (9th Cir. 2010)), Plaintiff may face a more difficult task in later stages of litigation. Some

courts have refused to grant class certification for non-injury statutory violations the grounds that liability "would be enormous and completely out of proportion to any harm suffered by the plaintiff." *Serna v. Big A Drug Stores, Inc*., No. 07-0276 CJC, 2007 U.S. Dist. LEXIS 82023, *10 (C.D. Cal. Oct. 9, 2007) (quoting *London v. Wal-Mart Stores, Inc*., 340 F.3d 1246, 1255 n.5 (11th Cir. 2003)).  While the Ninth Circuit clarified that such matters are properly considered at the merits stage, the court also observed that the district court may have the power to reduce the amount in penalties as "constitutionally excessive" even if the plaintiff were to prevail.  *See Bateman v. Am. Multi-Cinema, Inc*., 623 F.3d 708, 723 (9th Cir. 2010).

In light of the challenges Plaintiff faces moving forward, the proposed Settlement represents a fair and adequate resolution of these claims.

### 3.        The Risk, Expense and Complexity of the Case, Including the Risk of Decertification, Favor Approval of the Settlement

While this case is not factually complex, the uncertain legal landscape creates a substantial risk of proceeding to certification and beyond.  Even if Plaintiff were to prevail in certification, the costs for both parties would mount (including the costs of sending notice to 120,000+ class members), and Plaintiff would face "substantial risk of incurring the expense of a trial without any recovery," given the lack of actual injury to class members.  *Toys 'R' Us FACTA Litig*., 295 F.R.D. at 451.  As *Peikoff* and *Syed* demonstrate, Plaintiffs' claims, much of which rest on a showing of technical violations, have faced judicial resistance in some courts, resulting in a judgment on the pleadings or summary judgment.  On the other hand, Home Depot faces catastrophic liability if Plaintiff prevails entirely.  This type of "all-or-nothing prospect weighs in favor of approval." *Id*. at 452.

Furthermore, only recently was there substantial litigation on the FCRA, and litigants face a greater chance of changes in case law or statutory enactments that will eliminate liability.  *See Torres*, 2015 U.S. Dist. LEXIS 5136, at *14 (describing an FCRA amendment in 2008 that insulated merchants from liability on printed

expiration date on a receipt).  Plaintiff thus faces additional "risk that an opinion could issue changing the legal landscape in this relatively new area of statutory law," which favors settlement.  *Id.*  And even if Plaintiff were to succeed in certifying the class, the "risk that a class action may be decertified at any time generally weighs in favor of settlement."  *Lane v. Facebook, Inc.*, No. 08-3845-RS, 2010 U.S. Dist. LEXIS 24762, *4 (N.D. Cal. Mar. 17, 2010) (citing *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 966 (9th Cir. 2009)).

Ultimately, in considering the risks of litigation, "a court may consider the vagaries of litigation of immediate recovery by way of compromise to the mere possibility of relief, after protracted and expensive litigation."  *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (internal quotations omitted).  Here, the Settlement delivers immediate recovery for all Settlement Class Members and avoids the risks and expenses of protracted litigation, including potential interlocutory appeals and an appeal after a trial.  This factor supports approving the Settlement.  *See In re Portal Software Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886, *3 (N.D. Cal. Nov. 26, 2007) (recognizing that the inherent risks of proceeding to… trial and appeal also support the settlement).

### 4.     The Amount Offered In Settlement Supports Approving the Settlement

The Ninth Circuit instructs that "[t]he proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators."  *Officers for Justice*, 688 F.2d at 625 (emphasis in original).  Rather, "the very essence of a settlement is compromise."  *Id.* at 624.  Thus, "the fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."  *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998).

The FCRA provides statutory damages of not less than $100 and not more

than $1,000 for a willful violation.  15 U.S.C. § 1781n(a)(1)(A).  However, without actual injury, "it is unlikely that the class members would receive maximum statutory damages for the conduct at issue."  *Torres*, 2015 U.S. Dist. LEXIS 5136, at *15.  The proposed recovery for Settlement Class Members—a minimum of $15 for non-Claimants and a minimum of $35, with a potential recovery of $100, for each Claimant —is substantial.  The Claimants could recover a similar amount even if Plaintiff prevails at trial, and they now do so without the risk of further litigation.  Under the most conservative estimate, where a Claimant ends up recovering $35, the recovery still represents 35% of the prossible $100 recovery.  *See Toys 'R' Us FACTA Litig.*, 295 F.R.D. at 454 (finding that 5% to 30% of the potential $100 recovery under the FCRA is fair and adequate); *see also, In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding a settlement that paid plaintiffs one-sixth of the potential recovery to be fair and adequate).  As all Settlement Class Members will receive a substantial monetary recovery without the risk of further litigation, the amount offered is fair and adequate relief.

Indeed, the Settlement, is superior to other settlements recently approved by California district courts involving similar claims since Settlement Class Members here will receive actual cash, rather than coupons or in-store gift cards.  *See*, *e.g*., *Torres*, 2015 U.S. Dist. LEXIS 5136, at *15-16 (gift cards to Pet Extreme of up to $45 depending on the claims rate); *Toys 'R' Us FACTA Litig.*, 295 F.R.D. at 453 (transferable vouchers ranging from $5 to $30 for use in store).  In short,"[g]iven the likelihood that plaintiff[] would have been unable to prove actual damages and the risk that [she] would have been unable to prove willfullness and recover any damages at all, […] the amount of settlement weighs in favor of settlement."  *Toys 'R' Us FACTA Litig.*, 295 F.R.D. at 454.

### 5.    The Settlement Was Finalized After a Thorough Investigation

Courts may also consider the extent of discovery and the current stage of the

litigation to evaluate whether parties have sufficient information to make an informed decision to settle the action. *See Linney*, 151 F.3d at 1239. A settlement negotiated at an earlier stage in litigation will not be denied so long as sufficient investigation has been conducted. *See Eisen v. Porsche Cars North American, Inc.*, Case No. 11-09405, 2014 U.S. Dist. LEXIS 14301, 2014 WL 439006, at *13 (C.D. Cal. Jan. 30, 2014) (finding that counsel had "ample information and opportunity to assess the strengths and weaknesses of their claims" despite "discovery [being] limited because the parties decided to pursue settlement discussions early on.").

Plaintiff engaged in extensive investigation and discovery, including reviewing thousands of documents and deposing Home Depot's designated deponent. (*See* Friedl Decl ¶¶ -5.) Based on this discovery and on their independent investigation and evaluation, Plaintiff's counsel is of the opinion that this Settlement for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate, and is in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation of this type, as well as the various defenses asserted by Home Depot.

### 6. The Views of Experienced Counsel Should Be Accorded Substantial Weight

The fact that sophisticated parties with experienced counsel have agreed to settle their dispute should be given considerable weight by courts, since "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Here, the parties achieved a settlement after a thorough review of relevant documents and informatation, as well as a rigorous analysis of the parties' claims and defenses. The expectations of all parties are embodied by the Settlement, which, as set forth above, is non-collusive, being the product of arms'-length negotiations and

1    finalized with the assistance of an experienced mediator.

2        Plaintiff was represented by experienced class action counsel possessing

3    significant experience in class action matters.  (*See* Friedl Decl. ¶¶ 11-12, Exh. C.)

4    Likewise, Home Depot's counsel, Quinn Emanuel Erquhart & Sullivan LLP, is one

5    of the preeminent litigation firms in the nation.  Thus, the parties' recommendation to

6    approve this Settlement should "be given great weight."  *Eisen v. Porsche*, 2014 WL

7    439006, at *5 (crediting the experience and views of counsel and the involvement of

8    a mediator in approving a settlement resolving automotive defect allegations).

9        Based on the satisfaction of the *Churchill* factors, the Court should find the

10    proposed Settlement to be fair and adequate.

11       **B.**    **Conditional Class Certification Is Appropriate for Settlement**

12           **Purposes**

13           **1.**    **The Proposed Class Meets the Requirements of Rule 23**

14        Before granting preliminary approval of the settlement, the Court should

15    determine that the proposed settlement class meets the requirements of Rule 23.  *See*

16    *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex

17    Litigation, § 21.632.  An analysis of the requirements of Rule 23(a) and (b)(3),

18    commonly referred to as numerosity, commonality, typicality, adequacy,

19    predominance, and superiority, shows that certification of this proposed Settlement

20    Class is appropriate.

21           **2.**    **The Proposed Class Is Sufficiently Numerous**

22        The numerosity requirement is met where "the class is so numerous that

23    joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Generally, courts

24    will find a class sufficiently numerous if it consists of 40 or more members.  *Vasquez*

25    *v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009)

26    (numerosity is presumed at a level of 40 members).  Here, the proposed Settlement

27    Class consists of applicants who applied for employment with Home Depot from

28    April 24, 2011 to May 11, 2015, and who executed the AIMS Form or the 2009

Form.  Home Depot estimates 120,000 Settlement Class Members fall within the class definition, satisfying the numerosity requirement.

### 3.    There are Questions of Law and Fact that Are Common to the Class

The second Rule 23(a) requirement is commonality, which is satisfied "if there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The operative criterion for commonality is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  The commonality requirement is "construed permissively."  *Hanlon*, 150 F.3d at 1019-1020.  Where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists."  *Parra v. Bashas,' Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008).

Here, each Class Member executed a "preauthorization" form disclosing the employer's intent to obtain a credit report or background check on a current or prospective employee that also contains a release of liability for the employer.  One single common question resolves the dispute: whether Home Depot willfully violated the law by using these forms.  Accordingly, the Court should find commonality.  *See Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 417-418 (N.D. Cal. 2014) (finding commonality on a contested certification motion where one common question resolves the issue of whether a defendant violated the FCRA by failing to include certain mandated information in the disclosure form).

### 4.    Plaintiff's Claims Are Typical of the Proposed Settlement Class

"Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'"  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F. 3d at 1020)).

"In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007). Thus, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997)).

Here, Plaintiff asserts that Settlement Class Members' claims arising from Home Depot's alleged unlawful use of the 2009 Form and the AIM Form are reasonably coextensive with the legal claims asserted by Plaintiff. Each Settlement Class Member's claims arise from the same underlying conduct—namely, Home Depot's failure to use a disclosure form free of extraneous language, in contravention of the FCRA. Plaintiff's claims are thus typical of the Class.

### 5.   Plaintiff and Plaintiff's Counsel Will Adequately Represent the Interests of the Proposed Settlement Class

Adequacy is satisfied, because "the representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4). Adequacy will be found if (1) the proposed representative plaintiff does not have conflicts of interest with the proposed class, and (2) the plaintiff is represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020. Here, Plaintiff is adequate since she has no conflict of interest with the proposed Class. In addition, Plaintiff is represented by competent counsel with deep experience in litigating class actions, and who do not have a conflict of interest with the class. (*See* Friedl Decl.¶¶ 11-12; Exh. C.) Thus, Plaintiff satisfies the adequacy prong.

### 6.   Common Issues Predominate Over Individual Issues

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, the proposed Class

is maintainable under Rule 23(b)(3), as common questions predominate over any question affecting only individual members, and class resolution is superior to other available methods for a fair resolution of the controversy. *Id.* (citing Fed. R. Civ. P. 23(b)(3)).

Courts considering whether to certify a class alleging FCRA violations have found that a FCRA claim for statutory damages "does not require a showing of actual harm when a plaintiff sues for willful violations." *Robins v. Spokeo, Inc.*, 742 F.3d 409, 412 (9th Cir. 2014). *Robins* stated that "the statutory cause of action does not require proof of actual damages, a plaintiff can suffer a violation of the statutory right without suffering actual damages." *Id.* at 413. Because proof of actual injury is not required, individualized questions do not predominate. *See Ramirez*, 301 F.R.D. at 421 (finding predominance where no actual injury is required for proving a FCRA statutory violation); *Bateman*, 623 F.3d at 719 (same, under FACTA).

Here, for purposes of settlement, the predominance test is satisfied, as the proposed Settlement makes relief available for all Settlement Class Members based solely on easily ascertainable criteria, bypassing whatever individual evidentiary and factual issues that could arise in litigation in determining liability or damages. Consequently, common questions predominate over individual issues.

### 7.   Class Settlement Is Superior to Other Available Means of Resolution

Similarly, there can be little doubt that resolving all Settlement Class Members' claims through a single class action is superior to a series of individual lawsuits. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. Indeed, the terms of the Settlement negotiated on behalf of the Class demonstrate the advantages of a collective bargaining and resolution process.

1    Furthermore, manageability at trial is not a concern in the class action

2    settlement context, "for the proposal is that there be no trial." *Amchem Products, Inc.*

3    *v. Windsor*, 521 U.S. 591, 620 (1997).  Additionally, although the benefits of the

4    Settlement negotiated on behalf  of the Class are significant, the amount of penalties

5    made available for FCRA violations, ranging from $100 to $1,000, is not nearly

6    enough to incentivize individual class members into action.  *See Wolin v. Jaguar*

7    *Land Rover N. Am.*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an

8    individual basis would be dwarfed by the cost of litigating on an individual basis, this

9    [superiority] factor weighs in favor of class certification."); *Amchem*, 521 U.S. at 617

10   ("The policy at the very core of the class action mechanism is to overcome the

11   problem that small recoveries do not provide the incentive for any individual to bring

12   a solo action prosecuting his or her rights.  A class action solves this problem by

13   aggregating the relatively paltry potential recoveries into something worth someone's

14   (usually an attorney's) labor.").  Here, the efforts and funds required to marshal the

15   type of evidence, including potentially expert testimony, to establish liability against

16   well-financed corporate defendants would also discourage Settlement Class Members

17   from pursuing litigation.

18   The superiority of proceeding through the class action mechanism is

19   demonstrable in this case.  Through the class action device, Plaintiff's counsel was

20   able to negotiate a global Settlement with Home Depot that, if approved, will provide

21   Settlement Class Members with immediate monetary relief.  As the class action

22   device provides the superior means to effectively and efficiently resolve this

23   controversy, and as the other requirements of Rule 23 are satisfied, certification of the

24   proposed Settlement Class is appropriate.

25   **C.    The Proposed Class Notice Adequately Informs Settlement Class**

26   **Members About the Case and Proposed Settlement**

27   Upon certifying a Rule 23(b)(3) class, Rule 23(c)(2)(B) requires the Court to

28   "direct to class members the best notice that is practicable under the circumstances,

including individual notice to all members who can be identified through reasonable effort." In addition, Rule 23(e)(1) requires that before a proposed settlement may be approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." The notice given "must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The parties have agreed on a notice plan that satisfies the requirements of Rule 23. (Settlement Agreement 51.) Under this plan, Home Depot will pay a claims administrator to mail notice of class certification and the proposed Settlement to all Settlement Class Members as identified in Home Depot's files and to publish notice on a website maintained by the Claims Administrator. The form of the notice to be mailed, attached as Exhibit B, includes all the content required by Rule 23(c)(2)(B), such as a description of the action and Class claims, as well as the Settlement Class Members' right to opt out of, object to, or comment on the proposed Settlement, including any application for attorneys' fees, costs, and service awards. *See Churchill Village*, 361 F.3d at 576 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (internal quotation omitted).

## IV.   CONCLUSION

The parties have negotiated a fair and reasonable settlement. Accordingly, Plaintiff moves the Court to preliminarily approve the Settlement Agreement; direct the dissemination of notice to the class as proposed; and set a hearing date and briefing schedule for final Settlement approval and Plaintiff's fee and expense application.

Dated:  April 20, 2015                    Respectfully submitted,

                                          Capstone Law APC


                                          By:/s/ Robert K. Friedl
                                          _____
                                             Jordan L. Lurie
                                             Robert K. Friedl
                                             Tarek Zohdy
                                             Cody R. Padgett

                                             Attorneys for Plaintiff Irene Fernandez