1          **UNITED STATES DISTRICT COURT**

2          **CENTRAL DISTRICT OF CALIFORNIA**

3     **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4               – – – – – – –

5    IRENE FERNANDEZ,                    )
                                         )        **CERTIFIED**
6              Plaintiff,                )
                                         )
7         vs.                           ) No. 8:13-CV-0648-DOC
                                         )      Item No. 2
8    HOME DEPOT, U.S.A., INC.,           )
                                         )
9              Defendant.                )
     _____)

10

11

12

13          REPORTER'S TRANSCRIPT OF PROCEEDINGS

14                  Hearing on Motion

15                Santa Ana, California

16               Friday, May 8, 2015

17

18

19

20

21   Debbie Gale, CSR 9472, RPR
     Federal Official Court Reporter
22   United States District Court
     411 West 4th Street, Room 1-053
23   Santa Ana, California 92701
     (714) 558-8141

24

25

DEBBIE GALE, U.S. COURT REPORTER

1    **APPEARANCES OF COUNSEL:**

2

     FOR PLAINTIFF IRENE FERNANDEZ:
3
          Jordan L. Lurie
4         Attorney at Law
          CAPSTONE LAW APC
5         1840 Centurey Park East
          Suite 450
6         Los Angeles, CA 90067
          310-556-4811
7         Jordan.Lurie@capstonelawyers.com

8
          Robert K. Friedl
9         Attorney at Law
          CAPSTONE LAW APC
10        1840 Century Park East
          Suite 450
11        Los Angeles, California 90067
          310-556-4811
12        robert.friedl@capstonelawyers.com

13

14   FOR DEFENDANT HOME DEPOT, U.S.A., INC.,:

15        Shon Morgan
          Attorney at Law
16        QUINN EMANUEL URQUHART & SULLIVAN LLP
          865 South Figueroa Street
17        10th Floor
          Los Angeles, California 90017
18        213-443-3000
          shonmorgan@quinnemanuel.com
19

20

21

22

23

24

25

1                        **I N D E X**

2    **PROCEEDINGS**                                      **PAGE**

3    Hearing on Motion for Preliminary Approval          4
       (Court's statements)
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|   |   |
|---|---|
|  | 1 |
|  | 2 |
|  | 3 |
| 08:49 | 4 |
|  | 5 |
| 08:49 | 6 |
| 08:49 | 7 |
|  | 8 |
|  | 9 |
| 08:49 | 10 |
| 08:49 | 11 |
|  | 12 |
|  | 13 |
|  | 14 |
| 08:50 | 15 |
| 08:50 | 16 |
|  | 17 |
|  | 18 |
| 08:50 | 19 |
|  | 20 |
| 08:50 | 21 |
|  | 22 |
|  | 23 |
|  | 24 |
|  | 25 |

**SANTA ANA, CALIFORNIA, FRIDAY, MAY 8, 2015**

**Item No. 2**

(8:49 a.m.)

THE COURT:  We'll call the Irene Fernandez matter, please.

Counsel, would you make your appearances.

MR. LURIE:  Good morning, Your Honor.  Jordan Lurie, Capstone Law –– with me is Robert Friedl –– for plaintiffs.

MR. MORGAN:  *(Indicates.)*

THE COURT:  Okay.  Now, for some reason in my documents, I must have left the reading –– because I don't have what I was reading on the Fernandez matter, and I wanted to read that into the record.

*(Document provided to Court by law clerk.)*

THE COURT:  Counsel, let me set the background first for the case, and then tell you a couple concerns I have, and see if we can resolve them.

First, for our record, I will repeat the fact situation:

The class action claims in this suit arise from Defendant Home Depot's allegedly illegal practices of, first, not disclosing to job applicants on a separate sheet of paper that Home Depot may pull their consumer credit reports as part of conducting a background check; instead,

1    allegedly Home Depot used background check authorization

2    forms that contained several other unrelated waivers and

3    disclosures; and, second, taking adverse employment

4    action -- not hiring or hiring at a lower pay rate --

5    against job applicants based on their credit reports without

6    first giving the individual a copy of the credit report and

7    an FCRA Summary of Rights, which was a chance to challenge

8    the correctness of the report.

9            Plaintiff alleges that the first practice violated

10   the federal Fair Credit Reporting Act -- which we all know

11   is the FCRA -- and California's Investigative Consumer

12   Reporting Agencies Act, ICRAA, and Consumer Credit Reporting

13   Agencies Act, CCRAA, which is the "Inadequate Disclosure

14   Claim."  And the second practice allegedly violates the

15   federal FCRA and California's Unfair Competition Law, the

16   "Adverse Action Claims."

17           Plaintiff that counsel represents, Irene

18   Fernandez, brought these claims on behalf of the following

19   classes and subclasses, as alleged in the Complaint:

20           First, a nationwide class of job applicants since

21   April 24th, 2011, who signed Home Depot's violative

22   background check authorization forms, "FCRA

23   Pre-Authorization Class"; second, California subclass,

24   "ICRAA," and -- and the "CCRAA Pre-Authorization Subclass";

25   third, nationwide class of job applicants since April 24,

DEBBIE GALE, U.S. COURT REPORTER

2009, who suffered adverse employment actions based on their

credit reports, the "FCRA Adverse Action Class" and

"California Adverse Action Subclass."

08:52    This case was filed April 24, 2013. The

scheduling conference was held on January 27th, 2014. The

parties filed a Notice of Class Action Settlement on

October 28th, 2014. No discovery or substantive motions

have been filed in this case. And plaintiff states that the

focus of discovery and settlement negotiations in this case

has been on whether Home Depot's violations were willful and

whether they caused actual injury.

08:53    To answer these questions, plaintiff's counsel

reviewed Home Depot's policy documents and other documents,

interviewed Home Depot's 30(b)(6) witnesses, and did legal

research on willfulness and actual injury.

08:53    Concerning the settlement, the parties have agreed

to define the Settlement Class as a nationwide class of

persons who applied for a job at Home Depot between

April 24, 2011, and May 11, 2015, who signed the AIMS form

or the 2009 Form.

08:53    During the class period, Home Depot conducted

background checks on 340,000 job applicants. Of these, Home

Depot estimates that 120,000 job applicants signed violative

background check authorization forms, the AIMS forms and

2009 Form. Presumably other job applicants signed forms

1    that did not violate the FCRA.  Thus, the class is estimated

2    to contain approximately 120,000 individuals.

08:54    3        The Settlement Agreement does not specify a

4    minimum amount for Home Depot to pay out.  Instead, the

5    settlement agreement lays out a formula.  All class members

6    who do not opt out will receive a $15 payout without having

7    to submit a claim form.  Assuming that there are 120,000

8    class members, Home Depot will pay out a minimum of

9    $1.8 million.

08:54    10        In addition, Home Depot will pay out an additional

11    $630,000 or more, depending on how many class members submit

12    claim forms.  If the claims rate is 15 percent or above,

13    Home Depot will pay each claimant an additional $20 each;

14    that is, $35 instead of $15 per claimant.  Non-claimants

15    will still receive $15 each.

08:55    16        If the claims rate is below 15 percent, Home Depot

17    will distribute up to $630,000 proportionately to the

18    claimants, although the maximum amount of each claim that a

19    person can receive, I believe, is a hundred dollars.

20    Non-claimants will still receive $15 each.

08:55    21        Based on my understanding, the Settlement

22    Agreement, assuming that all 120,000 members submitted

23    claims forms -- which is highly unrealistic, but the top

24    number -- it appears that Home Depot would pay out, if we

25    had that extraordinary occurrence -- which we're not going

Case 8:13-cv-00648-DOC-RNB   Document 42   Filed 06/04/15   Page 8 of 26   Page ID #:306
8:13-CV-0648-DOC - 5/8/2015 - Item No. 2

8

1    to have -- would be $4.2 million.  So we're between 1.8 and

2    4.2.

08:56    3         If any checks are returned as undelivered or not

4    cashed within 90 days, Home Depot will retain the funds

5    pursuant to the Settlement Agreement at Paragraph 41.

08:56    6         In addition, Home Depot's agreed to stop using the

7    violative forms and to use a background check disclosure

8    form that complies with the FCRA, in Settlement Agreement

9    Paragraph No. 37.

08:56    10         In addition -- well, in return, the class members

11    will release the following claims:

08:56    12         Any claim for an alleged violation of any

13    provision of the Fair Credit Reporting Act, 15 U.S.C.

14    Section 1681, et seq., the California Consumer Credit

15    Reporting Agencies Act, California Civil Code Section 1785,

16    et seq., the California Investigative Consumer Reporting

17    Agencies Act, California Civil Code Section 1786, et seq.,

18    California Business and Professions Code Section 17200, or

19    any comparable provision of federal, state, or local law in

20    any way relating to or arising out of the employment

21    application process, including the procurement of, use of,

22    disclosure of intent to procure, or authorization to procure

23    or use a consumer report, investigative consumer report,

24    credit check, background check, criminal history report,

25    reference check or similar report; and,

08:57  1        (b), any claim for an alleged violation of any

2  adverse action requirements of the Fair Credit Reporting Act

3  under 15 U.S.C. Section 1681, et seq., including, without

4  limitation, 15 U.S.C. Section 1681(b)3(A), the California

5  Consumer Credit Reporting Agencies Act, California

6  Civil Code Section 1785, et seq., the California

7  Investigative Consumer Reporting Agencies Act, California

8  Civil Code Section 1786, et seq., and California Business

9  and Professions Code Section 17200, or any comparable

10  provision of federal, state, or local law in any way

11  relating to or arising out of adverse employment action in

12  connection with the employment application process.  Once

13  again, Settlement Agreement at Paragraph 47.

08:58  14        Class notice will be sent once to class members by

15  U.S. mail to address -- to addresses that Home Depot has in

16  its files.  The class administrator and Home Depot,

17  apparently, according to the information we got, is still

18  taking bids --

08:58  19        MR. MORGAN:  We've got the bids, Your Honor.

20  We're evaluating them --

08:58  21        THE COURT:  Okay.

08:58  22        -- and will also maintain a website.

08:59  23        And to submit a claim form, a class member must

24  certify that he or she applied for a job at Home Depot and

25  must identify which store he or she applied to.

08:59   1           The class member must also acknowledge that he or

2   she will release, quote,

08:59   3               "All of the released claims and any

4               adverse action claims against the

5               released parties, as defined in the

6               Settlement Agreement and reflected in

7               the Notice of Settlement, arising out of

8               the claims resolved by the settlement,"

9               end of quote.

08:59   10          Claim form –– that's Docket 38-2, Exhibit A.

08:59   11          Defendant has agreed not to oppose plaintiff's

12   motion for attorney's fees and costs, as long as the request

13   is for $995,000 or less.  And defendant also agrees not to

14   oppose plaintiff's motion for an enhancement payment for

15   class representative, Ms. Fernandez, of up to $5,000.

08:59   16          I want to raise some potential issues that I'm

17   concerned about.  They're not fatal, but it's causing a

18   hesitancy on my part.  Let's see if we can work those out

19   today, or if I need further briefing or input, gentlemen.

20   Okay?  'Cause my idea is not to torpedo your settlement.

09:00   21          But, a number of questions about the settlement

22   that make me question whether the settlement is fair,

23   reasonable and adequate.

09:00   24          First, concerning the scope of the released

25   claims.  They could be perceived by a court to be too broad

1    in several ways:  First, the released claims may not

2    sufficiently be tied to factual allegations.

3              First, the language of the "Released Claims"

4    provision does not limit the scope of the release to claims

5    arising from the factual situation described in the

6    Complaint.  Read broadly, the class members may be

7    releasing, quote,

8                "Any claim for an alleged violation of

9                any provision of the California Business

10               and Professions Code Section 17200, UCL,

11               in any way relating to or arising out of

12               the employment application process," end

13               of quote.

14             Because the UCLA covers -- or the UC -- I went to

15    UCLA, by the way -- I'm sorry.

16             MR. MORGAN:  As I did.

17             THE COURT:  Well, I see another person of great --

18    no, I'm... (laughs).  Well, USC is also my favorite school.

19    So if any of you went to USC, it's coequal.

20             Because the UCL covers a broad swath of conduct,

21    especially through the unlawful prong of the UCLA -- I'm

22    sorry -- of the UCL, class members could be giving up all

23    kinds of employment-related claims against Home Depot,

24    including employment discrimination, fraud, breach of

25    contract, or wage-and-hour claims related to the employment

1    application process, even if they are not related to the

2    credit reporting claims in this case.  And I've cited

3    *Hesse* -- which you haven't received yet, H-E-S-S-E -- versus

4    *Sprint Corporation,* at 598 F.3d 581, at 590.

09:02    5         Now, let me stop for just a moment.  I have

6    ultimate faith in you.  Do you understand that?  But a class

7    action settlement might have other counsel coming into a

8    federal court in New York or another part of the country

9    with another claim, and they wave that in front of the judge

10   and say, "Judge, look at this class action settlement.  This

11   is binding on you."  And then that court has to interpret

12   what I've done here.  So you're seeing the cautiousness on

13   my part because we are the recipient of that oftentimes.

09:02   14        So in *Hesse*, the court said a settlement agreement

15   may preclude a party from bringing a related claim in the

16   future, even though the claim was not presented and might

17   not have been presentable or in the class action, but only

18   where the released claim is, quote, "based on the identical

19   factual predicate as that underlying the claims in the

20   settled class action."

09:03   21        And then the *Christensen v. Hillyard* is cited.

22   It's 13-CV-04389-NC, and it's 2014 WL 3749523 at Note No. 4,

23   out of the Northern District of California, July 30th 2014,

24   which denied preliminary approval of a class action

25   settlement because the release of claims provision was

1    overly broad.

09:03    2        So not only do I –– am I not appreciative of ––

3    oftentimes of getting these types of interpretations on a

4    class settlement out of another part of the country, my

5    colleagues aren't.

09:03    6        Second, the release –– the second issue for me is

7    the release of adverse action claims on a class-wide basis.

8    The settlement agreement provides that class members will be

9    releasing any claims related to Home Depot taking adverse

10    employment action against them in relation to their consumer

11    credit reports.

09:04    12       I'm not sure if it's appropriate for these adverse

13    action claims to be settled on a class-wide basis.  And I

14    humbly say to you I just don't know.

09:04    15       When I first read the proposed definition for the

16    FCRA Adverse Class Action –– or Adverse Action Class and the

17    UCL Adverse Action Subclass, I immediately thought, and it

18    came to mind, about whether these classes could satisfy

19    Rule 23.  Even if Home Depot has a unform policy of not

20    providing job applicants a copy of their credit reports and

21    the FCRA summary of rights before taking adverse action

22    against them on the basis of their credit reports, it may be

23    difficult to identify individuals who belong in the class of

24    persons who've suffered adverse action as a result of their

25    credit reports because there are so many types of adverse

1    actions, not just failure to hire, that can be taken against

2    a job applicant on the basis of their consumer credit

3    reports, and because it would be difficult to determine

4    whether a credit report was the reason why a person suffered

5    the adverse action.

6           Perhaps reflecting the anticipated difficulties of

7    meeting Rule 23 for the Adverse Action Claims, the

8    settlement class definition is tailored to plaintiff's

9    Inadequate Disclosure forms *(verbatim)*, not the Adverse

10   Action Claims.  What is a little strange, however, is that

11   the settlement class members will still be giving up their

12   Adverse Action Claims without the Court considering whether

13   a class could be certified based on the Adverse Action

14   Claims.

15          So today, or in the future, with more preparation,

16   I'd like the parties to explain why that's appropriate,

17   given that the Adverse Action Claims are factually distinct

18   from the Inadequate Disclosure Claims.  The two harms occur

19   at different points in the job application process.  One

20   happens before the employer does the background check; the

21   other happens after the background check and after the

22   employer has decided to take an adverse action.

23          The third general discussion I wanted to have with

24   you -- and remember this -- I could have put this out in

25   written form.  I don't want to do that because I'd like

1    Counsel to meet and discuss this first.  Our clients can

2    look at us when we come back to them and say, "Well, you're

3    charging us more billable hours, why didn't you do X, Y and

4    Z?"  I don't want you in that position.  I'm not trying to

5    harm you.  So I thought getting in here and having this

6    discussion quietly would then have you tell me the best way

7    I *(sic)* wanted to proceed.  Because I could have sent these

8    questions to you a week ago.  Okay?  So it's an informal but

9    on-the-record discussion.

10       If the Court accepts that it is appropriate to

11   settle the adverse action claims on a class-wide basis -- if

12   I accepted that -- then another concern arises:  The

13   injunctive relief that's coming out of the settlement -- the

14   promise to use complaint disclosure forms -- is not tailored

15   to the Adverse Action Claims in this lawsuit, which allege

16   that Home Depot failed to give job applicants a copy of

17   their consumer reports and the FCRA Summary of Rights before

18   taking adverse action against them because of their consumer

19   report.

20       Home Depot has not promised in this settlement to

21   start giving job applicants a copy of their consumer credit

22   report and their FCRA Summary of Rights before refusing to

23   hire them, or hiring them at a lower pay rate.

24       If Ms. Fernandez were an additional plaintiff, I

25   would feel, I think, comfortable letting her decide that she

1    wants a monetary payment in lieu of injunctive relief.

2    However, in this particular case, it feels like the

3    settlement is mainly designed around the Inadequate

4    Disclosure Claims without careful thought being given to the

5    Adverse Action Claims, even though the Adverse Action Claims

6    will also be settled for the entire class.  Since

7    Ms. Fernandez is representing a class, eventually I'd like

8    to know why injunctive relief related to the Adverse Action

9    Claim is not in the agreement.

09:08    10        Next, why will claimants be paid more than

11   non-claimants?  I don't understand how it benefits the class

12   for pay -- for some class members to be paid more for

13   submitting a claim form that, first, identifies which Home

14   Depot store they applied to; and, second, affirms what they

15   are releasing, quote, "the Released Claim and any Adverse

16   Action Claims," end of quote.

09:09    17        First, I don't understand why Home Depot wants to

18   pay an extra $20 to $85 for additional information about

19   which store the class member applied to, given that Home

20   Depot's willing to pay all class members $15, even if they

21   do not identify which store they applied to.

09:09    22        Second, having claimants affirmatively agree to

23   release their class -- their Adverse Action Claims is

24   potentially a good idea, given my reservation about the

25   class-wide settlement of adverse action claims in general.

 1    However, my reading of the Settlement Agreement and the

 2    Class Notice is that all class members will be releasing

 3    their Adverse Action Claims regardless of whether they

 4    submit a claim form -- in your Settlement Agreement,

 5    Paragraph 47.  If that's the case, then it seems like

 6    claimants will be paid more than non-claimants for no good

 7    reason.

 8                So I'd like to eventually get some clarity.  And

 9    I'd like to have that discussion at one time, not piecemeal.

10                Considering the reversionary nature of the

11    settlement.  These days most of the class action settlement

12    agreements we see are non-reversionary.  Defendants

13    typically commit to paying a certain amount.  If class

14    members don't claim the total amount, the unclaimed amount

15    is either distributed *pro rata* to the individuals who do

16    make valid claims or distributed to a *cy pres* beneficiary.

17    In other words, it takes any motivation or any allegation

18    of -- foot-dragging, let's say.

19                This settlement, however, is reversionary.  The

20    Settlement Agreement provides that if any checks are

21    returned as undeliverable or not cashed within 90 days, the

22    funds will remain the property of Home Depot.  That's in

23    Settlement Agreement Paragraph 41.  Depending on how many

24    checks are undelivered or not cashed within 90 days, it is

25    possible that Home Depot could pay out far less than

1   1.8 million.

2        Now, first of all, I recognize the wisdom of

3   sending out one notice one time.  We can burn up so much

4   money with, you know, duplicate notices and get a de minimus

5   number of future people.  I totally agree.

6        But that reversionary nature causes me difficulty.

7   And I understand it's difficult to calculate between 1.8 and

8   4.2, which were your outer parameters, what any future

9   settlement might look like.  But that reversionary issue is

10  causing me some concern.

11       Because the checks will not be issued until after

12  final approval, this Court would not be in a position to

13  know how much class members will actually receive before I

14  have to rule on the final approval and attorney's fees.  I

15  don't want to be in that position.

16       Concerning attorney's fees.  First of all, let me

17  say to counsel:  I'm very generous, one of the most generous

18  Courts in terms of class actions.  Okay?  But the "clear

19  sailing" attorney's fees provision in the settlement, which

20  states that defendant will not oppose a request for

21  attorney's fees up to $995,000, creates a risk that the

22  requested fees will be unreasonably high, and also suggests

23  potential implicit collusion.

24       I could be wrong, but I think there's a good

25  chance that the Home Depot will pay out no more than

DEBBIE GALE, U.S. COURT REPORTER

1    $2.43 million based on a claims rate of 15 percent or lower.

2    If you take that assumption, I'm assuming that the typical

3    person who would apply to work at Home Depot will not read

4    the class notice.  Okay?  My wife and I get them all the

5    time.  It says between $4 and couple hundred dollars.  And,

6    frankly, it's not worth our effort and we trash 'em -- and

7    especially, by the time we read the fine print.

09:12    8         Now, even if they receive it and will not spend

9    the time to fill out the form to get the extra 20 to $85 on

10   top of the $15 they would get if they did nothing in

11   response to the class notice -- so if Home Depot's payout is

12   limited to $2.43 million and plaintiff's counsel seeks

13   $995,000, the attorney's fee would be obviously too high.

14   And I would not approve that.

09:13    15        Obviously -- and, remember, the benchmark's

16   25 percent.  Now, I've climbed all the way up to 30 percent.

17   You have to know that.  I get requests now for 33 percent,

18   and I'm sending a real quick message back:  No.  Absolutely

19   not.  But I'm pretty generous about it.

09:13    20        Obviously, we don't know yet what Home Depot's

21   ultimate payout will be in the other -- until the claim

22   forms come.  And because plaintiff's attorney's fees will

23   look more justifiable as the claims rate and Home Depot's

24   payout rate rises, plaintiff will be incentivized to do

25   everything she can to get more class members to submit claim

|       |    |                                                                        |
|-------|----|------------------------------------------------------------------------|
|       | 1  | forms.  And I understand that.                                         |
| 09:14 | 2  |        Ultimately, plaintiff may seek less than $995,000.              |
|       | 3  | And I understand that also.  And even if they –– you                   |
|       | 4  | requested an excessive amount, the Court can always cut the            |
|       | 5  | fees down to a reasonable amount.                                      |
| 09:14 | 6  |        However, it's worth raising this issue with the                 |
|       | 7  | parties now, given that they –– you seem to be putting a lot           |
|       | 8  | of emphasis on the 15 percent claims rate figure suggesting            |
|       | 9  | that you think that the claims rate will be low.                       |
| 09:14 | 10 |        Also, the Ninth Circuit's held that "clear                      |
|       | 11 | sailing" provisions are disfavored –– so now I've got                  |
|       | 12 | reversion; I've got "clear sailing" –– especially when the             |
|       | 13 | parties agree that the difference between the amount that              |
|       | 14 | the defendant has agreed not to oppose –– here $995,000 ––             |
|       | 15 | and the amount that's actually awarded will revert to the              |
|       | 16 | defendant.  And I cite *Bluetooth Headset Products liability*          |
|       | 17 | *Litigation*, 654 F.3d 935.  Language is found at 949, Ninth           |
|       | 18 | Circuit 2011.                                                          |
| 09:15 | 19 |        I don't see an explicit reversionary "kicker"                   |
|       | 20 | provision in this agreement; but given that the uncashed               |
|       | 21 | checks will revert to Home Depot, I'd not be surprised if              |
|       | 22 | Home Depot gets to keep the unawarded attorney's fees as               |
|       | 23 | well.  And, given that Home Depot is not committing to pay             |
|       | 24 | out a certain sum to class members –– what Home Depot will             |
|       | 25 | pay out varies greatly depending upon how many checks are              |

1     actually cashed and how many claim forms are submitted -- it

2     appears somewhat suspicious that 995,000 is being set aside.

09:15    3          And I don't mean that in an unkind way.  That's

4     why it's not in written form.  I'm just talking to you.  It

5     could be perceived, let's say, somewhat suspicious that

6     $995,000 is being set aside for attorney's fees/costs,

7     rather than going to the class.

09:15    8          Concerning the adequacy of the class notice.

9     Under the terms of the Settlement Agreement, the class

10    members will only be notified once by mail -- which, by the

11    way, I have no concern about -- and about the opportunities

12    to submit a claim form to receive more than 15-point -- or

13    more than $15.  I'd like to know whether the parties have

14    considered other forms of notice.  For instance, depending

15    on what kinds of contact information Home Depot has for

16    class members, text messages or e-mail might be effective.

09:16   17          Remember, I'm not trying to run up your costs.

18    I'm trying to run up the notice with as little expense as

19    possible.

09:16   20          If many of the class members are current employees

21    of Home Depot, Home Depot could consider issuing an internal

22    memo of some sort in addition.

09:16   23          Now, my question is, let's assume the opposite.

24    What happens when the claims rate goes above 15 percent?

25    So, eventually -- and not piecemeal, for a moment -- I may

1   be just calling you back.  You may decide you want my

2   comments today in written form.  This is just a discussion.

3   I'd like to confirm with the parties what happens if the

4   claims rate is over 15 percent.  From my reading of the

5   Settlement Agreement and the Motion, I believe that Home

6   Depot will keep paying an additional $20 per claimant; that

7   is, each claimant will get $35, instead of $15 like a

8   non-claimant, with no upper limit.

09:17   9   So normally we don't have hearings on preliminary

10   approval motions.  Here, however, I thought it was worth

11   bringing you in.  I was a little hesitant, in terms of

12   courtesy, just sending out these numerous questions to you.

13   You pick them up, go over to your client.  It might be worth

14   some further discussion between you.  And I'm not going to,

15   I think, take too much input today.

09:17   16   There's too much out there that's causing me a

17   concern to start having answers -- although we may.  If you

18   want to start today, I've got the time.

09:17   19   So the preliminary approval hearing is currently

20   scheduled for May 11th.  And I think we should either

21   advance you, as we did today, or push you back to May 26th,

22   or after -- you know, give you some time.  'Cause what you

23   don't want me to find is this is unfair, unreasonable,

24   et cetera.  Then, that's it.  And to resurrect that is hard.

09:18   25   And, then I can talk to you May 26th maybe

1    informally about the issues again, if you choose.  See where

2    you're at concerning my concerns.  You can answer, you know,

3    informally in the setting.  In other words, you'll guide me

4    today.  You'll tell me what is best for both of you.

09:18

5         In the alternative, I can write an additional

6    briefing and set out these issues for you, like I have

7    today.  You know, give them to you in "form" so that you can

8    really look at them, instead of just having a transcript

9    prepared which -- and I thought it would be better to have

10   the face-to-face discussion with you.  I didn't want you

11   caught offguard, quite frankly.  And I didn't want any

12   discourtesy on the Court's part or abruptness towards my

13   counsel.

09:19

14        I'm not suggesting that any one change -- or any

15   changes potentially need to be made.  But I am suggesting to

16   you that I have some deep concerns.  And if we get into a

17   hearing, I have no other way to go other than to make the

18   ultimate judgment call.  And if I don't find that this is

19   reasonable, where are you now with your clients, et cetera?

09:19

20        So, Counsel, why don't you two talk for a moment.

21   In other words, instead of you just starting to respond, why

22   don't you guide me so that I'm courteous.  I'm doing the

23   best for my counsel in terms of your client.  I'm getting

24   the input.

09:19

25        And whatever you say, I'm going to bow to your

DEBBIE GALE, U.S. COURT REPORTER

| | |
|---|---|
| 1 | wisdom about future dates, or today, hearing from you |
| 2 | piecemeal or whether you want this in written form. |
| 09:19  3 | So just take a moment. |
| 09:19  4 | MR. MORGAN:  Let me ask one question, Your Honor. |
| 09:19  5 | THE COURT:  Sure. |
| 09:19  6 | MR. MORGAN:  I assume we're gonna say we're gonna |
| 7 | come back later and give you some explanation. |
| 09:19  8 | Would your preference be to get something in |
| 9 | advance in writing -- |
| 09:20  10 | THE COURT:  Yes. |
| 09:20  11 | MR. MORGAN:  -- or have this -- |
| 09:20  12 | THE COURT:  Yes.  I'd like time to consider that. |
| 13 | I don't want to catch you in a hearing where I just still |
| 14 | have concerns and, out of caution, this is the class action |
| 15 | that's not going to be approved.  That's devastating to you. |
| 09:20  16 | So you're either going to answer this, change |
| 17 | this, or believe that you can overcome these with good |
| 18 | arguments -- these concerns -- and you take your risk. |
| 09:20  19 | And I don't know where I come out.  If I did, I'd |
| 20 | tell you right now.  I'd tell you don't worry about this, |
| 21 | this, and this.  But, obviously, I'm raising these as |
| 22 | caution flags.  And once you get into a hearing with a |
| 23 | court, we've got no place to go.  We're supposed to make |
| 24 | decisions. |
| 09:20  25 | So you're going to tell me.  You see, just by you |

DEBBIE GALE, U.S. COURT REPORTER

|   |   |
|---|---|
|   | 1 | asking me that question, that's something that you should be |
|   | 2 | discussing and telling me what you want to do based on this |
|   | 3 | conversation, not me telling you what I want.  I'm humbly |
|   | 4 | asking what best serves you and your clients.  Very humbly. |
| 09:20 | 5 | So go talk for just a moment.  Don't ask me any |
|   | 6 | more questions.  Control your future.  Okay? |
| 09:21 | 7 | Now let me take the other matter.  I'll be right |
|   | 8 | with you. |
| 09:21 | 9 | *(End of reported proceedings at 9:21 a.m.)* |
| 09:21 | 10 | *(Further discussion held informally, not* |
|   | 11 | *reported.)* |
| 09:21 | 12 | -oOo- |
| 09:21 | 13 | |

-oOo-


                        CERTIFICATE


        I hereby certify that pursuant to Section 753,

Title 28, United States Code, the foregoing is a true and

correct transcript of the stenographically reported

proceedings held in the above-entitled matter and that the

transcript page format is in conformance with the

regulations of the Judicial Conference of the United States.


Date:  May 14, 2015



                        /s/ Debbie Gale
                       _____
                       DEBBIE GALE, U.S. COURT REPORTER
                       CSR NO. 9472, RPR, CCRR