Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Robert K. Friedl (SBN 134947)
Robert.Friedl@capstonelawyers.com
Tarek H. Zohdy (SBN 247774)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Capstone Law APC
1840 Century Park East, Suite 450
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396


Attorneys for Plaintiff Irene Fernandez

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA—SOUTHERN DIVISION

| | |
|---|---|
| IRENE FERNANDEZ, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>HOME DEPOT, U.S.A., Inc., a Delaware corporation,<br><br>Defendant. | Case No.: SACV-13-648-DOC (RNBx)<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF RENEWED MOTION AND RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:   July 27, 2015<br>Time:   8:30 a.m.<br>Place:  Courtroom 9D<br><br>Complaint Filed: April 24, 2013 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

   **PLEASE TAKE NOTICE** that on July 27, 2015 at 8:30 a.m., in Courtroom 9D of the above-captioned Court, located at 411 West Fourth Street, Santa Ana, CA 92701-4516, the Honorable David O. Carter presiding, Plaintiff Irene Fernandez, on behalf of herself and all others similarly situated, will, and hereby does, renew her motion for this Court to:

   1.      Preliminarily approve the settlement described in the Amended Settlement Agreement, attached as Exhibit A to the Declaration of Robert K. Friedl;

   2.      Conditionally certify the Settlement Class;

   3.      Approve distribution of the proposed Notice of Class Action Settlement to the Settlement Class;

   4.      Appoint Plaintiff Irene Fernandez as the Class Representative;

   5.      Appoint Capstone Law APC as Class Counsel;

   6.      Appoint Kurtzman Carson Consultants ("KCC") as Settlement Administrator; and

   7.      Set a hearing date and briefing schedule for final settlement approval and Plaintiff's fee and expense application.

   This Renewed Motion is based upon:  (1) this Notice of Renewed Motion and Renewed Motion; (2) the Memorandum of Points and Authorities in Support of the Renewed Motion for Preliminary Approval of Class Action Settlement; (3) the Declaration of Robert K. Friedl; (4) the Amended Settlement Agreement; (5) the Notice of Class Action Settlement; (6) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; (7) the records, pleadings, and papers filed in this action; and (8) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Renewed Motion.

   This unopposed motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on April 1, 2015.

1    Dated:  July 6, 2015                    Respectfully submitted,

2                                            Capstone Law APC

3

4                                       By:  /s/ Robert K. Friedl
                                             Jordan L. Lurie
5                                            Robert K. Friedl
                                             Tarek H. Zohdy
6                                            Cody R. Padgett

7                                            Attorneys for Plaintiff Irene Fernandez

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1
2

# TABLE OF CONTENTS

3   I.    INTRODUCTION ................................................................ 1

4   II.   FACTS AND PROCEDURE ............................................... 3

5         A.   Overview Of The Litigation ..................................... 3

6         B.   Plaintiff's Investigation And Discovery .................. 5

7         C.   The Parties Engaged In Arm's-Length Settlement Negotiations ................ 6

8         D.   Material Terms Of The Proposed Class Action Settlement ........................ 6

9              1.   The Proposed Settlement Class ........................... 6

10             2.   The Settlement Benefits ..................................... 7

11             3.   A Narrow Release ............................................... 7

12             4.   The Proposed Notice to the Settlement Class .................... 8

13             5.   Proposed Attorneys' Fees, Litigation Expenses, and Service

14                  Awards ............................................................ 9

15  III.  ARGUMENT ..................................................................... 9

16        A.   The Court Should Grant Preliminary Approval of the Class

17             Settlement ........................................................... 9

18             1.   The Standard for Preliminary Approval Has Been Met .................... 9

19             2.   The Settlement Is Reasonable In Light of the Strengths and

20                  Weaknesses of Plaintiff's Case ........................... 12

21             3.   The Risk, Expense and Complexity of the Case, Including the

22                  Risk of Decertification, Favor Approval of the Settlement ............... 15

23             4.   The Amount Offered In Settlement Supports Approving the

24                  Settlement ........................................................ 16

25             5.   The Amended Settlement Was Finalized After a Thorough

26                  Investigation ..................................................... 17

27             6.   The Views of Experienced Counsel Should Be Accorded

28                  Substantial Weight ............................................ 18

| | B. | Conditional Class Certification Is Appropriate for Settlement Purposes | 19 |
| | | 1. | The Proposed Class Meets the Requirements of Rule 23 | 19 |
| | | 2. | The Proposed Class Is Sufficiently Numerous | 19 |
| | | 3. | There are Questions of Law and Fact that Are Common to the Class | 19 |
| | | 4. | Plaintiff's Claims Are Typical of the Proposed Settlement Class | 20 |
| | | 5. | Plaintiff and Plaintiff's Counsel Will Adequately Represent the Interests of the Proposed Settlement Class | 21 |
| | | 6. | Common Issues Predominate Over Individual Issues | 21 |
| | | 7. | Class Settlement Is Superior to Other Available Means of Resolution | 22 |
| | C. | The Proposed Class Notice Adequately Informs Settlement Class Members About the Case and Proposed Settlement | 23 |
| IV. | CONCLUSION | | 24 |

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Acosta v. Trans Union*, 243 F.R.D. 377 (C.D. Cal. 2007) ...........................................10

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ................................... 19, 23

*Armstrong v. Board of School Directors*, 616 F.2d 305 (7th Cir. 1980) ....................10

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) .........................................................21

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010) .................... 15, 22

*Churchill Village v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ...................... 12, 19, 24

*Eisen v. Porsche Cars North American, Inc.*, Case No. 11-09405, 2014

    U.S. Dist. LEXIS 14301, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ........... 18, 19

*Franklin v. Kaypro*, 884 F.2d 1222 (9th Cir. 1989) ....................................................10

*Grant v. Capital Mgmt. Servs., L.P.*, No. 10-2471-WQH, 2014 U.S. Dist.

    LEXIS 29836 (S.D. Cal. Mar. 5, 2014) ...................................................................11

*Gribble v. Cool Transps., Inc.*, 2008 U.S. Dist. LEXIS 115560 (C.D.

    Cal. 2008) ...................................................................................................................11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................ 10, 20, 21, 22

*In re M.L. Stern Overtime Litig.*, No. 07-0118-BTM, 2009 U.S. Dist.

    LEXIS 31650 (S.D. Cal. Apr. 13, 2009) ...................................................................10

*In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ........................17

*In re Netflix Privacy Litig.*, No. 5:11-CV-00379-EJD, 2013 U.S. Dist.

    LEXIS 37286 (N.D. Cal. Mar. 18, 2013) ...................................................................11

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) .........................................18

*In re Portal Software Inc. Sec. Litig.,* No. C-03-5138 VRW, 2007 U.S.

    Dist. LEXIS 88886 (N.D. Cal. Nov. 26, 2007) ........................................................16

*In re Toys 'R' Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438 (C.D. Cal.

    2014) ............................................................................................... 13, 15, 17

*Johansson-Dohrmann v. CBR Sys.*, No. 12-1115-MMA, 2013 U.S. Dist.

LEXIS 103863 (S.D. Cal. July 24, 2013) .................................................................11

*Lane v. Facebook, Inc.*, No. 08-3845-RS, 2010 U.S. Dist. LEXIS 24762

(N.D. Cal. Mar. 17, 2010)..................................................................................16

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998) ............... 16, 17

*London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246 (11th Cir. 2003) ............................14

*Long v Tommy Hilfiger U.S.A.*, 671 F.3d 371(3d Cir. 2012)......................................13

*Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718 (9th Cir. 2007) ....................21

*Marisol v. Giuliani*, 126 F.3d 372 (2nd Cir. 1997) ...................................................21

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)........................24

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D.

Cal. 2004) ...........................................................................................................12

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .......... 12, 16

*Parra v. Bashas,' Inc.*, 536 F.3d 975 (9th Cir. 2008)..................................................20

*Peikoff v. Paramount Pictures Corp.*, No. 15-cv-00068-VC, Dkt. No. 13

(N.D. Cal. Mar. 25, 2015)............................................................................. 14, 15

*Ramirez v. Trans Union, LLC*, 301 F.R.D. 408 (N.D. Cal. 2014) ........................ 20, 22

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010)...................................................20

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009).................... 12, 16

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) ...................................................13

*Satchell v. Fed. Express Corp.*, 2007 U.S. Dist. LEXIS 99066 (N.D. Cal.

2007)...................................................................................................................11

*Serna v. Big A Drug Stores, Inc.*, No. 07-0276 CJC, 2007 U.S. Dist.

LEXIS 82023 (C.D. Cal. Oct. 9, 2007)................................................................14

*Shlahtichman v 1-800 Contacts, Inc.*, 615 F.3d 794 (7th Cir. 2010).........................13

*Stanton v. Boeing Company*, 327 F.3d 938 (9th Cir. 2003).......................................10

*Syed v. M-I LLC*, No. 1:14-742-WBS, 2014 U.S. Dist. LEXIS 150748

(E.D. Cal. Oct. 22, 2014) ............................................................................. 14, 15

*Torres v. Pet Extreme*, No. 13-01778-LJO, 2015 U.S. Dist. LEXIS 5136

(E.D. Cal. Jan. 15, 2015) ............................................................... 13, 15, 17

*Torrisi v. Tuscson Elec.*, 8 F.3d 1370 (9th Cir. 1993) ....................................12

*Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482 (E.D. Cal. 2010) ..................16

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal. 2009) .......................................................................................19

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ...............................20

*Willes v State Farm Fire & Cas. Co*., 512 F.3d 565 (9th Cir. 2008) .........................13

*Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010) ........................23

**FEDERAL STATUTES**

15 U.S.C. §§ 1681 *et seq* (Fair & Accurate Credit Transactions Act) .............. 2, 6, 22

15 U.S.C. §§ 1681 *et seq*. (Fair Credit Reporting Act (FCRA)) ......................... *passim*

Fed. R. Civ. P. 23 ................................................................... 19, 24

Fed. R. Civ. P. 23(a) ............................................................... 19, 20

Fed. R. Civ. P. 23(a)(1) ................................................................20

Fed. R. Civ. P. 23(a)(2) ................................................................20

Fed. R. Civ. P. 23(a)(4) ................................................................21

Fed. R. Civ. P. 23(b)(3) ......................................................... 19, 22, 24

Fed. R. Civ. P. 23(c)(2)(B) .............................................................24

Fed. R. Civ. P. 23(e)(1) ................................................................24

Fed. R. Civ. P. 23(e)(1)(A) .............................................................10

**STATE STATUTES**

Cal. Civ. Code § 1785.3(c) ..............................................................3

Cal. Civ. Code § 1786.2(c) ..............................................................3

**SECONDARY AUTHORITIES**

Manual for Complex Litigation (4th ed. 2004) ............................................ 10, 11, 19

PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## I.     INTRODUCTION

Plaintiff Irene Fernandez hereby renews her motion for Preliminary Approval of the Class Action Settlement.  Following a hearing on the original proposed Settlement before this Court, Plaintiff and Defendant Home Depot U.S.A., Inc. ("Defendant" or "Home Depot") amended the settlement to address the Court's concerns.  The resulting Amended Settlement Agreement ("Amended Settlement"), which confers substantial relief to all Settlement Class Members in exchange for a narrowly-tailored release, should be preliminarily approved.

Under the proposed Amended Settlement, Home Depot agrees to establish a $3 million non-reversionary settlement fund ("Settlement Fund") to resolve Plaintiff's claims that Home Depot violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*., by including a release of liability in two preauthorization background disclosure forms, the "the AIMS Form" (Exhibit 1 to Amended Settlement) and "the 2009 Form" (Exhibit 2 to the Amended Agreement).  Settlement Class Members need not take any further action to receive a check; rather, payment from the Settlement Fund will be automatic and without the need of a claims process. Settlement Class Members are also eligible for a supplemental settlement payment, to be drawn from any funds remaining from uncashed checks.   Any uncashed checks from the supplement distribution  will go to a cy pres designee.  Home Depot has also agreed to no longer use the allegedly offending forms, and to use a background check form that complies with the FCRA.

In exchange for these benefits, Settlement Class Members will release their FCRA and related California law claims related to the allegedly offending pre-authorization forms.  Adverse action claims are specifically excluded from the amended release.

Plaintiff has prosecuted these claims diligently for two years on behalf a class of approximately 120,000 members.  (Declaration of Robert K. Friedl ["Friedl Decl."] ¶ 3.).  During that time, Plaintiff has conducted a thorough investigation of

her claims and Home Depot's defenses.  As part of the investigation, Plaintiff's counsel, among other things, culled through various background check forms that Home Depot used to conduct background checks for over 340,000 applicants. Plaintiff's counsel also reviewed over 3,000 documents produced by Home Depot, including  background check policies, record retention policies, and  actual background check disclosure and authorization forms signed by applicants for employment at Home Depot during the class period.  (Friedl Decl. ¶ 4.)  In addition, Plaintiff's counsel reviewed documents supporting Home Depot's contention that its alleged violations of the FCRA and related statutes was not "willful."  Finally, Plaintiff's counsel interviewed a designated Home Depot representative who is familiar with this case regarding the forms used by Home Depot, its policies and efforts to comply with the FCRA and related statutes.  (Friedl Decl. ¶ 5.)

Plaintiff's counsel also analyzed the case law on the FCRA, including whether Home Depot "willfully failed to comply" with the FCRA's requirements (*see* 15 U.S.C. § 1681n(a)), as well as other types of actions, included the related Fair & Accurate Credit Transactions Act, 15 U.S.C. §§ 1681 *et seq*. ("FACTA"), where "willfulness" and "proof of actual injury" are frequently disputed.  And the spectre of a game-changing decision now looms after the United States Supreme Court's granting of certiorari in *Spokeo, Inc. v. Robins*, No. 13-1339 on April 27, 2015. *Spokeo* will decide whether a plaintiff who alleges bare violations of the FCRA, without showing concrete injury, has Article III standing.  If the High Court holds in favor of the defendant, Plaintiff's claims may well be extinguished completely.

With a full understanding of the strengths and weaknesses of her case, Plaintiff engaged in arms'-length negotiations with Home Depot, finally reaching an agreement following extensive negotiations during and after a mediation before the Honorable Howard Wiener (Ret.).   (Friedl Decl. ¶¶ 6-7.)  Following a preliminary approval hearing with this Court, the parties returned to the negotiating table and modified the original Settlement, including agreeing to a non-reversionary settlement

1  fund in lieu of a bifurcated payment structure.  (*Id.* ¶ 8.)  The Amended Settlement

2  reflecting these changes, and which the parties aver is fair, reasonable, and adequate,

3  is now submitted for this Court's approval.

4        Accordingly, the parties respectfully request that the Court enter an order (a)

5  granting preliminary approval of the Amended Settlement; (b) certifying the

6  proposed Settlement Class; (c) appointing Plaintiff as the Class Representative; (d)

7  appointing Capstone Law APC ("Capstone") as Class Counsel; (e)  appointing

8  Kurtzman Carson Consultants ("KCC") as Settlement  Administrator; (f) approving

9  the parties' proposed form and method of giving Settlement Class Members notice of

10  the action and the proposed Settlement; (g) directing that notice be given to

11  Settlement Class Members in the proposed form and manner; and (h) setting a

12  hearing date and briefing schedule for final settlement approval and Plaintiff's fee

13  and expense application.

14  **II.  FACTS AND PROCEDURE**

15        **A.  Overview Of The Litigation**

16        Founded in 1978, Home Depot is the largest home improvement retailer in the

17  United States.  During the class period (i.e., April 24, 2011 to the present), Home

18  Depot has employed approximately 350,000 people nationwide.

19        On or about April 25, 2011, Plaintiff applied for a job with Home Depot by

20  completing an employment application.  As part of the application process, Plaintiff

21  signed two background check authorization forms.  These forms have been

22  designated "the AIMS Form" (Exhibit 1 to the Settlement Agreement) and "the 2009

23  Form" (Exhibit 2 to the Settlement Agreement).  Home Depot estimates that

24  approximately 120,000 other applicants signed these forms during the class period

25  and were the subject of background checks procured by Home Depot.[1]  (Friedl Decl.

26  ¶ 3.)

27   

28      [1]  15 U.S.C. Section 1681a(d)(1)(B), 15 U.S.C. Section 1681a(e), Cal. Civ.
Code Section 1786.2(c), and Cal. Civ. Code Section 1785.3(c).

The AIMS form discloses that the applicant "may be the subject of a consumer report requested by [defendant] from an outside agency, which may contain information about [applicant's] credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, and mode of living, whichever are applicable." In addition, the AIMS form also contains the following provisions:

> I release Home Depot and/or its agents and any person or entity which provides information pursuant to this authorization from any and all liabilities, claims or lawsuits in regard to the information obtained from any and all of the above referenced sources.

> I further agree that the giving of false, misleading or incomplete information either on my employment application or this form, will be grounds for the denial or termination of my employment

> The Home Depot is an equal opportunity employer and does not discriminate against applicants or employees with regard to race, color, gender, sexual orientation, age, religion, national origin, disability, or any characteristic protected by applicable law. I understand that inquiries on this form which ask for my address and date of birth are for identification purposes only. I understand that age is not considered in making employment decisions at Home Depot and that Home Depot will not have access to my date of birth unless and until a conditional offer of employment has already been made to me.

The 2009 Form similarly states that Home Depot intends to conduct a background investigation that may involve obtaining a consumer report or investigative consumer report from an outside agency. In addition, the 2009 Form also contains the following provisions:

> I release Home Depot and/or its agents and any person or entity that information pursuant to this authorization from any and all liabilities, claims, or lawsuits in regard to the information obtained from any and all of the above referenced sources.

> I agree that the giving of any false, misleading, or incomplete information either on my employment application or this form will be grounds for the denial or termination of employment.

PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff alleges that Home Depot violated the FCRA. Specifically, the FCRA requires that the "preauthorization" form, which discloses the employer's intent to obtain a credit report or background check on a current or prospective employee, must contain only the disclosure. (Complaint ¶ 53.) This means that the form may not include any extraneous information, such as a release of liability for the employer; any release must be separate from the disclosure. According to Plaintiff, Home Depot violated the FCRA by including releases of liability in their preauthorization background and/or credit check disclosure forms. (*Id.*)

### B.     Plaintiff's Investigation And Discovery

Prior to filing of this action, Plaintiff thoroughly investigated her claims. Plaintiff also has conducted investigation and discovery after filing the action in order to prove up her claims and rebut Home Depot's defenses.

The investigation was complicated because, during the class period, Home Depot conducted background checks on over 340,000 applicants, but only some of these background checks used the allegedly violative AIMS Form and 2009 Form. As part of the investigation, Plaintiff's counsel reviewed over 3,000 documents produced by Home Depot in order to confirm which forms were used and by whom during the class period. Plaintiff's counsel also reviewed Home Depot's background check policies, record retention policies, and the actual background check disclosure and authorization forms signed by various applicants who applied for employment at Home Depot during the class period. (Friedl Decl. ¶ 4.) Plaintiff's counsel also reviewed documents supporting Home Depot's contention that its alleged violations of the FCRA and related statutes was not "willful." (*Id.*) Finally, Plaintiff's counsel interviewed a designated Home Depot representative who is familiar with this case, the forms used by Home Depot, its policies and efforts to comply with the FCRA and related statutes. (*Id.* ¶ 5.) Because this case turns on Home Depot's legal defense that Settlement Class Members suffered no "actual injury" and that Home Depot's noncompliance was purportedly not "willful" under the FCRA, Plaintiff's counsel

1    thoroughly analyzed the evolving, and often conflicting case law governing FCRA

2    class actions, as well as law governing related statutes such as FACTA.  This review

3    and investigation allowed Plaintiff's counsel to structure a settlement that provides

4    benefits directly to the persons who were required to use the violative forms.

5    **C.    The Parties Engaged In Arm's-Length Settlement Negotiations**

6              The proposed Settlement was the culmination of protracted discussions

7    between the parties following a thorough analysis of the pertinent facts and law at

8    issue.  On December 4, 2013, the parties attended a mediation in San Diego

9    conducted by the Honorable Howard B. Wiener.  (Friedl Decl. ¶ 6.)  In advance of

10   the mediation, the parties submitted mediation briefs setting forth their positions. (*Id.*)

11   Although the parties did not agree to final terms at the mediation, counsel for the

12   parties continued to engage in settlement discussions.  (*Id.*)  Following continuing

13   negotiations, the parties, with the assistance of Justice Wiener, were able to reach an

14   agreement on all material terms of the proposed relief to the Class and the attorneys'

15   fees, costs and incentive awards separately, reducing all terms to the original

16   Settlement Agreement.  (Friedl Decl. ¶ 7.)

17             The parties submitted the original Settlement Agreement to the Court for its

18   consideration.  At a hearing on May 8, 2015, the Court continued the Motion and on

19   June 8, 2015, ordered this renewed motion to be filed by July 6, 2015.  The parties

20   then returned to the negotiating table, and renegotiated certain terms, including the

21   payment structure and the scope of the release.   (*Id.* ¶ 8; Ex. A.)  The parties

22   finalized the Amended Settlement in July 2015, which is hereby submitted to this

23   Court for preliminary approval.

24   **D.    Material Terms Of The Proposed Class Action Settlement**

25          **1.    The Proposed Settlement Class**

26             The Settlement Class consists of all persons who, between April 24, 2011 and

27   the date preliminary approval is granted, applied for employment with Home Depot

28   and executed the AIMS form or the 2009 Form and do not opt-out of the settlement.

1    (Amended Settlement  ¶¶ 11, 32, 38.)

2             **2.     The Settlement Benefits**

3         Under the Amended Settlement, Home Depot agrees to pay $3 million into a

4 nonreversionary settlement fund ("Settlement Fund") from which all payments will

5 be drawn.  (Amended Settlement ¶ 33.)  All Settlement Class Members who do not

6 submit valid and timely Requests for Exclusion will receive a Settlement Cash

7 Payment check without having to submit a claim.  (*Id*. ¶¶ 33, 40.)  Each Settlement

8 Class Member will receive a pro rata share from the Net Settlement Fund (the

9 Settlement Fund less costs for settlement administration, attorneys' fees and costs,

10 and incentive payments).  (*Id*.)  Settlement Class Members will also be eligible to

11 receive Supplemental Settlement Cash Payment checks drawn from the remaining

12 Net Settlement Fund representing monies for checks uncashed sixty days after

13 issuance, provided that amount is at least $10 per Settlement Class Member.  (*Id*. ¶

14 37)  These Supplemental Settlement Cash Payment checks will also be paid

15 automatically to Class Members on a pro rata basis.  (*Id*.)  Any remaining amount left

16 after this second settlement payment will go to the cy pres designee.  (*Id*. ¶ 18.)

17         In addition to this monetary relief, Home Depot has agreed to no longer use

18 the offending forms, and to use a background check form that complies with the

19 FCRA.  (Amended Settlement ¶ 39; Ex. 3.)

20             **3.     A Narrow Release**

21         In exchange for benefits and for other good and valuable consideration,

22 Settlement Class Members who have not timely and properly opted out of the

23 settlement will release claims limited to those arising out of or relating to the

24 improper disclosures alleged or asserted in the operative Complaint.  This includes

25 the following:

26

27                Any claim for an alleged violation of any provision of
the Fair Credit Reporting Act, 15 U.S.C. section 1681,
*et seq.*, the California Consumer Credit Reporting

28               Agencies Act, California Civil Code section 1785, *et*

PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*seq.*, the California Investigative Consumer Reporting Agencies Act, California Civil Code section 1786, *et seq.*, California Business and Professions Code section17200, or any comparable provision of federal, state or local law in any way alleging or arising out of the procurement of, use of, disclosure of intent to procure, or authorization to procure or use a consumer report, investigative consumer report, credit check, background check, criminal history report, reference check or similar report. **Specifically excluded from this release is any claim for an alleged violation of any adverse action requirements of the Fair Credit Reporting Act, 15 U.S.C. section 1681, *et seq.*, including, without limitation, 15 U.S.C. section 1681(b)(3)(A), the California Consumer Credit Reporting Agencies Act, California Civil Code section 1785, *et seq.*, the California Investigative Consumer Reporting Agencies Act, California Civil Code section 1786, *et seq.*, California Business and Professions Code section 17200, or any comparable provision of federal, state or local law alleging or arising out of adverse employment action.** It is expressly intended and understood by the Parties that this Settlement Agreement is to be construed as a complete settlement, accord, and satisfaction of the Settlement Class Member's Released Claims.

(Amended Settlement ¶ 48)[2] (emphasis added.) This release is narrowly and appropriately tailored to the allegations asserted by Plaintiff in her Complaint, and specifically excludes any adverse action claims. In addition, Plaintiff Fernandez will execute a broader release, releasing any known or unknown claims she may have had against Home Depot. (*Id.* ¶ 49.)

**4.    The Proposed Notice to the Settlement Class**

No more than forty-five (45) days after the Court has issued an order preliminarily approving this Settlement, Home Depot's Settlement Administrator will mail a Court-approved Notice of Class Action Settlement (Amended Settlement ¶ 52), to all Settlement Class Members via first-class U.S. Mail, postage prepaid and return service requested. The Notice shall be mailed to each Settlement Class Member's last known mailing address using the U.S. Postal Service's database of

---

[2] Home Depot is currently in the process of approving the proposed notice. Plaintiff's counsel will promptly file a supplemental declaration attaching the proposed notice as soon as approval has been obtained.

verifiable mailing addresses (the CASS database) and the National Change-of-Address database.  (Amended Settlement ¶ 53.)  Settlement Class Members will have thirty days from the mailing of the class notice to submit a request for exclusion or written objection, or fifteen days from a re-mailed class notice to do so.  (*Id*. ¶ 30.)  The costs of administration, including the reasonable costs of the Settlement Administrator, will be paid by Home Depot.  (*Id*. ¶ 31.)

All Settlement Class Members are entitled to receive a check without having to submit a claim form.  (Amended Settlement ¶ 40, 46.)  A supplemental settlement check, comprising of funds from uncashed Settlement Checks, will also be paid automatically to each Settlement Class Member.   (*Id*. ¶ 43.)

### 5.   Proposed Attorneys' Fees, Litigation Expenses, and Service Awards

Plaintiff will seek an order from the Court awarding Class Counsel their reasonable attorneys' fees incurred in this Action in an amount no greater than 30% of the Gross Settlement Fund, and for a reimbursement of out-of-pocket costs. Plaintiff will also apply to the Court for an award of Five Thousand Dollars ($5000) to Plaintiff Irene Fernandez as consideration for her service as a Named Plaintiff and as consideration for the general release she is giving Home Depot.  (Amended Settlement ¶¶ 42, 47.)

## III.   ARGUMENT

### A.   The Court Should Grant Preliminary Approval of the Class Settlement

#### 1.   The Standard for Preliminary Approval Has Been Met

Class action settlements must be approved by the court, and notice of the settlement must be provided to the class before the action can be dismissed.  Fed. R. Civ. P. 23(e)(1)(A).  Court approval occurs in three steps: (1) preliminary approval of the proposed settlement, including (if the class has not already been certified) conditional certification of the class for settlement purposes; (2) notice to the class

1    providing them an opportunity to object or exclude themselves from the settlement;

2    and (3) a final fairness hearing concerning the fairness, adequacy, and reasonableness

3    of the settlement.  *See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation §

4    21.632 (4th ed. 2004).

5         In reviewing class action settlements, the court should give "proper deference

6    to the private consensual decision of the parties."  *Hanlon v. Chrysler Corp.*, 150

7    F.3d 1011, 1027 (9th Cir. 1998).  This reflects the longstanding policy in favor of

8    encouraging settlement of class action suits, as "[l]itigation settlements offer parties

9    and their counsel relief from the burdens and uncertainties inherent in trial. . . .  The

10   economics of litigation are such that pre-trial settlement may be more advantageous

11   for both sides than expending the time and resources inevitably consumed in the trial

12   process."  *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989).

13        In the preliminary approval stage, the Court first determines whether a class

14   exists.  *Stanton v. Boeing Company*, 327 F.3d 938, 952 (9th Cir. 2003).  Then, the

15   Court evaluates "whether the settlement is within the range of possible approval, such

16   that there 'is any reason to notify the class members of the proposed settlement and to

17   proceed with a fairness hearing.'"  *In re M.L. Stern Overtime Litig.*, No. 07-0118-

18   BTM, 2009 U.S. Dist. LEXIS 31650, at *10 (S.D. Cal. Apr. 13, 2009) (quoting

19   *Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980)); *see*

20   *also, Acosta v. Trans Union*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine

21   whether preliminary approval is appropriate, the settlement need only be *potentially*

22   fair, as the Court will make a final determination of its adequacy at the hearing on

23   Final Approval, after such time as any party has had a chance to object and/or opt

24   out.") (emphasis in original).  In other words, the Court makes only a preliminary

25   determination of the settlement's fairness, reasonableness, and adequacy, granting

26   preliminary approval unless the settlement terms are so unacceptable that a formal

27   fairness hearing would be a waste of time.  *See* Manual for Complex Litigation §

28   21.632.

At the outset, the fairness and reasonableness of a settlement agreement is presumed "where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel." *In re Netflix Privacy Litig.*, No. 5:11-CV-00379-EJD, 2013 U.S. Dist. LEXIS 37286, at *11 (N.D. Cal. Mar. 18, 2013). This Settlement is the product of arms'-length negotiations conducted over many months, with both sides agreeing to the final terms after mediating with the Honorable Howard B. Wiener, a distinguished mediator respected by California courts.[3] "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. 2007). Thus, this non-collusive Settlement is entitled to "a presumption of fairness." *Gribble v. Cool Transps., Inc.*, 2008 U.S. Dist. LEXIS 115560, at *26 (C.D. Cal. 2008). The parties also modified certain terms following the May 8, 2015 hearing before this Court, and reached agreement on those terms consistent with the discussion between the parties and the Court at that hearing.

In addition, the Court may consider some or all of the following factors in evaluating the reasonableness of a settlement: (1) the extent of discovery completed and the stage of proceedings; (2) the strength of the plaintiff's case and the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; and (5) the experience and views of counsel. *See Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). "Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural*

---

[3] *See*, *e.g.*, *Johansson-Dohrmann v. CBR Sys.*, No. 12-1115-MMA, 2013 U.S. Dist. LEXIS 103863, at **12-22 (S.D. Cal. July 24, 2013) (crediting Judge Wiener's efforts and approving a class action settlement); *see also Grant v. Capital Mgmt. Servs., L.P.*, No. 10-2471-WQH, 2014 U.S. Dist. LEXIS 29836 (S.D. Cal. Mar. 5, 2014) (finding that Judge Wiener's involvement as a mediator "is a factor weighing in favor of a finding of non-collusiveness").

1  *Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-526 (C.D. Cal. 2004) (citing

2  *Torrisi v. Tuscson Elec.*, 8 F.3d 1370, 1376 (9th Cir. 1993)).

3  **2.**  **The Settlement Is Reasonable In Light of the Strengths and**

4  **Weaknesses of Plaintiff's Case**

5  "An important consideration in judging the reasonableness of a settlement is

6  the strength of the plaintiffs' case on the merits balanced against the amount offered

7  in the settlement." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221

8  F.R.D. 523, 525-26 (C.D. Cal. 2004).  In assessing the strength of the plaintiff's case

9  and the probability for success, "the district court's determination is nothing more

10  than an amalgam of delicate balancing, gross approximations, and rough justice."

11  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)

12  (internal quotation omitted).  There is "no single formula" to be applied, but the court

13  may presume that the parties' counsel and the mediator arrived at a reasonable range

14  of settlement by considering Plaintiff's likelihood of recovery.  *Rodriguez v. West*

15  *Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

16  Here, there is no dispute that Home Depot used forms that included both the

17  disclosure form and a release of liability on one document.  Plaintiff contends that

18  Home Depot's use of this document in employment applications facially violates the

19  FCRA, which provides, in relevant part:

21  Except as provided in subparagraph (B), a person may
not procure a consumer report, or cause a consumer
22  report to be procured, for employment purposes with
respect to any consumer, unless—(i) ***a clear and***
23  ***conspicuous disclosure has been made in writing*** to
the consumer at any time before the report is procured
or caused to be procured, ***in a document that consists***
24  ***solely of the disclosure***, that a consumer report may be
obtained for employment purposes; and (ii) that
25  consumer has authorized in writing (which
authorization may be made on the document referred to
26  in clause (i)) the procurement of the report by that
person.

28  15 U.S.C. §1681b(b)(2)(A)(i) (emphasis added).

However, the FCRA also requires Plaintiff to prove that the violation was "willful." *See* 15 U.S.C. § 1681n(a). In *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-59 (2007), the United States Supreme Court explained that "willful" applies not only to "knowingly" violating the FCRA, but to actions that constitute a "reckless disregard of statutory duty." *See also Willes v State Farm Fire & Cas. Co*., 512 F.3d 565, 566 (9th Cir. 2008) (applying the "reckless disregard" standard). Although *Safeco* clarified that a plaintiff need not establish that defendant "knowingly and intentionally" committed the violations, the Court left room for defendants to claim "reasonable construction" or even "careless construction" of the Act as a defense. *See*, *e.g*., *Shlahtichman v 1-800 Contacts, Inc.*, 615 F.3d 794 (7th Cir. 2010) (holding that a defendant was not liable for statutory damages because the violation arose from a "reasonable construction" that the truncation requirement of § 1681c(g) was inapplicable to email receipts); *Long v Tommy Hilfiger U.S.A*., 671 F.3d 371(3d Cir. 2012) (holding that defendant were not liable under the FCRA because their practice was merely a "careless interpretation" of the law and is not a "willful" violation).

The availability of these defenses to Home Depot, coupled with Plaintiff's burden to show that Home Depot engaged in "reckless disregard of statutory duty," make it challenging for Plaintiff to prove ultimate liability. *See In re Toys 'R' Us-Del., Inc. FACTA Litig*., 295 F.R.D. 438, 451 (C.D. Cal. 2014) (finding that the "strength of plaintiff's case" factor "weighs in favor of settlement" where "willfulness" under FCRA is a triable issue); *see also Torres v. Pet Extreme*, No. 13-01778-LJO, 2015 U.S. Dist. LEXIS 5136, *13 (E.D. Cal. Jan. 15, 2015) (Findings & Rec. of Mag. Judge) ("Given the uncertainty of litigating this issue of willfulness [under 15 U.S.C. §1681n]…[this] weighs in favor of settlement").

Indeed, two California district courts recently dismissed similar claims brought by other plaintiffs. *See Peikoff v. Paramount Pictures Corp*., No. 15-cv-00068-VC, Dkt. No. 13 (Order Granting Defendant's Motion to Dismiss), *2 (N.D. Cal. Mar. 25, 2015) (finding that employee's inclusion of a liability waiver provision in an FCRA

disclosure is not willful and dismissing claim); *Syed v. M-I LLC*, No. 1:14-742-WBS, 2014 U.S. Dist. LEXIS 150748, **8-10 (E.D. Cal. Oct. 22, 2014) (same).  These courts rejected that facial violations alone could merit liability under the FCRA, holding that a defendant cannot be found to have "plausibly" acted in reckless disregard of a statutory duty "even if inclusion of the [waiver] in [defendant's] disclosure form did not comply with a strict reading of 15 U.S.C. §1681b(b)(2)'s requirement that the document consists solely of the disclosure and authorization." *Peikoff*, at *2; *see also Syed*, 2014 U.S. Dist. LEXIS 150748, at *9 (finding that defendant's understanding of the FCRA as not barring the inclusion of a waiver on the disclosure form is "not objectively unreasonable" and dismissing claim with prejudice).  As some courts have categorically rejected the theory of liability advanced here, Plaintiff faces substantial risk of a complete loss in this case.

A few months prior to this Motion, the United States Supreme Court granted the defendant's writ of certiorari in *Spokeo, Inc. v. Robins*, No. 13-1339 (2015) to decide whether Article III confers standing who alleges a statutory violation of the FCRA without showing concrete injury.  If the Supreme Court rules that Article III standing is satisfied only upon a showing of concrete injury, then Plaintiff's claims will likely be extinguished.  Plaintiff therefore faces substantial risk that, were she to continue to litigate, her case would be dismissed for lack of standing.

Notwithstanding the pending *Spokeo* decision, some courts have refused to grant class certification for non-injury statutory violations on the grounds that liability "would be enormous and completely out of proportion to any harm suffered by the plaintiff." *Serna v. Big A Drug Stores, Inc.*, No. 07-0276 CJC, 2007 U.S. Dist. LEXIS 82023, *10 (C.D. Cal. Oct. 9, 2007) (quoting *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 n.5 (11th Cir. 2003)).  While the Ninth Circuit clarified that such matters are properly considered at the merits stage, the court also observed that the district court may have the power to reduce the amount in penalties as "constitutionally excessive" even if the plaintiff were to prevail.  *See Bateman v. Am.*

*Multi-Cinema, Inc.*, 623 F.3d 708, 723 (9th Cir. 2010).  These cases embody the hostility of some courts to these types of statutory injury claims, resulting in a denial of certification or substantially reduced penalty payments.

In light of the challenges Plaintiff faces moving forward, the proposed Settlement represents a fair and adequate resolution of these claims.

### 3.    The Risk, Expense and Complexity of the Case, Including the Risk of Decertification, Favor Approval of the Settlement

While this case is not factually complex, the uncertain legal landscape creates a substantial risk of proceeding to certification and beyond.  As mentioned, the Supreme Court's pending decision in *Spokeo* could well change the entire legal landscape for this kind of action.  The legal uncertainty occasioned by a potentially dispositive decision pending before the Supreme Court dramatically exacerbates the risk of litigation.  The risk of legal changes supports approving this settlement.  *See Torres*, 2015 U.S. Dist. LEXIS 5136, at *14 (describing an FCRA amendment in 2008 that insulated merchants from liability on printed expiration date on a receipt).

Even if Plaintiff's claims were to survive *Spokeo* and even if she were to prevail in certifying her claims, the costs for both parties would mount (including the costs of sending notice to 120,000+ class members), and Plaintiff would face "substantial risk of incurring the expense of a trial without any recovery," given the lack of actual injury to class members.  *Toys 'R' Us FACTA Litig.*, 295 F.R.D. at 451.  As *Peikoff* and *Syed* demonstrate, Plaintiff's claims, much of which rest on a showing of technical violations, have faced judicial resistance in some courts, resulting in a judgment on the pleadings or summary judgment.  On the other hand, Home Depot faces catastrophic liability if Plaintiff prevails entirely.  This type of "all-or-nothing prospect weighs in favor of approval."  *Id.* at 452.

And even if Plaintiff were to succeed in certifying the class, the "risk that a class action may be decertified at any time generally weighs in favor of settlement."  *Lane v. Facebook, Inc.*, No. 08-3845-RS, 2010 U.S. Dist. LEXIS 24762, *4 (N.D.

1   Cal. Mar. 17, 2010) (citing *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 966

2   (9th Cir. 2009)).

3          Ultimately, in considering the risks of litigation, "a court may consider the

4   vagaries of litigation of immediate recovery by way of compromise to the mere

5   possibility of relief, after protracted and expensive litigation." *Vasquez v. Coast*

6   *Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (internal quotations

7   omitted).  Here, the Settlement delivers immediate recovery for all Settlement Class

8   Members and avoids the risks and expenses of protracted litigation, including

9   potential interlocutory appeals and an appeal after a trial.  This factor supports

10  approving the Settlement.  *See In re Portal Software Inc. Sec. Litig.*, No. C-03-5138

11  VRW, 2007 U.S. Dist. LEXIS 88886, *3 (N.D. Cal. Nov. 26, 2007) (recognizing that

12  the inherent risks of proceeding to… trial and appeal also support the settlement).

**4.      The Amount Offered In Settlement Supports Approving the**

**Settlement**

15         The Ninth Circuit instructs that "[t]he proposed settlement is not to be judged

16  against a hypothetical or speculative measure of what *might* have been achieved by

17  the negotiators." *Officers for Justice*, 688 F.2d at 625 (emphasis in original).  Rather,

18  "the very essence of a settlement is compromise." *Id.* at 624.  Thus, "the fact that a

19  proposed settlement may only amount to a fraction of the potential recovery does not,

20  in and of itself, mean that the proposed settlement is grossly inadequate and should be

21  disapproved." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir.

22  1998).

23         The FCRA provides statutory damages of not less than $100 and not more

24  than $1,000 for a willful violation.  15 U.S.C. § 1781n(a)(1)(A).  However, without

25  an actual injury, "it is unlikely that the class members would receive maximum

26  statutory damages for the conduct at issue." *Torres*, 2015 U.S. Dist. LEXIS 5136, at

27  *15.  The proposed recovery for Settlement Class Members, consisting of $3 million

28  in statutory damages and injunctive relief, is substantial.  And while Class Members

may have recovered a similar amount had Plaintiff prevailed at trial, they do so now without the risk of further litigation. *See Toys 'R' Us FACTA Litig.*, 295 F.R.D. at 454 (finding that 5% to 30% of the potential $100 recovery under the FCRA is fair and adequate); *see also, In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding a settlement that paid plaintiffs one-sixth of the potential recovery to be fair and adequate). Moreover, as explained, the prospect of a pro-defendant ruling in *Spokeo* looms large, and that substantial risk necessitates a discount on the settlement recovery.

Taking the above risks into account, the Amended Settlement should be approved, as it is superior to other settlements recently approved by California district courts involving similar claims since Settlement Class Members here will receive actual cash, rather than coupons or in-store gift cards. *See*, *e.g.*, *Torres*, 2015 U.S. Dist. LEXIS 5136, at *15-16 (gift cards to Pet Extreme of up to $45 depending on the claims rate); *Toys 'R' Us FACTA Litig.*, 295 F.R.D. at 453 (transferable vouchers ranging from $5 to $30 for use in store). In short,"[g]iven the likelihood that plaintiff[] would have been unable to prove actual damages and the risk that [she] would have been unable to prove willfulness and recover any damages at all, […] the amount of settlement weighs in favor of settlement." *Toys 'R' Us FACTA Litig.*, 295 F.R.D. at 454.

### 5.     The Amended Settlement Was Finalized After a Thorough Investigation

Courts may also consider the extent of discovery and the current stage of the litigation to evaluate whether parties have sufficient information to make an informed decision to settle the action. *See Linney*, 151 F.3d at 1239. A settlement negotiated at an earlier stage in litigation will not be denied so long as sufficient investigation has been conducted. *See Eisen v. Porsche Cars North American, Inc.*, Case No. 11-09405, 2014 U.S. Dist. LEXIS 14301, 2014 WL 439006, at *13 (C.D. Cal. Jan. 30, 2014) (finding that counsel had "ample information and opportunity to assess the

1   strengths and weaknesses of their claims" despite "discovery [being] limited because
2   the parties decided to pursue settlement discussions early on.").

3       Plaintiff engaged in extensive investigation and discovery, including reviewing
4   thousands of documents and interviewing Home Depot's designated representative.
5   (*See* Friedl Decl. ¶ 5.)  Based on this discovery and on their independent investigation
6   and evaluation, Plaintiff's counsel is of the opinion that this Settlement for the
7   consideration and on the terms set forth in the Amended Settlement Agreement is
8   fair, reasonable, and adequate, and is in the best interest of the Settlement Class in
9   light of all known facts and circumstances, including the risk of significant delay and
10  uncertainty associated with litigation of this type, as well as the various defenses
11  asserted by Home Depot.

### 6.    The Views of Experienced Counsel Should Be Accorded Substantial Weight

14      The fact that sophisticated parties with experienced counsel have agreed to
15  settle their dispute should be given considerable weight by courts, since "parties
16  represented by competent counsel are better positioned than courts to produce a
17  settlement that fairly reflects each party's expected outcome in the litigation." *In re*
18  *Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

19      Here, the parties achieved a settlement after a thorough review of relevant
20  documents and information, as well as a rigorous analysis of the parties' claims and
21  defenses.  The expectations of all parties are embodied by the Amended Settlement,
22  which, as set forth above, is non-collusive, being the product of arms'-length
23  negotiations and finalized with the assistance of an experienced mediator, with
24  certain terms re-negotiated after review by this Court.

25      Plaintiff is represented by experienced class action counsel possessing
26  significant experience in class action matters.  (*See* Friedl Decl. ¶¶ 9-10, Ex. B.)
27  Likewise, Home Depot's counsel, Quinn Emanuel Erquhart & Sullivan LLP, is one
28  of the preeminent litigation firms in the nation.  Thus, the parties' recommendation to

approve this Settlement should "be given great weight." *Eisen v. Porsche*, 2014 WL 439006, at *5 (crediting the experience and views of counsel and the involvement of a mediator in approving a settlement resolving automotive defect allegations).

Based on the satisfaction of the *Churchill* factors, the Court should find the proposed Amended Settlement to be fair and adequate.

**B.     Conditional Class Certification Is Appropriate for Settlement Purposes**

**1.     The Proposed Class Meets the Requirements of Rule 23**

Before granting preliminary approval of the settlement, the Court should determine that the proposed settlement class meets the requirements of Rule 23.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation, § 21.632.  An analysis of the requirements of Rule 23(a) and (b)(3), commonly referred to as numerosity, commonality, typicality, adequacy, predominance, and superiority, shows that certification of this proposed Settlement Class is appropriate.

**2.     The Proposed Class Is Sufficiently Numerous**

The numerosity requirement is met where "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Generally, courts will find a class sufficiently numerous if it consists of 40 or more members.  *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) (numerosity is presumed at a level of 40 members).  Here, the proposed Settlement Class consists of applicants who applied for employment with Home Depot from April 24, 2011 to the date preliminary approval is granted, and who executed the AIMS Form or the 2009 Form.  Home Depot estimates 120,000 Settlement Class Members fall within the class definition, satisfying the numerosity requirement.

**3.     There are Questions of Law and Fact that Are Common to the Class**

The second Rule 23(a) requirement is commonality, which is satisfied "if there

1   are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  The

2   operative criterion for commonality is "the capacity of a classwide proceeding to

3   generate common answers apt to drive the resolution of the litigation." *Wal-Mart*

4   *Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  The commonality requirement is

5   "construed permissively." *Hanlon*, 150 F.3d at 1019-1020.  Where "the

6   circumstances of each particular class member vary but retain a common core of

7   factual or legal issues with the rest of the class, commonality exists." *Parra v.*

8   *Bashas, Inc*., 536 F.3d 975, 978-79 (9th Cir. 2008).

9           Here, each Class Member executed a "preauthorization" form disclosing the

10   employer's intent to obtain a credit report or background check on a current or

11   prospective employee that also contains a release of liability for the employer.  One

12   single common question resolves the dispute:  Whether Home Depot willfully

13   violated the law by using these forms?  Accordingly, the Court should find

14   commonality.  *See Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 417-418 (N.D.

15   Cal. 2014) (finding commonality on a contested certification motion where one

16   common question resolves the issue of whether a defendant violated the FCRA by

17   failing to include certain mandated information in the disclosure form).

### 4.      Plaintiff's Claims Are Typical of the Proposed Settlement Class

18

19

20           "Like the commonality requirement, the typicality requirement is 'permissive'

21   and requires only that the representative's claims are 'reasonably co-extensive with

22   those of absent class members; they need not be substantially identical.'" *Rodriguez*

23   *v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F. 3d at 1020)).

24   "In determining whether typicality is met, the focus should be on the defendants'

25   conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Lozano v.*

26   *AT&T Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007).  Thus, typicality is

27   "satisfied when each class member's claim arises from the same course of events,

28   and each class member makes similar legal arguments to prove the defendant's

1   liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v.*

2   *Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997)).

3       Here, Plaintiff asserts that Settlement Class Members' claims arising from

4   Home Depot's alleged unlawful use of the 2009 Form and the AIM Form are

5   reasonably coextensive with the legal claims asserted by Plaintiff.  Each Settlement

6   Class Member's claims arise from the same underlying conduct—namely, Home

7   Depot's failure to use a disclosure form free of extraneous language, in contravention

8   of the FCRA.  Plaintiff's claims are thus typical of the Class.

9          **5.**    **Plaintiff and Plaintiff's Counsel Will Adequately Represent**

10              **the Interests of the Proposed Settlement Class**

11       Adequacy is satisfied, because "the representative parties will fairly and

12   adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4).  Adequacy will

13   be found if (1) the proposed representative plaintiff does not have conflicts of interest

14   with the proposed class, and (2) the plaintiff is represented by qualified and

15   competent counsel.  *Hanlon*, 150 F.3d at 1020.  Here, Plaintiff is adequate since she

16   has no conflict of interest with the proposed Class.  In addition, Plaintiff is

17   represented by competent counsel with deep experience in litigating class actions,

18   and who do not have a conflict of interest with the class. (*See* Friedl Decl.¶¶ 9-10; Ex.

19   B.)  Thus, Plaintiff satisfies the adequacy prong.

20          **6.**    **Common Issues Predominate Over Individual Issues**

21       "In addition to meeting the conditions imposed by Rule 23(a), the parties

22   seeking class certification must also show that the action is maintainable under Fed.

23   R. Civ. P. 23(b)(1), (2) or (3)."  *Hanlon*, 150 F.3d at 1022.  Here, the proposed Class

24   is maintainable under Rule 23(b)(3), as common questions predominate over any

25   question affecting only individual members, and class resolution is superior to other

26   available methods for a fair resolution of the controversy.  *Id*. (citing Fed. R. Civ. P.

27   23(b)(3)).

28       Courts considering whether to certify a class alleging FCRA or similar

violations have found that a claim for statutory damages does not require a showing of actual harm when a plaintiff sues for willful violations. *See Bateman*, 623 F.3d at 719. Because proof of actual injury is not required, individualized questions do not predominate. *See Ramirez*, 301 F.R.D. at 421 (finding predominance where no actual injury is required for proving a FCRA statutory violation);

Here, for purposes of settlement, the predominance test is satisfied, as the proposed Settlement makes relief available for all Settlement Class Members based solely on easily ascertainable criteria, bypassing whatever individual evidentiary and factual issues that could arise in litigation in determining liability or damages. Consequently, common questions predominate over individual issues.

### 7. Class Settlement Is Superior to Other Available Means of Resolution

Similarly, there can be little doubt that resolving all Settlement Class Members' claims through a single class action is superior to a series of individual lawsuits. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. Indeed, the terms of the Settlement negotiated on behalf of the Class demonstrate the advantages of a collective bargaining and resolution process.

Furthermore, manageability at trial is not a concern in the class action settlement context, "for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Additionally, although the benefits of the Settlement negotiated on behalf of the Class are significant, the amount of penalties made available for FCRA violations, ranging from $100 to $1,000, is not nearly enough to incentivize individual class members into action. *See Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this

1   [superiority] factor weighs in favor of class certification."); *Amchem*, 521 U.S. at 617

2   ("The policy at the very core of the class action mechanism is to overcome the

3   problem that small recoveries do not provide the incentive for any individual to bring

4   a solo action prosecuting his or her rights.  A class action solves this problem by

5   aggregating the relatively paltry potential recoveries into something worth someone's

6   (usually an attorney's) labor.").  Here, the efforts and funds required to marshal the

7   type of evidence, including potentially expert testimony, to establish liability against

8   well-financed corporate defendants would also discourage Settlement Class Members

9   from pursuing litigation.

10   The superiority of proceeding through the class action mechanism is

11   demonstrable in this case.  Through the class action device, Plaintiff's counsel was

12   able to negotiate a global Settlement with Home Depot that, if approved, will provide

13   Settlement Class Members with immediate monetary relief.  As the class action

14   device provides the superior means to effectively and efficiently resolve this

15   controversy, and as the other requirements of Rule 23 are satisfied, certification of the

16   proposed Settlement Class is appropriate.

17   **C.      The Proposed Class Notice Adequately Informs Settlement Class**

18   **Members About the Case and Proposed Settlement**

19   Upon certifying a Rule 23(b)(3) class, Rule 23(c)(2)(B) requires the Court to

20   "direct to class members the best notice that is practicable under the circumstances,

21   including individual notice to all members who can be identified through reasonable

22   effort."  In addition, Rule 23(e)(1) requires that before a proposed settlement may be

23   approved, the Court "must direct notice in a reasonable manner to all class members

24   who would be bound by the proposal."  The notice given "must be reasonably

25   calculated, under all the circumstances, to apprise interested parties of the pendency

26   of the action and afford them an opportunity to present their objections. *Mullane v.*

27   *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

28   The parties have agreed on a notice plan that satisfies the requirements of

Rule 23.  (Amended Settlement ¶¶ 52-56.)  Under this plan, Home Depot will pay a settlement administrator to mail notice of class certification and the proposed Settlement to all Settlement Class Members as identified in Home Depot's files and to publish notice on a website maintained by the Settlement Administrator.  (*Id.* ¶¶ 52-53.)  The form of the notice to be mailed, which will be submitted in a supplemental declaration, includes all the content required by Rule 23(c)(2)(B), such as a description of the action and Class claims, as well as the Settlement Class Members' right to opt out of, object to, or comment on the proposed Settlement, including any application for attorneys' fees, costs, and service awards.  *See Churchill Village*, 361 F.3d at 576 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (internal quotation omitted).

## IV.    CONCLUSION

The parties have negotiated a fair and reasonable settlement.  Accordingly, Plaintiff moves the Court to preliminarily approve the Amended Settlement Agreement; direct the dissemination of notice to the class as proposed; and set a hearing date and briefing schedule for final Settlement approval and Plaintiff's fee and expense application.


Dated:  July 6, 2015                              Respectfully submitted,

                                                  Capstone Law APC


                                                  By:/s/ Robert K. Friedl
                                                     Jordan L. Lurie
                                                     Robert K. Friedl
                                                     Tarek Zohdy
                                                     Cody R. Padgett

                                                  Attorneys for Plaintiff Irene Fernandez