Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Robert K. Friedl (SBN 134947)
Robert.Friedl@capstonelawyers.com
Tarek H. Zohdy (SBN 247774)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Capstone Law APC
1840 Century Park East, Suite 450
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

Attorneys for Plaintiff Irene Fernandez

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—SOUTHERN DIVISION

| | |
|---|---|
| IRENE FERNANDEZ, individually, and on behalf of other members of the general public similarly situated,<br><br>                    Plaintiff,<br><br>    vs.<br><br>HOME DEPOT, U.S.A., Inc., a Delaware corporation,<br><br>                 Defendant. | Case No.: SACV-13-648-DOC (RNBx)<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND A CLASS REPRESENTATIVE ENHANCEMENT PAYMENT**<br><br>Date:   January 11, 2016<br>Time:  8:30 a.m.<br>Place:  Courtroom 9D<br><br>Complaint Filed:  April 24, 2013 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 11, 2016 at 8:30 a.m., in Courtroom 9D of the above-captioned Court, located at 411 West Fourth Street, Santa Ana, CA 92701-4516, the Honorable David O. Carter presiding, Plaintiff Irene Fernandez, on behalf of herself and all others similarly situated, will, and hereby does, move this Court to award $900,000 in attorneys' fees; $7,270.75 in litigation costs and expenses; and a class representative enhancement payment of $5,000 to Ms. Fernandez for her services on behalf of the Settlement Class. This Motion is unopposed by Defendant Home Depot USA, Inc.

This Motion should be granted because under the California and Ninth Circuit common fund doctrines, the fee request is reasonable when measured against the benefits conferred by the Settlement. Moreover, public policy recognizes that attracting competent counsel to litigate consumer cases on behalf of clients unable to pay hourly fees requires attorney fee awards commensurate with such risks and that no action would likely have been taken by Class Members individually, and no compensation would have been recovered for them, but for Plaintiff's services on their behalf. The Settlement Class' response to date confirms that the requested attorneys' fees, costs and expenses, and enhancement payment should be approved.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Attorneys' Fees, Costs, and a Class Representative Enhancement Payment; (3) the Declaration of Robert K. Friedl; (4) the Declaration of Irene Fernandez; (5) the records, pleadings, and papers filed in this action; and (6) upon such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

Dated:  October 5, 2015            Respectfully submitted,

                                   Capstone Law APC


                              By: /s/  Robert K. Friedl
                                   Jordan L. Lurie
                                   Robert K. Friedl
                                   Tarek H. Zohdy
                                   Cody R. Padgett

                                   Attorneys for Plaintiff Irene Fernandez

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................ 1

II.    FACTS AND PROCEDURE ....................................................................... 2

    A.    Overview of the Litigation ............................................................... 2

    B.    Plaintiff's Investigation and Discovery ........................................... 4

    C.    The Parties Engaged in Arm's-Length Settlement Negotiations ...................................................................................... 5

    D.    The Class Response Has Been Overwhelmingly Positive Following Preliminary Approval of The Class Action Settlement ....................................................................................... 5

III.    ARGUMENT .............................................................................................. 6

    A.    Plaintiff's Request for Attorneys' Fees Should Be Evaluated Under a Deferential Standard ......................................................... 6

    B.    Plaintiff's Request for Attorneys' Fees in the Amount Representing 30% of the Common Fund Is Reasonable ........................... 7

    C.    Other Factors Support Plaintiff's Fee Request ........................................ 11

        1.    The Results of the Litigation Support the Requested Fees ................................................................................... 12

        2.    The Substantial Contingent Risk, Including the Risk of Further Litigation, Supports the Requested Award of Attorneys' Fees ........................................................... 14

        3.    The Skill of Counsel and Work Performed Support the Fee Request ............................................................... 18

    D.    The Lodestar Cross-Check Attests To the Reasonableness of the Negotiated Fee Request ...................................................... 18

    E.    Plaintiff's Out-Of-Pocket Expenses Should Be Reimbursed ................. 21

    F.    The Enhancement Payment to the Named Plaintiff Is Fair

and Reasonable ........................................................................................ 22

IV.   CONCLUSION ........................................................................................ 25

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Aarons v. BMW of North America*, No. 11-7667-PSG, 2014 U.S. Dist.
LEXIS 118442 (C.D. Cal. Apr. 29, 2014) ................................................................... 18

*Aguayo v. Oldenkamp Trucking*, No. F04-6279 AWI LJO, 2006 U.S.
Dist. LEXIS 79425, 2006 WL 3020943 (E.D. Cal. Oct. 17, 2006) .......................... 23

*Amochaev v. Citigroup Global Markets, Inc*. No. 05-1298 PJH (N.D. Cal.
Aug. 13, 2008) ............................................................................................................. 23

*Anderson v. Signix Inc*., No. 3:08-cv-00570 (E.D. Va. May 26, 2010) ........................ 12

*Asghari v. Volkswagen Group of America, Inc.*, No. 2:13-cv-02529-
MMM-VBK (C.D. Cal. May 29, 2015) ..................................................................... 18

*Bell v. U.S. Xpress, Inc*., No. 1:11-cv-00181 (E.D. Tenn. Jan. 21, 2015) .................... 11

*Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245 (N.D. Cal. 2015) ..................... 19

*Bernal v. Davita, Inc*. No. 5:12-cv-03255-PSG (N.D. Cal. Jan. 14, 2014) .................. 23

*Beverly v. Wal-Mart Stores, Inc*., No. 3:07-cv-00469 (E.D. Va. May 1,
2009) ........................................................................................................................... 12

*Blum v. Stenson*, 465 U.S. 886 (1984) .......................................................................... 18

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ............................. 11

*City of Burlington v. Dague*, 505 U.S. 557 (1992) ...................................................... 17

*Coleman v. Kohl's Department Stores, Inc.*, No. 3:15-cv-02588-JCS
(N.D. Cal. Oct. 2, 2015) ..................................................................................... 17

*Dennis v. Kellogg Co*., No. 09-CV-1786-IEG (WMc), 2010 U.S. Dist.
LEXIS 116924, 2010 WL 4285011 (S.D. Cal. Oct. 14, 2010) ................................. 23

*Ellis v. Swift Transportation Co. of Arizona, LLC*, No. 13-cv-0473 (E.D.
Va. Oct. 7, 2014) ........................................................................................................ 12

*Faigman v. AT & T Mobility LLC*, No. C06-04622 MHP, 2011 U.S. Dist.
LEXIS 15825, 2011 WL 672648 (N.D. Cal. Feb. 16, 2011) ..................................... 23

*Fernandez v. Home Depot, USA Inc.*, No. 8:13-cv-00648 (C.D. Cal. July 16, 2015) ......................................................................................... 11

*Fernandez v. Victoria Secret Stores LLC*, No. 06-04149-MMM, 2008 U.S. Dist. LEXIS 123546 (C.D. Cal. July 21, 2008) ..................................... 10

*Fischel v. Equitable Life Assur. Soc.*, 307 F.3d 997 (9th Cir. 2002) ............................ 20

*Grant v. Capital Mgmt. Servs., L.P.* 2014 U.S. Dist. LEXIS 29836 (S.D. Cal. Mar. 5, 2014) ........................................................................... 22

*Guippone v. BH S&B Holdings LLC* , No. 09 Civ. 1029, 2011 U.S. Dist. LEXIS 126026 (S.D.N.Y. Oct. 28, 2011) ...................................... 23

*Guzman v. Employment Plus, Inc.*, No. 13-cv-06710 (N.D. Ill, June 30, 2015) ......................................................................................... 11

*Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011) ...................................... 24, 25

*Hicks v. Toys R US Inc.*, No. 2:13-cv-01302-DSF-JCG (C.D. Cal. Sept. 2, 2014) ......................................................................................... 10

*Hunter v. First Transit, Inc.*, No. 1:09-cv-06178, (N.D. Ill. Dec. 1, 2011) .................. 12

*In re Bluetooth Headset Products Liab. Litig.,* 654 F.3d 935 (9th Cir. 2011) ......................................................................................... 8, 18

*In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) ..................................... 22

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) .......... 18, 21

*In re Mego Fin. Corp. Sec. Litig.* 213 F.3d 454 (9th Cir. 2000) ................................... 23

*In re Omnivision Techs.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................. 9

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2014) ..................... 10

*In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ..................................... 10

*In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294 (3d Cir. 2005) ............................... 18, 19

*In re Toys 'R' Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) ......................................................................................... 11, 16

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.* 295 F.R.D. 438 (C.D. Cal. 2014) ............................... 22, 24

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ........................................................................................8, 14, 18

*Johnson v. General Mills, Inc.*, No. 10-00061-CJC, 2013 U.S. Dist. LEXIS 90338 (C.D. Cal. June 17, 2013) ...................................................... 21

*Kearney v. Hyundai Motor Am.*, No. SACV 09-1298-JST (MLGx), 2013 U.S. Dist. LEXIS 91636 (C.D. Cal. June 28, 2013).................................. 19

*Klee v. Nissan N. Am., Inc.,* 2015 U.S. Dist. LEXIS 88270 (C.D. Cal. July 7, 2015) ..................................................................................................... 18

*Long v Tommy Hilfiger U.S.A.*, 671 F.3d 371(3d Cir. 2012) ......................... 16

*Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995) ................... 6

*Marcum v. Dolgencorp, Inc.*, No. 3:12-cv-00108 (E.D. Va. Oct. 16, 2014) ............... 11

*McKenzie v. Federal Express Corp.*, No. 10-02420-GAF, 2012 U.S. Dist. LEXIS 103666 (C.D. Cal. July 2, 2012) ...................................................... 20

*Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp. *, 618 F.3d 988 (9th Cir. Cal. 2010)...................................................................... 5

*Missouri v Jenkins*, 491 U.S. 274 (1989) ...................................................... 20

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) ..................... 19

*Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160 (C.D. Cal. 2010) ............................................................................................................ 19

*Peikoff v. Paramount Pictures Corp.*, No. 15-cv-00068-VC, Dkt. No. 13 (N.D. Cal. Mar. 25, 2015) ............................................................................ 16

*Pitt v. K-Mart Corporation*, No. 3:11-cv-00697 (E.D. Va. May 24, 2013)................. 12

*Radcliffe v. Experian Info. Solutions* 715 F.3d 1157 (9th Cir. 2013) ........................... 22

*Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012)......................................... 22

*Rodriguez v. West Publ'g Corp.* 563 F.3d 948 (9th Cir. 2009)..................................... 21

*Ross v. US Bank Nat'l Ass'n*, No. 07-02951-SI, 2010 U.S. Dist. LEXIS 107857 (N.D. Cal. Sept. 29, 2010)............................................................. 23

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) ...................................... 15

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND A CLASS REPRESENTATIVE ENHANCEMENT PAYMENT

*Schaffer v. Litton Loan Servicing, LP* No. 05-07673-MMM,  2012 U.S.
Dist. LEXIS 189830 (C.D. Cal. Nov. 13, 2012) ........................................... 24

*Shlahtichman v 1-800 Contacts, Inc.*, 615 F.3d 794 (7th Cir. 2010) ........................... 16

*Simons v. Aegis Communications Group, LLC.*, No. 2:14-cv-04012 (W.D.
Mo. Jan. 15, 2015) ..................................................................................... 11

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ..................................................... 5

*Steiner v. American Broad. Co.*, 248 Fed. Appx. 780 (9th Cir. 2007) ......................... 20

*Stevens v. Safeway, Inc.*  No. 05-01988,  2008 U.S. Dist. LEXIS 17119
(C.D. Cal. Feb. 25, 2008) ........................................................................ 23, 25

*Sutton v. Bernard*, 504 F.3d 688 (7th Cir. 2007) ......................................................... 9

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993) ................................... 8

*Syed v. M-I LLC*, No. 1:14-742-WBS, 2014 U.S. Dist. LEXIS 150748
(E.D. Cal. Oct. 22, 2014) ............................................................................. 16

*Torres v. Pet Extreme*, No. 13-01778-LJO, 2015 U.S. Dist. LEXIS 5136
(E.D. Cal. Jan. 15, 2015) ......................................................................... 11, 16

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ................................ 11

*Townsend v. Sterling Jewelers, Inc.*, No. 13-cv-03903 (N.D. Ill. Sep. 15,
2014) .......................................................................................................... 12

*Trs. of the Constr. Indus. and Laborers Health and Welfare Trust v.
Redland Ins. Co.*, 460 F.3d 1253 (9th Cir. 2006) ....................................... 21

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ..... 20, 22, 24

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ....................... 9, 14, 19, 20

*Walsh v. Kindred Healthcare*, No. C-11-00050-JSW, 2013 U.S. Dist.
LEXIS 176319 (N.D. Cal. Dec. 16, 2013) .................................................. 12

*Willes v State Farm Fire & Cas. Co.*, 512 F.3d 565 (9th Cir. 2008) ........................... 15

*York v. Starbucks Corp.*, No. 08-07919 GAF, (C.D. Cal. Oct. 29, 2013) .............. 23, 25

**STATE CASES**

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008) .............................................. 7, 12

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) ..................................................................... 14

*Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19 (2000) ............................ 6, 8, 13, 20

*Serrano v. Priest*, 20 Cal. 3d 25 (1977) ............................................................................ 6


**FEDERAL STATUTES**

15 U.S.C. § 1681 *et seq.* (Fair Credit Reporting Act (FCRA)) ..............................*passim*

Fed. R. Civ. P. 23 ................................................................................................................. 17

Fed. R. Civ. P. 30(b)(6) ....................................................................................................... 4


**STATE STATUTES**

Cal. Civ. Code §§ 1785 *et seq.* (California Consumer Credit Reporting

    Agencies Act) (CCRAA)) ............................................................................................ 1, 2

Cal. Civ. Code § 1785.3(c) ................................................................................................... 3

Cal. Civ. Code § 1786.2(c) ................................................................................................... 3

Cal. Civ. Code §§ 1786 *et seq.* (California Investigative Consumer

    Reporting Agencies Act (ICRAA)) .............................................................................. 2


**SECONDARY AUTHORITIES**

4 *William B. Rubenstein et al.*, *Newberg on Class Actions* (4th ed. 2008) ................... 21

Leubsdorf, The Contingency Factor in Attorney Fee Awards, 90 Yale L.J.

    (1981) ............................................................................................................................... 15

Posner, Economic Analysis of Law (4th ed. 1992) .......................................................... 15

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action*

    *Settlements:  An Empirical Study*, J. of Empirical Legal Studies, Vol. 1,

    Issue 1, March 2004 ...................................................................................................... 7

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND A CLASS REPRESENTATIVE ENHANCEMENT PAYMENT

## I.    INTRODUCTION

Plaintiff Irene Fernandez moves the Court to award attorneys' fees in the amount of $900,000, reimbursable expenses of $7,270.75 and for a Class Representative Enhancement Payment in the amount of $5,000.

This motion comes after Plaintiff and Defendant Home Depot USA, Inc. ("Defendant" or "Home Depot") reached a settlement that resolves Plaintiff's claims that job applicants to Home Depot were subject to background check disclosure and authorization forms that failed to comply with applicable federal and California law.[1] Significantly, all Class Members who do not exclude themselves will receive an automatic cash payment without having to submit a claim form.  No portion of the net settlement fund will revert to Defendant, and a second payment will be made to Class Members from a fund consisting of monies from uncashed Settlement Checks.  As a result of this action, Home Depot has also discontinued use of the allegedly violative forms.

Having obtained valuable relief for the Class, Plaintiff seek an award of attorneys' fees and litigation expenses in the amount of $900,000 – 30% of the non-reversionary settlement fund of $3,000,000 – and $7,270.75 respectively.  The requested award is fair, reasonable, and appropriate under the California and Ninth Circuit common fund doctrines in light of the favorable results, the contingent risk assumed by Plaintiff's Counsel, and Plaintiff's effort to deliver benefits promptly to the Class.  The percentage of the fund requested is consistent with recent decisions that awarded fees ranging from 30 to 40 percent of the common fund.  To date, only a handful of Class Members have opted out, and not a single Class Member has objected.

Other factors support this fee request.  Plaintiff's Counsel delivered significant

---

[1] Fair Credit Reporting Act ("FCRA"), 15 U.S.C. sections 1681b(b)(2)(A)  and 1681d(a), the California Consumer Credit Reporting Agencies Act, California Civil Code section 1785, *et seq.* and the California Investigative Consumer Reporting Agencies Act , California Civil Code section 1786, *et seq.*

results to the Class in the face of adverse conditions, having invested over a thousand hours of their time toward the zealous prosecution of Plaintiff's claims with no guarantee of compensation. Plaintiff's Counsel devoted hours to: (1) exchanging formal discovery requests; (2) analyzing Defendants' employment application forms; (3) engaging in informal investigation and conducting interviews of Class Members; (4) preparing for mediation and developing a realistic model of Defendant's exposure; (5) analyzing case law affecting certification in this fast-developing area of law; (6) negotiating a settlement that provides automatic payments to Class Members; and (7) preparing the motions for preliminary approval and final approval of the class action settlement, and the instant motion for attorneys' fees.

Plaintiff also requests an enhancement payment for her services on behalf of the Settlement Class and reimbursement of Plaintiff's Counsel's out-of-pocket litigation expenses.

For the reasons set forth in greater detail below, Plaintiff respectfully submit that the requested attorneys' fees, costs and expenses, and Enhancement Payments are fair and reasonable, and should be approved.

## II. FACTS AND PROCEDURE

### A. Overview of the Litigation

Founded in 1978, Home Depot is the largest home improvement retailer in the United States. On or about April 25, 2011, Plaintiff applied for a job with Home Depot by completing an employment application. As part of the application process, Plaintiff signed two background check authorization forms. These forms have been designated "the AIMS Form" (Exhibit 1 to the Settlement Agreement) and "the 2009 Form" (Exhibit 2 to the Settlement Agreement). Home Depot estimated that over 100,000 applicants signed these forms during the class period and were the subject of background checks procured by Home Depot.[2] (Friedl Decl. ¶ 3.)

---

[2] 15 U.S.C. Section 1681a(d)(1)(B), 15 U.S.C. Section 1681a(e), Cal. Civ. Code Section 1786.2(c), and Cal. Civ. Code Section 1785.3(c).

The AIMS form discloses that the applicant "may be the subject of a consumer report requested by [defendant] from an outside agency, which may contain information about [applicant's] credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, and mode of living, whichever are applicable." In addition, the AIMS form also contains the following provisions:

> I release Home Depot and/or its agents and any person or entity which provides information pursuant to this authorization from any and all liabilities, claims or lawsuits in regard to the information obtained from any and all of the above referenced sources.

> I further agree that the giving of false, misleading or incomplete information either on my employment application or this form, will be grounds for the denial or termination of my employment

> The Home Depot is an equal opportunity employer and does not discriminate against applicants or employees with regard to race, color, gender, sexual orientation, age, religion, national origin, disability, or any characteristic protected by applicable law. I understand that inquiries on this form which ask for my address and date of birth are for identification purposes only. I understand that age is not considered in making employment decisions at Home Depot and that Home Depot will not have access to my date of birth unless and until a conditional offer of employment has already been made to me.

The 2009 Form similarly states that Home Depot intends to conduct a background investigation that may involve obtaining a consumer report or investigative consumer report from an outside agency. In addition, the 2009 Form also contains the following provisions:

> I release Home Depot and/or its agents and any person or entity that information pursuant to this authorization from any and all liabilities, claims, or lawsuits in regard to the information obtained from any and all of the above referenced sources.

> I agree that the giving of any false, misleading, or incomplete information either on my employment application or this form will be grounds for the denial or termination of employment.

Plaintiff alleges that Home Depot violated the FCRA. Specifically, the FCRA

requires that the "preauthorization" form, which discloses the employer's intent to
obtain a credit report or background check on a current or prospective employee, must
contain only the disclosure.  (Complaint ¶ 53.)  This means that the form may not
include any extraneous information, such as a release of liability for the employer; any
release must be separate from the disclosure.  According to Plaintiff, Home Depot
violated the FCRA by including releases of liability in their preauthorization
background and/or credit check disclosure forms.  (*Id*.)

> ### B.     Plaintiff's Investigation and Discovery

Prior to filing of this action, Plaintiff thoroughly investigated her claims.
Plaintiff has also conducted investigation and discovery after filing the action in order
to prove up her claims and rebut Home Depot's defenses.

The investigation was complicated because, during the class period, Home
Depot conducted background checks on over 340,000 applicants, but only some of
these background checks used the allegedly violative AIMS Form and 2009 Form.  As
part of the investigation, Plaintiff's counsel reviewed over 3,000 documents produced
by Home Depot in order to confirm which forms were used and by whom during the
class period.  Plaintiff's counsel also reviewed Home Depot's background check
policies, record retention policies, and the actual background check disclosure and
authorization forms signed by various applicants who applied for employment at
Home Depot during the class period.  (Friedl Decl. ¶ 4.)  Plaintiff's counsel also
reviewed documents supporting Home Depot's contention that its alleged violations of
the FCRA and related statutes were not "willful."  (*Id*.)  Finally, Plaintiff's counsel
interviewed a designated Home Depot representative who is familiar with this case, the
forms used by Home Depot, its policies and efforts to comply with the FCRA and
related statutes.  (*Id*. ¶ 5.)  Because this case turns on Home Depot's legal defense that
Settlement Class Members suffered no "actual injury" and that Home Depot's
noncompliance was purportedly not "willful" under the FCRA, Plaintiff's counsel
thoroughly analyzed the evolving, and often conflicting case law governing FCRA

class actions, as well as law governing related statutes such as FACTA. This review and investigation allowed Plaintiff's counsel to structure a settlement that provides benefits directly to the persons who were required to use the violative forms.

### C. The Parties Engaged in Arm's-Length Settlement Negotiations

The proposed Settlement was the culmination of protracted discussions between the parties following a thorough analysis of the pertinent facts and law at issue. On December 4, 2013, the parties attended a mediation in San Diego conducted by the Honorable Howard B. Wiener. (Friedl Decl. ¶ 6.) In advance of the mediation, the parties submitted mediation briefs setting forth their positions. (*Id.*) Although the parties did not agree to final terms at the mediation, counsel for the parties continued to engage in settlement discussions. (*Id.*) Following continuing negotiations, the parties, with the assistance of Justice Wiener, were able to reach an agreement on all material terms of the proposed relief to the Class and the attorneys' fees, costs and Enhancement Payments separately, reducing all terms to the original Settlement Agreement. (Friedl Decl. ¶ 7.)

The parties submitted the original Settlement Agreement to the Court for its consideration. At a hearing on May 8, 2015, the Court continued the Motion and on June 8, 2015, ordered this renewed motion to be filed by July 6, 2015. The parties then returned to the negotiating table, and renegotiated certain terms, including the payment structure and the scope of the release. (*Id.* ¶ 8.) The parties finalized the Amended Settlement in July 2015, and the Court granted preliminary approval on July 16, 2015.

### D. The Class Response Has Been Overwhelmingly Positive Following Preliminary Approval of The Class Action Settlement

Following preliminary approval, the Settlement Administrator facilitated the mailing of the Class Notice to 152,535 class members on September 10, 2015. (*Id.*)

While Plaintiff is obligated to file this motion for attorneys' fees prior to the deadline for an objection or exclusion,[3] thus far—one week prior to the deadline—only

---

[3] *See Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618

76 recipients of the Class Notice have opted out of the Settlement and none have objected as of the date of this filing.  (Friedl Decl. ¶ 9.)

## III.   ARGUMENT

### A.   Plaintiff's Request for Attorneys' Fees Should Be Evaluated Under a Deferential Standard

Courts have encouraged litigants to resolve fee issues by agreement.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  This is consistent with the strong public policy of encouraging and approving non-collusive settlements, including those in class actions, and avoiding a "second major litigation" arising from a request for attorneys' fees after the matter has been resolved.  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee").  In light of the policy favoring settlement of fee disputes, district courts must account for the fact that "the parties are compromising to avoid litigation."  *Laguna v. Coverall North America*, 753 F.3d 918, 922 (9th Cir. 2014), *vac'd on other grounds*, 2014 U.S. App. LEXIS 21950 (9th Cir. 2014).  Accordingly, the Ninth Circuit holds that "the court need not inquire into the reasonableness of the fees even at the high end with precisely the same level of scrutiny as when the fee amount is litigated."  *Id.* (*quoting Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003) (internal quotations omitted; emphasis added).  Thus, while the Court must conduct an independent inquiry into the reasonableness of the fee request, it should give substantial weight to the parties' agreement as to the reasonableness of the amount of attorneys' fees.

These considerations are particularly appropriate where, as here, the parties negotiated the settlement at arm's-length with the guidance of an experienced mediator.  *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 *12 (N.D. Cal. Nov. 5, 2008) (mediator's participation

---

F.3d 988 (9th Cir. 2010) (holding that class counsel's fee application in a common fund case should be filed prior to the objection/exclusion deadline so class members have the opportunity to assess the application).

weighs considerably against any inference of a collusive settlement); *In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF (HRL), 2010 U.S. Dist. LEXIS 145551 *43 (N.D. Cal. June 25, 2008) (same).  The settlement negotiations were adversarial and non-collusive, and the resulting settlement of attorneys' fees, as a function of the overall settlement's value, is likewise fair, reasonable, and free of collusion.

**B.     Plaintiff's Request for Attorneys' Fees in the Amount Representing 30% of the Common Fund Is Reasonable**

Plaintiff, zealously advocating on the behalf of the Class, has negotiated a settlement that provides automatic payments to Settlement Class Members without the need for a claim, and an additional supplemental payment from the residual fund consisting of expired settlement checks.  None of the net settlement fund will revert to Home Depot.  Plaintiff now seeks her negotiated fees, representing 30% of the $3 million settlement fund.  The fee request is reasonable under both federal and California law.

Under California law,[4] the common fund method for awarding attorneys' fees is appropriate where, as here, attorneys have been instrumental in creating a settlement fund that benefits all class members.  *See Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977) (noting that federal and state courts have long recognized that when attorneys create a common fund that benefits a class, the attorneys have an equitable right to be compensated from that fund); *Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19, 48 (2000) ("Courts agree that, because the percentage-of-the-benefit approach is 'results oriented rather than process-oriented, it better approximates the workings of the marketplace' than the lodestar approach." [citation omitted]).

Courts applying California law routinely award attorneys' fees equaling or exceeding 30% of the common fund's total potential value.[5]  *See*, *e.g.*, *Chavez v.*

---

[4] For cases where state law applies, the state law governs "not only the right to fees, but also in the method of calculating the fees."  *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).

[5] *See also, Albrecht v. Rite Aid Corp.*, No. 729219 (San Diego Super. Ct.) (35%

*Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) ("[S]tudies show that . . . fee awards in class actions average around one-third of the recovery."); Eisenberg & Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, J. of Empirical Legal Studies, Vol. 1, Issue 1, 27-78, March 2004, at 35 (independent studies of class action litigation nationwide have come to a similar conclusion that a one-third fee is consistent with market rates).

Plaintiff's fee request is also reasonable under federal law. While district courts have the discretion to award attorneys' fees based on either the lodestar method (essentially a modification of hourly billing) or the percentage method, where fees are requested from a certain and calculable common fund, the percentage-of-the-fund method is appropriate. *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). The Supreme Court has consistently recognized that "a

---

award); *Weber v. Einstein Noah Restaurant Group, Inc.*, No. 37-2008-00077680 (San Diego Super. Ct.) (40% award); *Kenemixay v. Nordstroms, Inc.*, No. BC318850 (L.A. Super. Ct.) (50% award); *Leal v. Wyndham Worldwide Corp.*, No. 37-2009-00084708 (San Diego Super. Ct.) (38% award); *Gomez and LaGaisse v. 20 20 Communications*, No. RIC 528973 (Riverside Super. Ct.) (33% award); *Acheson v. Express LLC*, No. 109CV135335 (Santa Clara Super. Ct.) (33% award); *Chin v. Countrywide Home Loans, Inc.*, No.: 39-2010-00252741-CU-OE-STK (San Joaquin Super. Ct.) (30% award); *Ethridge v. Universal Health Servs.*, No. BC391958 (L.A. Super. Ct.) (33% award); *Magee v. Am. Residential Servs. LLC*, No. BC423798 (L.A. Super. Ct.) (33% award); *Blue v. Coldwell Banker Residential Brokerage Co.*, No. BC417335 (L.A. Super. Ct.) (33% award); *Silva v. Catholic Mortuary Servs., Inc.*, No. BC408054 (L.A. Super. Ct.) (33% award); *Mares v. BFS Retail & Comm. Operations LLC*, No. BC375967 (L.A. Super. Ct.) (33% award); *Blair et al. v. Jo-Ann Stores, Inc.*, No. BC394795 (L.A. Super. Ct.) (33% award); *Perez and Comeaux v. Standard Concrete*, No. 30-2008-00211820 (Orange County Super. Ct.) (33% award); *Ward v. Doyon Sec. Servs., LLC*, No. BS 9000517 (San Bernardino Super. Ct.) (33% award); *Barrett v. The St. John Companies*, No. BC354278 (L.A. Super. Ct.) (33% award); *Clymer and Benton v. Candle Acquisition Co.*, No. BC328765 (L.A. Super. Ct.) (33% award); *Dunlap v. Bank of America, N.A.*, No. BC328934 (L.A. Super Ct.) (33% award); *Taylor v. Ross Stores, Inc.*, No. RCV 065453, JCCP 4331 (San Bernardino Super. Ct.) (33% award); *Case et al. v. Toyohara America Inc.*, No. BC328111 (L.A. Super. Ct.) (33% award); *Sunio v. Marsh USA, Inc.*, No. BC328782 (L.A. Super Ct.) (33% award); *Chalmers v. Elecs. Boutique*, No. BC306571 (L.A. Super. Ct.) (33% award); *Boncore v. Four Points Hotel ITT Sheraton*, No. GIC807456 (San Diego Super. Ct.) (33% award); *Vivens v. Wackenhut Corp.*, No. BC290071 (L.A. Super. Ct.) (31% award); *Crandall v. U-Haul Int'l., Inc.*, No. BC178775 (L.A. Super. Ct.) (40% award).

litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Company v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Auto-Lite Co.*, 396 U.S. 375, 392-93 (1970). The purpose of this doctrine is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).

 Courts recognize that the percentage method offers important advantages over the lodestar method, particularly when an ascertainable fund exists:

> [I]n class action common fund cases the better practice is to set a percentage fee and that, absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%. This will encourage Plaintiff's attorneys to move for early settlement, provide predictability for the attorneys and the class members, and reduce the time consumed by counsel and court in dealing with voluminous fee petitions.

*In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989). Indeed, in *Bluetooth*, the court recognized that one important advantage of the common fund method is that fees are "easily quantified," making a fee determination simpler than the "often more time-consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942; *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) ("[A] percentage-of-the-fund approach is less demanding of judicial resources than the lodestar method."). Moreover, the common fund method better "approximates the workings of the marketplace than the lodestar approach" in setting the price of contingent fees. *Lealao*, 82 Cal. App. 4th at 48 (quotation omitted). This is because the percentage method "provide[s] incentives roughly comparable to those negotiated in the private bargaining that takes place in the legal marketplace." *Id.* In this way, applying the percentage method advances the judicial policy of "award[ing] counsel the market price for legal services." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007). In light of these benefits and the creation of a common fund, this Court

should apply the percentage-of-the-fund approach in determining attorneys' fees.

The Ninth Circuit has generally established 25% of a common fund as a "benchmark" award for attorney fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). However, the "exact percentage [awarded] varies depending on the facts of the case, and **in most common fund cases, the award exceeds that benchmark**." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (emphasis added); *In re Activision Sec. Litig.*, 723 F. Supp. at 1377 ("[a] review of recent reported cases discloses that nearly all common fund awards range around 30%"); *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (in "most common fund cases, the award exceeds that benchmark"); *Pokorny v. Quixtar, Inc.*, No. C 07-0201 SC, 2013 U.S. Dist. LEXIS 100791 *4 (N.D. Cal. July 18, 2013) (the "Ninth Circuit uses a 25% baseline in common fund class actions, and in most common fund cases, the award exceeds that benchmark, with a 30% award the norm absent extraordinary circumstances that suggest reasons to lower or increase the percentage").

Like California courts, district courts within this circuit routinely award attorneys' fees of at least 30% the common fund. *See, e.g., Elliot v. Rolling Frito-Lay Sales, LP*, 11-01730-DOC (ANx), 2014 U.S. Dist. LEXIS 83796, *25 (C.D. Cal. June 12, 2014) (awarding 30% of $1.6 million fund in attorneys' fees, observing that 30% of the fund is "not uncommon for courts in this jurisdiction"); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450-51 (E.D. Cal. July 2, 2013) (awarding one-third of the settlement fund in a wage and hour class action because there were "sufficient reasons to  exceed [the benchmark] considering the risk of the litigation, the contingent nature of the work, the favorable reaction of the class…"); *Vasquez*, 266 F.R.D. at 491-92 (awarding one-third of the settlement fund in fees); *Singer v. Becton Dickinson & Co.*, 08-CV-821 - IEG (BLM), 2010 U.S. Dist. LEXIS 53416, at *22-23 (S.D. Cal. Jun. 1, 2010) (noting that the amount of one-third of the common fund "falls within the typical range" of fee awards); *Stuart v. Radioshack Corp.*, C-07-4499 EMC, 2010 U.S.

Dist. LEXIS 92067 *18 (N.D. Cal. Aug. 9, 2010) (awarding one-third of settlement fund and noting that "[t]his is well within the range of percentages which courts have upheld as reasonable in other class action lawsuits"); *Bernal v. Davita, Inc.*, No. 5:12-cv-03255-PSG, *1-2 (N.D. Cal. Jan. 14, 2014) (awarding one-third of the settlement fund); *Hicks v. Toys R US Inc.*, No. 2:13-cv-01302-DSF-JCG (C.D. Cal. Sept. 2, 2014) (awarding 30% of the settlement fund).

In awarding 34% of the common fund to class counsel, Judge Morrow explained that an award of 34% of the fund "is supported by the fact that typical contingency fee agreements provide that class counsel will recover 33% if the case is resolved before trial and 40% if the case is tried." *Fernandez v. Victoria Secret Stores LLC*, No. 06-04149-MMM, 2008 U.S. Dist. LEXIS 123546, *54-57 (C.D. Cal. July 21, 2008) (citing an academic study collecting contingency fee agreements). In sum, longstanding approval by California district courts for 33% in fees for class action settlements—along with the stated rationale for that percentage— support the reasonableness of Plaintiff's attorneys' fees request.[6]

Importantly, the calculation of attorneys' fees is based on a percentage of the *entire* potential benefit created by class counsel, including litigation expenses, claims administration, and other cost items that benefit the Class. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2014) ("[D]istrict court did not err in calculating the attorneys' fees award by calculating it as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses"). Thus, Plaintiff's requested attorneys' fees, representing 30% of the entire settlement fund, is consistent with established Ninth Circuit precedent and should be awarded.

**C.     Other Factors Support Plaintiff's Fee Request**

In addition to the results achieved and awards in comparable cases, courts in this

---

[6] Awards of 30% are likewise routinely upheld by the Ninth Circuit. *See*, *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming one-third of the common fund); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming one-third of a $12 million common fund).

Circuit have also considered additional factors when evaluating the fairness of the award.  These factors include:  (1) the risks of further litigation; (2) the contingent nature of the fee; (3) the skill of the attorneys; and (4) a lodestar cross-check.  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).  This is consistent with this Court's analysis.  In awarding 30% of the common fund of $1.6 million for attorneys' fees in a recent case, this Court considered the "difficult issues facing the class," "the significant risk counsel accepted in taking the case entirely on contingency" and that "the settlement provided a very favorable result for the class."  *Elliot v. Rolling Frito-Lay Sales*, 2014 U.S. Dist. LEXIS 83796, at *25.  While no single factor is determinative of reasonableness, each factor supports Plaintiff's request for attorneys' fees in the amount of 30% of the common fund.

### 1.       The Results of the Litigation Support the Requested Fees

By taking action to enforce state and federal laws on credit checks, Plaintiff and Plaintiff's Counsel have vindicated the rights of over 150,000 employees and applicants and have secured $3 million in relief for their claims.  Settlement Class Members will receive money ***automatically***, without the need to submit a claims form.  By providing automatic cash payments to ***all members of the class***—rather than only those who submit a claim (which could be 10% of the class or lower)—this settlement is comparable, if not superior, to class action settlements involving FCRA and related state law claims approved by other courts.  *See In re Toys 'R' Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014) (transferable vouchers ranging from $5 to $30 for use in store); *Torres v. Pet Extreme*, No. 13-01778-LJO, 2015 U.S. Dist. LEXIS 5136, *15-16 (E.D. Cal. Jan. 15, 2015) (gift cards to Pet Extreme of up to $45 depending on the claims rate); *Simons v. Aegis Communications Group, LLC.*, No. 2:14-cv-04012 (W.D. Mo. Jan. 15, 2015) (final approval of FCRA settlement capped at $19.00 to each member of the Disclosure Class subject to a claims procedure); *Marcum v. Dolgencorp, Inc.*, No. 3:12-cv-00108 (E.D. Va. Oct. 16, 2014);

(preliminary approval of FCRA settlement capped at $53 to each class member subject to a claims procedure); *Ellis v. Swift Transportation Co. of Arizona, LLC*, No. 13-cv-0473 (E.D. Va. Oct. 7, 2014) (final approval of FCRA settlement capped at $50 to each class member subject to claims procedure).

Moreover, "success" in this context encompasses other positive results not necessarily reflected in the Settlement amount:

> [Success achieved] could include changes in company policies that were not part of the settlement, the dollar value of the settlement benefits, and the absolute size of the class of persons who are eligible for the benefit. This category would also encompass other measures of the litigation's success including the early stage at which it produced benefits, and the availability or unavailability of less costly means for achieving the same benefits.

*Chavez v. Netflix*, 162 Cal. App. 4th at 61.   Here, Plaintiff's Counsel's action resulted in Defendant changing the background check disclosure and authorization forms used in employment applications, which Defendant acknowledges.  (*See* Amended Settlement Agreement ¶ 36.)  This nonmonetary relief should also be considered in awarding attorneys' fees.  *See*, *e.g.*, *Walsh v. Kindred Healthcare*, No. C-11-00050-JSW, 2013 U.S. Dist. LEXIS 176319, *12 (N.D. Cal. Dec. 16, 2013) ("[T]he parties also negotiated substantial injunctive relief, and when the Court considers the value of that injunction, it reduces the overall percentage of fees that counsel will receive" and awarding fees of 30% of the monetary value after taking into account the injunctive relief).

*Chavez* also instructs courts to credit parties for successfully striking a deal at an early stage in litigation.  Here, Plaintiff resolved the matter prior to a full-blown certification motion, Plaintiff's Counsel was able to avoid the resource drain (including the likely depositions of numerous class members and extensive briefing), not to mention the risk of losing and ringing death knell for the Class, while obtaining substantial monetary relief for Class Members.

In addition to the valuable monetary and nonmonetary relief provided by the

Settlement, the public interest served by Plaintiff's lawsuit likewise supports the requested award of attorneys' fees.  In *Lealao*, the court held that when determining the appropriate award of attorneys' fees, the trial court should consider the need to encourage the private enforcement necessary to vindicate many legal rights, as well as the role that representative actions play in relieving the courts of the need to separately adjudicate numerous claims.  *See Lealao*, 82 Cal. App. 4th at 53.  Here, by obtaining a significant recovery for the class, Plaintiff's Counsel have vindicated the rights of job applicants and employees while enforcing compliance with important privacy laws regulating credit checks.

> **2.     The Substantial Contingent Risk, Including the Risk of Further Litigation, Supports the Requested Award of Attorneys' Fees**

The contingent risk that Plaintiff's Counsel assumed in prosecuting the action supports the requested attorneys' fees and costs.  Plaintiff's Counsel took this case on a pure contingency basis, and had no guarantee that they would receive any remuneration for the 1037 hours they spent litigating the Class's claims, or for the $7,270.75 in out-of-pocket costs they reasonably incurred during the matter's pendency.  (*See* Friedl Decl. ¶ 12)

Large-scale litigation of this type is, by its very nature, complicated and time-consuming.  Due also to the contingent nature of the customary fee arrangement, lawyers must be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee recovery of any kind.  As the Ninth Circuit has recognized, "attorneys whose compensation depends on their winning the case must make up in compensation in the cases they win for the lack of compensation in the cases they lose." *Vizcaino*, 290 F.3d at 1051.

The demands and risks of this type of litigation overwhelm the resources—and deter participation—of many traditional claimants' firms.  For these reasons, California courts and the Ninth Circuit recognize a need to reward Plaintiff's Counsel who accept

a case on a contingency basis.  In *Ketchum v. Moses*, 24 Cal. 4th 1122 (2001), the California Supreme Court instructed courts to upwardly adjust fee compensation to ensure that the fees account for contingency risk:

> A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions.  If he is paid no more, competent counsel will be reluctant to accept fee award cases.

*Ketchum*, 24 Cal. 4th at 1133.

Similarly in *In re Washington Pub. Power Supply*, the Ninth Circuit underscored the importance of rewarding attorneys who take cases on a contingency basis:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.  *See* Richard Posner, Economic Analysis of Law § 21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for Plaintiff who could not afford to pay on an hourly basis regardless whether they win or lose.

*In re Washington Pub. Power Supply.*, 19 F.3d at 1299, 1300-01 ("in the common fund *context*, attorneys whose compensation depends on their winning the case, must make up in compensation in the cases they win for the lack of compensation in the cases they lose.").

As reflected in *Ketchum* and *In re Washington*, attorneys accepting contingent fee cases should be compensated in amounts greater than those earned by attorneys who bill and receive payment by the hour, as this fact reflects the risks undertaken in a contingent practice.  If a contingent-fee attorney were awarded fees at the same level as an hourly-fee attorney, it would be economically irrational for any attorney to accept a contingent-fee case because there would be absolutely no incentive to accept the risks inherent in such representation.  *See* Posner, Economic Analysis of Law (4th ed. 1992), at 534, 567 ("A contingent fee must be higher than a fee for the same legal services

paid as they are performed.  The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.  The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans."); Leubsdorf, *The Contingency Factor in Attorney Fee Awards* (1981) 90 Yale L.J. 473, 480 ("A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.").

Apart from the general risks attendant to contingency litigation, Plaintiff's Counsel here assumed considerable additional risk.  Aside from establishing that the at-issue forms did not comply with the FCRA, Plaintiff must show that Defendant's FCRA violation was "willful."  *See* 15 U.S.C. § 1681n(a).  In *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-59 (2007), the United States Supreme Court explained that "willful" applies not only to "knowingly" violating the FCRA, but to actions that constitute a "reckless disregard of statutory duty."  *See also Willes v State Farm Fire & Cas. Co.*, 512 F.3d 565, 566 (9th Cir. 2008) (applying the "reckless disregard" standard).  Although *Safeco* clarified that a plaintiff need not establish that defendant "knowingly and intentionally" committed the violations, the Court left room for defendants to claim "reasonable construction" or even "careless construction" of the Act as a defense.  *See*, *e.g.*, *Shlahtichman v 1-800 Contacts, Inc.*, 615 F.3d 794 (7th Cir. 2010) (holding that a defendant was not liable for statutory damages because the violation arose from a "reasonable construction" that the truncation requirement of § 1681c(g) was inapplicable to email receipts).

The availability of these defenses to Defendant, coupled with Plaintiff's burden to show that Defendant engaged in "reckless disregard of statutory duty," makes it challenging for Plaintiff to prove ultimate liability.  *See In re Toys 'R' Us-Del., Inc. FACTA Litig.*, 295 F.R.D. at 451 (finding that the "strength of Plaintiff's case" factor

"weighs in favor of settlement" where "willfulness" under FCRA is a triable issue); *see also Torres v. Pet Extreme*, 2015 U.S. Dist. LEXIS 5136,  at *13 (Findings & Rec. of Mag. Judge) ("Given the uncertainty of litigating this issue of willfulness [under 15 U.S.C. §1681n]…[this] weighs in favor of settlement").

    Indeed, three California district courts recently dismissed similar claims brought by other plaintiffs.  *See Coleman v. Kohl's Department Stores, Inc.*, No. 3:15-cv-02588-JCS (Order Granting Defendant's Motion to Dismiss), *9 (N.D. Cal. Oct. 2, 2015) (finding that plaintiffs failed to plead a cognizable violation of the FCRA); *Peikoff v. Paramount Pictures Corp.*, No. 15-cv-00068-VC, Dkt. No. 13 (Order Granting Defendant's Motion to Dismiss), *2 (N.D. Cal. Mar. 25, 2015) (finding that employee's inclusion of a liability waiver provision in an FCRA disclosure is not willful and dismissing claim); *Syed v. M-I LLC*, No. 1:14-742-WBS, 2014 U.S. Dist. LEXIS 150748, **8-10 (E.D. Cal. Oct. 22, 2014) (same).  These courts rejected that facial violations alone could merit liability under the FCRA, holding that a defendant cannot be found to have "plausibly" acted in reckless disregard of a statutory duty "even if inclusion of the [waiver] in [defendant's] disclosure form did not comply with a strict reading of 15 U.S.C. §1681b(b)(2)'s requirement that the document consists solely of the disclosure and authorization."  *Peikoff*, at *2; *see also Syed*, 2014 U.S. Dist. LEXIS 150748, at *9 (finding that defendant's understanding of the FCRA as not barring the inclusion of a waiver on the disclosure form is "not objectively unreasonable" and dismissing claim with prejudice).  As some courts have categorically rejected the theory of liability advanced here, Plaintiff faces substantial risk of a complete loss in this case.

    Moreover, in April 2015, the United States Supreme Court granted the defendant's writ of certiorari in *Spokeo, Inc. v. Robins*, No. 13-1339 (2015) to decide whether Article III confers standing to a plaintiff who alleges a statutory violation of the FCRA without showing concrete injury.  If the Supreme Court rules that Article III standing is satisfied only upon a showing of concrete injury, then Plaintiff's claims will

likely be extinguished.  Plaintiff therefore faces substantial risk that, were she to continue to litigate, her case would be dismissed for lack of standing.

In summary, Plaintiff's Counsel run a high risk of obtaining nothing from this action after expending over a thousand hours of attorney time, an enhancement on their fees ensures that the risks do not outstrip the incentives to pursue claims on behalf of job applicants and employees.  The high contingent risk borne by Plaintiff's Counsel thus supports the fee request.

### 3. The Skill of Counsel and Work Performed Support the Fee Request

The skill and experience of counsel and nature of work performed, also militate in favor of Plaintiff's fee request.  *See City of Burlington v. Dague*, 505 U.S. 557, 562-563 (1992).  Plaintiff's Counsel are seasoned attorneys with considerable experience in consumer class actions.  (Friedl Decl. ¶ 10; Ex. A.)  Here, Plaintiff's Counsel's skillfully adapted their litigation strategies to address the challenges posed by adverse case law on Rule 23 and the FCRA.  They also thoroughly investigated Plaintiff's claims and carefully analyzed documents and data provided by Defendants to assess its potential exposure as to the claims at issue.  With this information, Plaintiff's Counsel developed theories of certification and liability that were persuasively presented at the Settlement Conference, paving the way for settlement.

### D. The Lodestar Cross-Check Attests To the Reasonableness of the Negotiated Fee Request

Plaintiff's fee request is premised primarily on a percentage of the settlement value, the prevailing method in cases of this kind.  However, after making that determination, this Court may also use a lodestar analysis as a final "cross-check" on the percentage method.  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1296-98.  Where the use of the lodestar method is used as a cross-check, it can be performed with a less exhaustive cataloguing and review of counsel's hours.  *See In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005) ("The lodestar cross-

check calculation need entail neither mathematical precision nor bean-counting."); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007) ("Although counsel have not provided a detailed cataloging of hours spent, the Court finds the information provided to be sufficient for purposes of lodestar cross-check.").

The lodestar method is calculated by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). In considering rates, courts examine the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Here, the hourly rates for Plaintiff's Counsel are comparable to those approved in other cases in California and in the Southern California community—including cases where the rates of Capstone attorneys were specifically approved. *See Klee v. Nissan N. Am., Inc.,* 2015 U.S. Dist. LEXIS 88270, *38 (C.D. Cal. July 7, 2015) (approving rates of $370 to $695 for attorneys at Capstone); *See Aarons v. BMW of North America*, No. 11-7667-PSG, 2014 U.S. Dist. LEXIS 118442, **40-41 (C.D. Cal. Apr. 29, 2014) (based on "the Court's own experience with hourly rates in the Los Angeles area" awarding rates ranging from $775 for the requested partner to $390-$630 for non-partners, including attorneys at Capstone); *Asghari v. Volkswagen Group of America, Inc.*, No. 2:13-cv-02529-MMM-VBK (C.D. Cal. May 29, 2015) (approving billing rates of $695 and $520 for senior counsel and $495 and $370 for associates).[7]

The hours billed by Plaintiff's Counsel to the litigation are also reasonable. In

---

[7] *See also Kearney v. Hyundai Motor Am.*, No. SACV 09-1298-JST (MLGx), 2013 U.S. Dist. LEXIS 91636, *24, (C.D. Cal. June 28, 2013) (approving hourly rates of $650-$800 for senior attorneys in a class action); *Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010) (approving hourly rates between $445 and $675); *Barrera v. Gamestop Corp.*, No. CV 09-1399 (C.D. Cal. Nov. 29, 2010) ($700 an hour for partners; $475 an hour for associates); *Anderson v. Nextel Retail Stores, LLC*, No. CV 07-4480 (C.D. Cal. June 20, 2010) ($655 to $750 an hour for partners; $300 to $515 an hour for associates).

considering reasonable hours, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  As the summary of hours attests,[8] Plaintiff's Counsel expended 1037 hours of the date of this Motion.[9]  (*See* Friedl Decl. ¶ 12.)  The resulting base lodestar, consisting of reasonable hours and rates, is $606,665.  (*Id*.)  The application of a modest multiplier of 1.48 to that base lodestar results in the requested fee amount of $900,000, confirming the reasonableness of the fee request.

On a lodestar cross-check, courts "routinely enhance[] the lodestar to reflect the risk of non-payment in common fund cases." *Vizcaino*, 290 F.3d at 1051.  Such an enhancement "mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Id*.  In *Vizcaino*, the Ninth Circuit affirmed a lodestar multiplier of 3.65, after analyzing a table of the most commonly applied multipliers. *Id*. at 1051.  This is within the "3-4 range [of] common" multipliers, on a lodestar cross-check, for sophisticated class actions. *Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 298 (N.D. Cal. 1995);*see also Steiner v. American Broad. Co*., 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming fee award where the lodestar multiplier was 3.65); *McKenzie v. Federal Express Corp*., No. 10-02420-GAF, 2012 U.S. Dist. LEXIS 103666 (C.D. Cal. July 2, 2012) (approving a

---

[8] It is well established that "[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records." *Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 264 (N.D. Cal. 2015)  (quoting *In re Rite Aid Corp. Secs. Litig*., 396 F.3d at 306.

[9] This does not include hours written off in the exercise of billing discretion.  Nor does it include additional hours that Plaintiff's Counsel will expend preparing the motion for final approval, fielding class member phone calls after the date of this filing, overseeing other issues with payment disbursement, preparing for and attending the final fairness hearing, and responding to any potential objectors.

multiplier of 3.2 on a lodestar cross-check in awarding percentage-based fees in wage and hour class action).  A modest multiplier of 1.48 is well within the range of reasonableness.  *See Elliot v. Rolling Frito-Lay Sales*, 2014 U.S. Dist. LEXIS 83796, at *26 (approving a fee award with a 1.73 multiplier to the lodestar on a cross-check).

Moreover, the main reason that a multiplier is needed at all is due to Plaintiff having settled relatively early in the litigation.  The decision to settle early is to be lauded, since class members avoid the risks of additional litigation and are assured of substantial and immediate monetary recovery.  "[T]he promptness of settlement cannot be used to justify the refusal to apply a multiplier to reflect the size of the class recovery without exacerbating the disincentive to settle promptly inherent in the lodestar methodology." *Lealao*, 82 Cal. App. 4th at 53.  *Lealao* explains that, without a multiplier, Plaintiff's counsel would have the financial incentive to protract the litigation unnecessarily, causing delay in payment to Class Members.  *Id*.

A lodestar adjustment would also be justified in light of Plaintiff's Counsel's delayed payment. *Missouri v Jenkins*, 491 U.S. 274, 284 (1989) ("an appropriate adjustment for delay in payment" should be factored into the calculation of a fee award); *see also Fischel v. Equitable Life Assur. Soc.*, 307 F.3d 997 (9th Cir. 2002) (in common fund cases, delay in obtaining payment must be compensated).  Indeed, under federal case law, delay must be considered **separately** from any enhancement for contingency.  Here, Plaintiff's Counsel have been paid nothing thus far for their work, advancing attorney and staff salaries and litigation expenses for the past two years as this action was being litigated on behalf of the class.

The amount of the requested fees, $900,000, representing a small multiplier of 1.48 to Plaintiff's Counsel's base lodestar of $606,665, is clearly reasonable and should be approved.

### E.   Plaintiff's Out-Of-Pocket Expenses Should Be Reimbursed

Defendant has agreed to pay Plaintiff's Counsel's litigation expenses as part of the negotiated fees.  For these expenses, the rule is that prevailing parties may recover,

as part of statutory attorneys' fees, "litigation expenses…when it is 'the prevailing practice in the given community' for lawyers to bill those costs separately from their hourly rates." *Trs. of the Constr. Indus. and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006) (citation omitted).  In California, attorneys are reimbursed for out-of-pocket expenses "such as '1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees.'" *Johnson v. General Mills, Inc.*, No. 10-00061-CJC, 2013 U.S. Dist. LEXIS 90338, *20-*21 (C.D. Cal. June 17, 2013) (quoting *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (both courts awarding the requested expenses, including for expert witnesses, mediation, photocopying and computerized research).

Here, Plaintiff's Counsel have expended $7,270.75, which includes court fees, court reporter charges, delivery and postage, copies, PACER charges, travel expenses and mediation fees that would normally be billed to a paying client.  (Friedl Decl. ¶ 16.)  These expenses advanced to the Class are reasonable and should be reimbursed.

### F.     The Enhancement Payment to the Named Plaintiff Is Fair and Reasonable

"Incentive awards are fairly typical in class action cases . . . Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class . . . ." *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 958 (9th Cir. 2009) (citing 4 *William B. Rubenstein et al.*, *Newberg on Class Actions* § 11:38 (4th ed. 2008)).  These payments work both as an inducement to participate in the suit and as compensation for time spent in litigation activities.  *See Matter of Continental Illinois Securities Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) (stating that an enhancement award should be in such an amount "as may be necessary to induce [the class representative] to participate in the suit").

So long as the enhancement award does not create a conflict of interest between

the named Plaintiff and class members,[10] modest payments to named plaintiff for services are customary and generally approved.  *See Van Vranken*, 901 F. Supp. at 300. To determine whether the proposed enhancement payment is fair and reasonable, many courts in the Ninth Circuit apply "the five-factor test set forth in *Van Vranken*." *Grant v. Capital Mgmt. Servs., L.P.*, 2014 U.S. Dist. LEXIS 29836 *19 (S.D. Cal. Mar. 5, 2014).  Under the *Van Vranken* test, courts consider:  (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken*, 901 F. Supp. at 299.

However, not all factors need to present.  Rather, the Court may weigh the factors and, award fees that are "just and reasonable under the circumstances."  *See, e.g., In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 472 (C.D. Cal. 2014) (citing *Van Vranken*, 901 F. Supp. at 299).  Here, the proposed enhancement payment of $5000 to M. Fernandez is fair, reasonable and consistent with the amount typically awarded in class actions.[11]

---

[10] The facts here do not create or exacerbate actual or potential conflicts between the named plaintiffs and the class—the primary ground for denying enhancement awards.  *See Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1165 (9th Cir. 2013) (finding that an agreement conditioning incentive payment on approving the class action settlement created a conflict between the class and the Plaintiff in denying the incentive award and settlement); *Rodriguez v. Disner*, 688 F.3d 645, 651 (9th Cir. 2012) (finding an agreement conditioning incentive payment requests to the amount recovered by the class to be improper).  Here, there is no agreement of any kind that ties Plaintiffs' request for incentive payments to any condition.  As there is no actual or potential conflict between the class representatives and the class, the Court should not deny incentive payments to Plaintiffs.

[11] For instance, a $5,000 incentive payment to a class representative is "presumptively reasonable" in the Northern District of California.  *Faigman v. AT & T Mobility LLC*, No. C06-04622 MHP, 2011 U.S. Dist. LEXIS 15825, 2011 WL 672648, *5 (N.D. Cal. Feb. 16, 2011).  Other courts have also used $5,000 as a benchmark for incentive awards.  *See, e.g., In re Mego Financial Corp.*, 213 F.3d at 463 (approving a $5,000 incentive award for each class representative); *Dennis v.*

First, the enhancement payment is justified in light of the reputational risk that Plaintiff has assumed by litigating claims against an employer or prospective employer. *See Guippone v. BH S&B Holdings LLC*, No. 09 Civ. 1029, 2011 U.S. Dist. LEXIS 126026, at **4, 20 (S.D.N.Y. Oct. 28, 2011) ("[T]he fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person . . . Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members."). Employers commonly screen employee candidates to determine whether they have ever filed suit, and employee candidates who might be branded "litigious" are likely to be screened out of the process. In fact, an entire industry has developed for providing employers with background information on employee candidates. Plaintiff runs the risk of being branded "litigious" by prospective employers, and may be denied future employment on that basis.

Second, the enhancement award is reasonable because Plaintiff "remained fully involved and expended considerable time and energy during the course of the

---

*Kellogg Co.*, No. 09-CV-1786-IEG (WMc), 2010 U.S. Dist. LEXIS 116924, 2010 WL 4285011, *3 (S.D. Cal. Oct. 14, 2010) (preliminarily approving an incentive award of $5,000); *Aguayo v. Oldenkamp Trucking*, No. F04-6279 AWI LJO, 2006 U.S. Dist. LEXIS 79425, 2006 WL 3020943, *10 (E.D. Cal. Oct. 17, 2006) (preliminarily approving a settlement agreement, which provided that class counsel would apply for an incentive award of no more than $5,000 for the named plaintiff). $10,000 or more can be awarded for to class representatives. *See, e.g., Bernal v. Davita, Inc.*, Case No. 5:12-cv-03255-PSG, *2 (N.D. Cal, Jan. 14, 2014) ($10,000 incentive payment in $3.4 million class settlement); *York v. Starbucks Corp.*, No. 08-07919 GAF, Dkt. No. 239, at *4 (C.D. Cal. Oct. 29, 2013) (approving enhancement award of $10,000 in a $3 million class settlement); *Ross v. US Bank Nat'l Ass'n*, No. 07-02951-SI, 2010 U.S. Dist. LEXIS 107857 (N.D. Cal. Sept. 29, 2010) (approving enhancement awards of $20,000 each to four class representatives in a $3.5 million class action settlement); *Stevens v. Safeway, Inc.*, No. 05-01988, 2008 U.S. Dist. LEXIS 17119, **34-37 (C.D. Cal. Feb. 25, 2008) ($20,000 and $10,000 award); *Amochaev v. Citigroup Global Markets, Inc.*, No. 05-1298 PJH (N.D. Cal. Aug. 13, 2008) (approving enhancement awards of $50,000 and $35,000 to employees in light of factors that included fear of workplace retaliation).

litigation." *Schaffer v. Litton Loan Servicing, LP*, No. 05-07673-MMM, 2012 U.S. Dist. LEXIS 189830, *61 (C.D. Cal. Nov. 13, 2012) (citation omitted). As detailed in her declaration, Plaintiff expended considerable time and effort assisting her attorneys with the prosecution of the class' claims and attending mediation, and her unique contributions to the litigation should be rewarded. (*See* Fernandez Decl. ¶¶ 3-8.)

Third, the enhancement payment is appropriate because Plaintiff would otherwise "not gain any benefit beyond that he [or she] would receive as an ordinary class member." *In re Toys "R" Us FACTA Litig.*, 295 F.R.D. at 472; *Van Vranken*, 901 F. Supp. at 299 (holding that a substantial award is appropriate where a class representative's claim made up "only a fraction of the common fund."). Here, absent the enhancement payment, Plaintiff will recover no more than other Class Members, despite her personal sacrifices in bringing this suit on behalf of the Class.

Moreover, Plaintiff has also agreed to generally release all claims she may have against Defendants. These general releases are considerably broader than the separate, narrower releases required of Class Members. *See Schaffer*, 2012 U.S. Dist. LEXIS 189830, at *64 ("[C]lass representatives released their actual damages claims as part of the Settlement. This ["personal benefit"] factor, therefore weighs in favor of approving the Enhancement Payments.").

The amount of the requested enhancement payment is also reasonable by reference to the amounts that district courts in this Circuit have repeatedly found to be reasonable for class action settlements. (*See* n.11, *supra*.) In sum, the proposed enhancement payment to Plaintiff for her services in this action, the general release of all claims she has against Defendant, her assistance in prosecuting the claims, and the risk of being branded "litigious" by prospective employers, is reasonable and deserved.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant the Motion for Attorneys' Fees, Litigation Expenses, and Class Representative Enhancement Payment.

Dated:  October 5, 2015                    Respectfully submitted,

                                           Capstone Law APC


                                    By:  /s/  Robert K. Friedl
                                         Jordan L. Lurie
                                         Robert K. Friedl
                                         Tarek Zohdy
                                         Cody R. Padgett

                                         Attorneys for Plaintiff Irene Fernandez

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND A CLASS REPRESENTATIVE ENHANCEMENT PAYMENT