1  Jordan L. Lurie (SBN 130013)
   Jordan.Lurie@capstonelawyers.com
2  Robert K. Friedl (SBN 134947)
   Robert.Friedl@capstonelawyers.com
3  Tarek H. Zohdy (SBN 247774)
   Tarek.Zohdy@capstonelawyers.com
4  Cody R. Padgett (SBN 275553)
   Cody.Padgett@capstonelawyers.com
5  Capstone Law APC
   1840 Century Park East, Suite 450
6  Los Angeles, California 90067
   Telephone:   (310) 556-4811
7  Facsimile:   (310) 943-0396

8  Attorneys for Plaintiff Irene Fernandez

9

10              UNITED STATES DISTRICT COURT

11      CENTRAL DISTRICT OF CALIFORNIA—SOUTHERN DIVISION

12

13  IRENE FERNANDEZ, individually,          Case No.: SACV-13-648-DOC (RNBx)
    and on behalf of other members of the
14  general public similarly situated,       **CLASS ACTION**

15              Plaintiff,                    **PLAINTIFF'S NOTICE OF MOTION
                                             AND MOTION FOR FINAL
16      vs.                                  APPROVAL OF CLASS ACTION
                                             SETTLEMENT; MEMORANDUM
17  HOME DEPOT, U.S.A., Inc., a              OF POINTS AND AUTHORITIES**
    Delaware corporation,
18                                           Date:   January 11, 2016
                Defendant.                   Time:   8:30 a.m.
19                                           Place:  Courtroom 9D

20
                                             Complaint Filed: April 24, 2013
21

22

23

24

25

26

27

28

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 11, 2016 at 8:30 a.m., in Courtroom 9D of the above-captioned Court, located at 411 West Fourth Street, Santa Ana, CA 92701, the Honorable David O. Carter presiding, Plaintiff Irene Fernandez, on behalf of herself and all others similarly situated, will, and hereby does, move this Court to grant final approval of: (1) the Parties' Amended Settlement Agreement; (2) settlement payments to participating Class Members; and (3) costs/expenses to the settlement administrator, Kurtzman Carson Consultants.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of the Motion for Final Approval of the Class Action Settlement; (3) the Declaration of Robert K. Friedl; (4) the Declaration of Jeffrey Gyomber on Behalf of the Settlement Administrator; (5) the [Proposed] Order Granting Final Approval of Class Action Settlement; (6) the records, pleadings, and papers filed in this action; and (7) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this motion.

Dated: November 2, 2015                                Respectfully submitted,

Capstone Law APC

By: /s/ Robert K. Friedl
     Jordan L. Lurie
     Robert K. Friedl
     Tarek H. Zohdy
     Cody R. Padgett

Attorneys for Plaintiff Irene Fernandez

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................1

II.  FACTS AND PROCEDURE...................................................................3

    A.   Overview Of The Litigation .......................................................3

    B.   Plaintiff's Investigation And Discovery ....................................4

    C.   The Parties Engaged In Arm's-Length Settlement
       Negotiations................................................................................5

    D.   Material Terms Of The Proposed Class Action Settlement .................6

       1.   The Proposed Settlement Class .........................................6

       2.   The Settlement Benefits.....................................................6

       3.   A Narrow Release ..............................................................7

       4.   Proposed Attorneys' Fees, Litigation Expenses, and
          Service Awards ..............................................................8

    E.   The Notice and Claims Administration Process Were
       Completed Pursuant to the Court Order ...................................8

III. ARGUMENT ........................................................................................9

    A.   The Court Should Grant Final Approval of the Class
       Settlement ...................................................................................9

       1.   The Standard for Final Approval Has Been Met .......................9

       2.   The Settlement Is Reasonable In Light of the
          Strengths and Weaknesses of Plaintiff's Case ......................... 11

       3.   The Risk, Expense and Complexity of the Case,
          Including the Risk of Decertification, Favor
          Approval of the Settlement............................................... 15

       4.   The Amount Offered In Settlement Supports
          Approving the Settlement.................................................. 16

1                5.      The Amended Settlement Was Finalized After a

2                     Thorough Investigation...............................................................17

3                6.      The Views of Experienced Counsel Should Be

4                     Accorded Substantial Weight....................................................18

5                7.      The Settlment Class Has Responded Positively To

6                     The Settlement............................................................................19

7     B.     The Requested Payment to the Claims Administrator Is

8            Reasonable and Should Receive Final Approval...............................20

9  IV.   CONCLUSION..............................................................................20

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010)........................ 14

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848
    (N.D. Cal. 2010) ....................................................................... 19

*Churchill Village v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004).......................... 19, 20

*Coleman v. Kohl's Department Stores, Inc.*, No. 3:15-cv-02588-JCS
    (N.D. Cal. Oct. 2, 2015) ....................................................... 13

*Eisen v. Porsche Cars North American, Inc.*, Case No. 11-09405,
    2014 U.S. Dist. LEXIS 14301, 2014 WL 439006 (C.D. Cal. Jan. 30,
    2014)............................................................................... 17, 18

*Garner v. State Farm Mut. Auto Ins*., No. 08-1365-CW, 2010 U.S. Dist.
    LEXIS 49477 (N.D. Cal. Apr. 22, 2010) ................................ 19

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................... 10, 11, 19

*In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ................. 17

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................ 20

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) .............................. 18

*In re Portal Software Inc. Sec. Litig.,* No. C-03-5138 VRW,
    2007 U.S. Dist. LEXIS 88886 (N.D. Cal. Nov. 26, 2007)................. 16

*In re Toys 'R' Us FACTA Litig*., 295 F.R.D. 438 (C.D. Cal. Jan. 17,
    2014)......................................................... 13, 15, 16, 17, 19

*Lane v. Facebook, Inc.*, No. 08-3845-RS, 2010 U.S. Dist. LEXIS 24762
    (N.D. Cal. Mar. 17, 2010) ..................................................... 15

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998)............. 16, 17

*London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246 (11th Cir. 2003) .................... 14

*Long v Tommy Hilfiger U.S.A.*, 671 F.3d 371(3d Cir. 2012) ........................... 13

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003)......................................... 11

*National Rural Tele. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523 (C.D.

   Cal. 2004) ........................................................................................ 11, 19

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615

   (9th Cir. 1982) ............................................................................ 10, 11, 16

*Peikoff v. Paramount Pictures Corp*., No. 15-cv-00068-VC,

   Dkt. No. 13 (N.D. Cal. Mar. 25, 2015) ............................................ 13, 15

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ......10, 12, 15, 19

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) .................................... 12

*Serna v. Big A Drug Stores, Inc*., No. 07-0276 CJC, 2007 U.S. Dist.

   LEXIS 82023 (C.D. Cal. Oct. 9, 2007) ................................................. 14

*Shlahtichman v 1-800 Contacts, Inc.*, 615 F.3d 794 (7th Cir. 2010) ...................... 12

*Syed v. M-I LLC*, No. 1:14-742-WBS, 2014 U.S. Dist. LEXIS 150748

   (E.D. Cal. Oct. 22, 2014)................................................................... 13, 15

*Torres v. Pet Extreme*, No. 13-01778-LJO,

   2015 U.S. Dist. LEXIS 5136 (E.D. Cal. Jan. 15, 2015)....................13, 15, 16, 17

*Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482 (E.D. Cal. 2010).............. 16

*Willes v State Farm Fire & Cas. Co*., 512 F.3d 565 (9th Cir. 2008) ...................... 12


**FEDERAL STATUTES**

15 U.S.C. §§ 1681 *et seq*. (Fair Credit Reporting Act (FCRA)) ......................*passim*

Fed. R. Civ. P. 23(e) ....................................................................................9


**SECONDARY AUTHORITIES**

*Manual for Complex Litigation* (4th ed. 2004)........................................... 10

1    **I.    INTRODUCTION**

2           Following this Court's granting of preliminary approval of the Amended

3    Settlement Agremeent[1] on July 16, 2015, Plaintiff Irene Fernandez and Defendant

4    Home Depot U.S.A., Inc. ("Defendant" or "Home Depot"), working with the

5    settlement administrator, Kurtzman Carson Consultants ("KCC"), distributed the

6    Court-approved Class Notice to the Class consisting of over 150,000 job applicants to

7    Home Depot.  The response of the Class has been overwhelmingly positive, with

8    only 138 opt-outs and a single (procedurally defective) objection.

9           Plaintiff now seeks final approval of the Amended Settlement Agreement,

10   which Home Depot does not oppose.  Under the terms of the Amended Settlement

11   Agreement, Home Depot will establish a $3 million dollar **non-reversionary**

12   **settlement fund** ("Settlement Fund") to resolve Plaintiff's claims that Home Depot

13   violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*., by

14   including a release of liability in two preauthorization background disclosure forms,

15   the "the AIMS Form" (*see* Dkt. No. 49, Exhibit 1 to Amended Settlement

16   Agreement) and "the 2009 Form" (*see id.*, Exhibit 2 to Amended Settlement

17   Agreement).  Settlement Class Members need not take any further action to receive a

18   check.  Payment from the Settlement Fund will be automatic, without requiring the

19   submission of claim forms.  Settlment Class Members are also eligible for a

20   supplemental settlement payment, to be drawn from funds, if any, constituting initial

21   settlement payments that remain uncashed 60 days after mailing.  Any remaining

22   funds will go to the cy pres designee, Working Wardrobes.  Home Depot has also

23   agreed to no longer use the allegedly offending forms, and to use a background check

24   form that complies with the FCRA.

25          In exchange for these benefits, Settlement Class Members will release their

26   _____

27   [1] Hereinafter, "Amended Settlement Agreement" or "Amended Settlement."
     Unless indicated otherwise, all capitalized terms used herein have the same meaning

28   as those defined by the Amended Settlement Agreement.

FCRA and related California law claims related to the allegedly offending pre-authorization forms, with adverse action claims specifically excluded from the release.

The Amended Settlement is fair, reasonable and adequate.  Plaintiff had thoroughly investigated the claims for over two years on behalf a class and, in the course of doing so, assessed the value of the Settlement in light of the risks posed by further litigation.  As part of Plaintiff's investigation, Plaintiff's counsel, among other things, culled through various background check forms that Home Depot used to conduct background checks for over 340,000 applicants.  Plaintiff's counsel also reviewed over 3,000 documents produced by Home Depot, including  background check policies, record retention policies, and  actual background check disclosure and authorization forms signed by applicants for employment at Home Depot during the class period.

Plaintiff's counsel also analyzed the case law on the FCRA, including whether Home Depot "willfully failed to comply" with the FCRA's requirements (*see* 15 U.S.C. § 1681n(a)), as well as other types of actions, included the related Fair & Accurate Credit Transactions Act, 15 U.S.C. §§ 1681 *et seq.* ("FACTA"), where "willfulness" and "proof of actual injury" are frequently disputed.  And the United States Supreme Court's impending decision in *Spokeo, Inc. v. Robins*, No. 13-1339 could spell doom for Plaintiff.  *Spokeo* will decide whether a plaintiff who alleges bare violations of the FCRA, without showing concrete injury, has Article III standing.  Had Plaintiff decided to continue to litigate this action, her claims may well have been extinguished by the outcome of the *Spokeo* appeal.

With a full understanding of the strengths and weaknesses of her case, Plaintiff engaged in arms'-length negotiations with Home Depot, finally reaching an agreement following extensive negotiations during and after a mediation before the Honorable Howard Wiener (Ret.).  Following a hearing with this Court, the parties returned to the negotiating table and modified the original Settlement, including

agreeing to a non-reversionary settlement.  The Court subsequently granted preliminary approval of the Amended Settlement upon a renewed motion.

Following the distribution of the Class Notice and in light of the Class's overwhelmingly positive response, Plaintiff respectfully request that the Court grant this Motion for Final Approval of the Class Action Settlement and retain jurisdiction to enforce the Settlement.

## II.    FACTS AND PROCEDURE

### A.    Overview Of The Litigation

On April 25, 2011, Plaintiff applied for a job with Home Depot by completing an employment application.  As part of the application process, Plaintiff signed two background check authorization forms.  These forms have been designated "the AIMS Form" (Exhibit 1 to the Amended Settlement Agreement) and "the 2009 Form" (Exhibit 2 to the Amended Settlement Agreement).  The AIMS form discloses that the applicant "may be the subject of a consumer report requested by [defendant] from an outside agency, which may contain information about [applicant's] credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, and mode of living, whichever are applicable."  In addition, the AIMS form also contains the following provisions:

> I release Home Depot and/or its agents and any person or entity which provides information pursuant to this authorization from any and all liabilities, claims or lawsuits in regard to the information obtained from any and all of the above referenced sources.

> I further agree that the giving of false, misleading or incomplete information either on my employment application or this form, will be grounds for the denial or termination of my employment

> The Home Depot is an equal opportunity employer and does not discriminate against applicants or employees with regard to race, color, gender, sexual orientation, age, religion, national origin, disability, or any characteristic protected by applicable law.  I understand that inquiries on this form which ask for my address and date of birth are for identification purposes only.  I understand that age is not considered in making employment decisions at Home Depot and that Home

1             Depot will not have access to my date of birth unless
2             and until a conditional offer of employment has already
              been made to me.

3        The 2009 Form similarly states that Home Depot intends to conduct a

4  background investigation that may involve obtaining a consumer report or

5  investigative consumer report from an outside agency. In addition, the 2009 Form

6  also contains the following provisions:

7             I release Home Depot and/or its agents and any person
              or entity that information pursuant to this authorization
8             from any and all liabilities, claims, or lawsuits in regard
              to the information obtained from any and all of the
9             above referenced sources.

10             I agree that the giving of any false, misleading, or
              incomplete information either on my employment
11             application or this form will be grounds for the denial
              or termination of employment.

12

13        Plaintiff alleges that Home Depot violated the FCRA. Specifically, the FCRA

14  requires that the "preauthorization" form, which discloses the employer's intent to

15  obtain a credit report or background check on a current or prospective employee,

16  must contain only the disclosure. (Complaint ¶ 53.) This means that the form may

17  not include any extraneous information, such as a release of liability for the

18  employer; any release must be separate from the disclosure. According to Plaintiff,

19  Home Depot violated the FCRA by including releases of liability in their

20  preauthorization background and/or credit check disclosure forms. (*Id.*)

21       **B.**    **Plaintiff's Investigation And Discovery**

22        Prior to filing of this action, Plaintiff thoroughly investigated her claims.

23  Plaintiff also has conducted investigation and discovery after filing the action in

24  order to prove up her claims and rebut Home Depot's defenses. (Declaration of

25  Robert K. Friedl ["Friedl Decl."] ¶ 3.)

26        The investigation was complicated because, during the class period, Home

27  Depot conducted background checks on over 340,000 applicants, but not all of these

28  background checks used the allegedly violative AIMS Form and 2009 Form. As part

of the investigation, Plaintiff's counsel reviewed over 3,000 documents produced by Home Depot in order to confirm which forms were used and by whom during the class period.  Plaintiff's counsel also reviewed Home Depot's background check policies, record retention policies, and the actual background check disclosure and authorization forms signed by various applicants who applied for employment at Home Depot duing the class period.  (Friedl Decl. ¶ 3.)

Plaintiff's counsel also reviewed documents supporting Home Depot's contention that its alleged violations of the FCRA and related statutes was not "willful."  (Friedl Decl. ¶ 4.)  Finally, Plaintiff's counsel interviewed a designatied Home Depot representative who was familier with this case, the forms used by Home Depot, its policies and efforts to comply with the FCRA and related statutes.  (*Id.*) Because this case turns on Home Depot's legal defense that Settlement Class Members suffered no "actual injury" and that Home Depot's noncompliance was purportedly not "willful" under the FCRA, Plaintiff's counsel thoroughly analyzed the evolving, and often conflicting case law governing FCRA class actions, as well as law governing related statutes such as FACTA.  All of this  review and investigation allowed Plaintiff's counsel to structure a settlement that provides benefits directly to the persons who were required to use the violative forms.

## C.      The Parties Engaged In Arm's-Length Settlement Negotiations

The proposed Settlement was the culmination of protracted discussions between the parties following a thorough analysis of the pertinent facts and law at issue.  On December 4, 2013, the parties attended a mediation in San Diego conducted by the Honorable Howard B. Wiener.  (Friedl Decl. ¶ 5.)  In advance of the mediation, the parties submitted mediation briefs setting forth their positions. (*Id.*) Although the parties did not agree to final terms at the mediation, counsel for the parties continued to engage in settlement discussions.  (*Id.*)

Following protracted negotiations, the parties, with the assistance of Justice Wiener, were able to reach an agreement on all material terms of the proposed relief

1  to the Class and the attorneys' fees, costs and incentive awards separately, reducing
2  all terms to the original Settlement Agreement.  (Friedl Decl. ¶ 6.)

3       The parties submitted the original Settlement Agreement to the Court for its
4  consideration.  At a hearing on May 8, 2015, the Court continued the Motion and on
5  June 8, 2015, ordered this renewed motion to be filed by July 6, 2015.  The parties
6  then returned to the negotiating table, and renegotiated certain terms, including the
7  payment structure and the scope of the release.  (Friedl Decl. ¶ 7.)  The parties
8  finalized the Amended Settlement in July, 2015, which is submitted to this Court for
9  final approval.

10      **D.**    **Material Terms Of The Proposed Class Action Settlement**
11          **1.**    **The Proposed Settlement Class**

12       Settlement Class Members consists of all persons who, between April 24,
13  2011 to July 27, 2015, applied for employment with Home Depot and executed the
14  AIMS form or the 2009 Form and do not opt-out of the settlement.  (Amended
15  Settlement  ¶¶ 11, 29, 35.)

16          **2.**    **The Settlement Benefits**

17       Under the Amended Settlement, Home Depot agrees to pay $3 million into a
18  nonreversionary settlement fund (Settlement Fund) from which all payments will be
19  drawn.  (Amended Settlement Agreement ¶ 33.)  All Settlement Class Members who
20  do not submit valid and timely Requests for Exclusion will receive a Settlement Cash
21  Payment check without having to fill out a Claim Form.   (*Id.* ¶¶ 30, 37.)  Each
22  Settlement Class Member will receive a pro rata share from the Net Settlement Fund
23  (the Settlement Fund less costs for claims administration, attorneys' fees and costs,
24  and incentive payments).  (*Id.*)  Settlement Class Members will also be eligible to
25  receive Supplemental Settlement Cash Payment checks drawn from the remaining
26  Net Settlement Fund representing monies for checks uncashed sixty days after
27  issuance, provided that amount is at least $10 per Settlement Class Member.  (*Id.*
28  ¶ 34)  These Supplemental Settlement Cash Payment checks will also be paid

1  automatically to Class Members on a pro rata basis.  (*Id.*)  Any remaining amount left

2  after this second settlement payment will go to the cy pres designee, Working

3  Wardrobes.  (*Id.* ¶ 17.)

4      In addition to this monetary relief, Home Depot has agreed to no longer use

5  the offending forms, and to use a background check form that complies with the

6  FCRA.  (Amended Settlement ¶ 36.)

## 3.      A Narrow Release

8      In exchange for benefits and for other good and valuable consideration,

9  Settlement Class Members who have not timely and properly opted out of the

10 settlement will release claims limited to those arising out of or relating to the

11 improper disclosures alleged or asserted in the operative Complaint.  This includes

12 the following:

> [A]ny claim for an alleged violation of any provision of
> the Fair Credit Reporting Act, 15 U.S.C. section 1681,
> *et seq.*, the California Consumer Credit Reporting
> Agencies Act, California Civil Code section 1785, *et
> seq.*, the California Investigative Consumer Reporting
> Agencies Act, California Civil Code section 1786, *et
> seq.*, California Business and Professions Code
> section17200, or any comparable provision of federal,
> state or local law in any way alleging or arising out of
> the procurement of, use of, disclosure of intent to
> procure, or authorization to procure or use a consumer
> report, investigative consumer report, credit check,
> background check, criminal history report, reference
> check or similar report.  Specifically excluded from this
> release is any claim for an alleged violation of any
> adverse action requirements of the Fair Credit
> Reporting Act, 15 U.S.C. section 1681, *et seq.*,
> including, without limitation, 15 U.S.C. section
> 1681(b)(3)(A), the California Consumer Credit
> Reporting Agencies Act, California Civil Code section
> 1785, *et seq.*, the California Investigative Consumer
> Reporting Agencies Act, California Civil Code section
> 1786, *et seq.*, California Business and Professions Code
> section 17200, or any comparable provision of federal,
> state or local law alleging or  arising out of adverse
> employment action.   It is expressly intended and
> understood by the Parties that this Settlement
> Agreement is to be construed as a complete settlement,
> accord, and satisfaction of the Settlement Class
> Member's Released Claims.

(Amended Settlement ¶ 45.)  This release is narrowly and appropriately tailored to the allegations asserted by Plaintiff in this Complaint, specifically excluding any adverse action claims.  In addition, Plaintiff Fernandez will execute a broader release, releasing any known or unknown claims she may have had against Home Depot.  (*Id.* ¶ 46.)

### 4.  Proposed Attorneys' Fees, Litigation Expenses, and Service Awards

Plaintiff seeks an order from the Court awarding Class Counsel their reasonable attorneys' fees incurred in this Action in an amount no greater than 30% of the Gross Settlement Fund, and for a reimbursement of out-of-pocket costs. Plaintiff has also applied to the Court for an award of Five Thousand Dollars ($5,000) to Plaintiff Irene Fernandez as consideration for her service as a Named Plaintiff and as consideration for the general release she is giving Home Depot. (Amended Settlement ¶¶ 39, 44.)

### E.  The Notice and Claims Administration Process Were Completed Pursuant to the Court Order

As authorized by the Court's Order preliminarily approving the Settlement Agreement, the Parties engaged KCC to provide settlement administration services. (Declaration of Jeffrey Gyomber ["Gyomber Decl."] ¶ 3.)  KCC's duties have included:  (1) printing and mailing the Notice of Class Action Settlement ("Class Notice"); (2) remailing undeliverable Class Notices; (3) processing Requests for Exclusion; (4) calculating settlement payments (this will include distribution of funds following final approval); and (5) answering questions from Class Members.  (*Id.*)

Following preliminary approval, the Parties provided KCC with the Court-approved Class Notice template.  The Class Notice summarized the Amended Settlement's principal terms, provided Class Members with an estimate of how much they would be paid if the Amended Settlement received final approval, and advised Class Members how to opt out or object to the Settlement.  (*Id.*, Ex. A.)

1    Counsel for Defendant subsequently provided KCC with mailing lists

2    (collectively, the "Class List") which included each Class Member's full name and

3    last known mailing address. (*Id.* at ¶ 4.) The mailing addresses contained in the

4    Class List were processed and updated using the National Change of Address

5    Database maintained by the U.S. Postal Service. (*Id.* at ¶ 6.) Notices of Class Action

6    Settlement were mailed on September 10, 2015. (*Id.* at ¶ 9.)

7    Now that the Response Deadline has passed, Plaintiff can report that less than

8    0.1% of the Settlement Class opted out and only one Class Member objected to the

9    Settlement. (*Id.* at ¶¶ 14-15; Ex. C.) That objection, which involved a Class Member

10    stating "I object" on the back of the mailing envelope with no grounds for the

11    objection, is procedurally defective and should be overruled:



22  **III.  ARGUMENT**

23      **A.    The Court Should Grant Final Approval of the Class Settlement**

24           **1.    The Standard for Final Approval Has Been Met**

25    A class action may only be settled, dismissed, or compromised with the

26    Court's approval. Fed. R. Civ. Proc. 23(e). The process for court approval of a class

27    action settlement is comprised of three principal stages:

28    <u>Preliminary Approval</u>: The proposed settlement agreement is preliminarily

1   reviewed by the Court for fairness, adequacy, and reasonableness.  If the Court
2   believes the settlement falls within the range of reasonableness, such that proceeding
3   to a formal fairness hearing is warranted, it orders notice of the settlement
4   disseminated to the class.  *See* Manual for Complex Litigation § 21.632 (4th ed.
5   2004).

6       Class Notice:  Notice of the settlement is disseminated to the class, giving
7   class members an opportunity to object to the settlement's terms or preserve their
8   right to bring an individual action by opting out.  *See id.*, § 21.633.

9       Final Approval:  A formal fairness or final-approval hearing is held by the
10   Court, at which class members can be heard regarding the settlement, and at which
11   evidence and argument concerning the fairness, adequacy, and reasonableness of the
12   settlement is presented.[2]  Following the hearing, the Court decides whether to
13   approve the settlement and enter a final order and judgment.  *See id.*, § 21.634.

14       The first two steps have been the completed.  The Court has preliminarily
15   reviewed the proposed settlement for fairness and found it to be within the range of
16   reasonableness meriting court approval.  (*See* July 16, 2015, Order Granting
17   Preliminary Approval of Amended Class Action Settlement, Dkt. No. 48.)  In
18   addition, the Claims Administrator has notified Class Members of the Amended
19   Settlement and upcoming fairness hearing as directed by the Court.  (*See generally*

20

21       [2] A proposed class action settlement may be approved if the Court, after
22   allowing absent class members had an opportunity to be heard, finds that the
     settlement is "fair, reasonable, and adequate."  In making this determination, "the
23   court's intrusion upon what is otherwise a private consensual agreement negotiated
     between the parties to a lawsuit must be limited to the extent necessary to reach a
24   reasoned judgment that the agreement is not the product of fraud or overreaching by,
     or collusion between, the negotiating parties, and that the settlement, taken as a
25   whole, is fair, reasonable and adequate to all concerned."  *Rodriguez v. West Publ'g
     Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (*quoting Hanlon v. Chrysler Corp.*, 150
26   F.3d 1011, 1020 (9th Cir. 1998)); *see also Officers for Justice v. Civil Serv. Comm'n*,
     688 F.2d 615, 625 (9th Cir. 1982)  ("voluntary conciliation and settlement are the
27   preferred means of dispute resolution.  This is especially true in complex class action
28   litigation . . . .").

1   Gyomber Decl.)  Plaintiff now asks the Court to grant final approval of the Amended
2   Settlement.

3       The decision about whether to approve the proposed settlement is committed
4   to the sound discretion of the trial judge, and will not be overturned except upon a
5   strong showing of a clear abuse of discretion.  *Hanlon v. Chrysler Corp.*, 150 F.3d
6   1011, 1026-1027 (9th Cir. 1998).  The Ninth Circuit has set forth a list of non-
7   exclusive factors that a district court should consider in deciding whether to grant
8   final approval, namely: (1) the strength of plaintiffs' case, and the risk, expense,
9   complexity, and likely duration of further litigation; (2) the risk of maintaining class
10  action status throughout the trial; (3) the amount offered in settlement; (4) the extent
11  of discovery completed, and the stage of the proceedings; (5) the experience and
12  views of counsel; and (6) the reaction of the class members to the proposed
13  settlement.  *Id.* at 963 (citing *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)).

14      These factors, which are discussed below, confirm that the Amended
15  Settlement is more than fair, reasonable, and adequate for Class Members.  The
16  settlement provides considerable value; Class Members need not bear the risk and
17  delay associated with trial proceedings to obtain these benefits; and the settlement has
18  been met with substantial support and, with one exception  (i.e., barring the deficient
19  "objection"), no opposition from Class Members.

20          **2.     The Settlement Is Reasonable In Light of the Strengths and**
21                  **Weaknesses of Plaintiff's Case**

22      "An important consideration in judging the reasonableness of a settlement is
23  the strength of the plaintiffs' case on the merits balanced against the amount offered
24  in the settlement."  *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221
25  F.R.D. 523, 525-26 (C.D. Cal. 2004).  In assessing the strength of the plaintiff's case
26  and the probability for success, "the district court's determination is nothing more
27  than an amalgam of delicate balancing, gross approximations, and rough justice."
28  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)

(internal quotation omitted).  There is "no single formula" to be applied, but the court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery.  *Rodriguez v. West Pub. Corp*., 563 F.3d 948, 965 (9th Cir. 2009).

Here, there is no dispute that Home Depot used forms that included both the disclosure form and a release of liability on one document.  Plaintiff contends that Home Depot's use of this document in employment applications facially violates the FCRA, which provides, in relevant part:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—(i) *a clear and conspicuous disclosure has been made in writing* to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and (ii) that consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. §1681b(b)(2)(A)(i) (emphasis added).

However, the analysis does not end there.  Plaintiff must also prove that the violation was "willful" under 15 U.S.C. § 1681n(a).  In *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-59 (2007), the United States Supreme Court explained that "willful" applies not only to "knowingly" violating the FCRA, but to actions that constitute a "reckless disregard of statutory duty."  *See also Willes v State Farm Fire & Cas. Co.*, 512 F.3d 565, 566 (9th Cir. 2008) (applying the "reckless disregard" standard).  Although *Safeco* clarified that a plaintiff need not establish that defendant "knowingly and intentionally" committed the violations, the Court left room for defendants to claim "reasonable construction" or even "careless construction" of the Act as a defense.  *See*, *e.g.*, *Shlahtichman v 1-800 Contacts, Inc.*, 615 F.3d 794 (7th Cir. 2010) (holding that a defendant was not liable for statutory damages because the violation arose from a "reasonable construction" that the truncation requirement of §

1681c(g) was inapplicable to email receipts); *Long v Tommy Hilfiger U.S.A.*, 671 F.3d 371(3d Cir. 2012) (holding that defendant were not liable under the FCRA because their practice was merely a "careless interpretation" of the law and is not a "willful" violation).

The availability of these defenses to Home Depot, coupled with Plaintiff's burden to show that Home Depot engaged in "reckless disregard of statutory duty," make it challenging for Plaintiff to prove ultimate liability. *See In re Toys 'R' Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 451 (C.D. Cal. 2014) (finding that the "strength of plaintiff's case" factor "weighs in favor of settlement" where "willfulness" under FCRA is a triable issue); *see also Torres v. Pet Extreme*, No. 13-01778-LJO, 2015 U.S. Dist. LEXIS 5136, *13 (E.D. Cal. Jan. 15, 2015) (Findings & Rec. of Mag. Judge) ("Given the uncertainty of litigating this issue of willfulness [under 15 U.S.C. §1681n]…[this] weighs in favor of settlement").

Indeed, three California district courts recently dismissed similar claims brought by other plaintiffs. *See Coleman v. Kohl's Department Stores, Inc.*, No. 3:15-cv-02588-JCS (Order Granting Defendant's Motion to Dismiss), *9 (N.D. Cal. Oct. 2, 2015) (finding that plaintiffs failed to plead a cognizable violation of the FCRA); *Peikoff v. Paramount Pictures Corp.*, No. 15-cv-00068-VC, Dkt. No. 13 (Order Granting Defendant's Motion to Dismiss), *2 (N.D. Cal. Mar. 25, 2015) (finding that employee's inclusion of a liability waiver provision in an FCRA disclosure is not willful and dismissing claim); *Syed v. M-I LLC*, No. 1:14-742-WBS, 2014 U.S. Dist. LEXIS 150748, **8-10 (E.D. Cal. Oct. 22, 2014) (same). These courts rejected that facial violations alone could merit liability under the FCRA, holding that a defendant cannot be found to have "plausibly" acted in reckless disregard of a statutory duty "even if inclusion of the [waiver] in [defendant's] disclosure form did not comply with a strict reading of 15 U.S.C. §1681b(b)(2)'s requirement that the document consists solely of the disclosure and authorization." *Peikoff*, at *2; *see also Syed*, 2014 U.S. Dist. LEXIS 150748, at *9 (finding that

defendant's understanding of the FCRA as not barring the inclusion of a waiver on the disclosure form is "not objectively unreasonable" and dismissing claim with prejudice). As some courts have categorically rejected the theory of liability advanced here, Plaintiff faces substantial risk of a complete loss in this case.

Moreover, in November, 2015 the United States Supreme Court will hear oral argument in *Spokeo, Inc. v. Robins*, No. 13-1339 (2015), which will decide whether Article III confers standing on a plaintiff who alleges a statutory violation of the FCRA without showing concrete injury. If the defendant prevails before the High Court in its position that Article III standing is satisfied only upon a showing of concrete injury, Plaintiff's claims will likely be extinguished. Plaintiff therefore faces substantial risk that, were she to continue to litigate, her claims would be extinguished by intervening case law.

Notwithstanding the pending *Spokeo* decision, some courts have refused to grant class certification for non-injury statutory violations on the grounds that liability "would be enormous and completely out of proportion to any harm suffered by the plaintiff." *Serna v. Big A Drug Stores, Inc*., No. 07-0276 CJC, 2007 U.S. Dist. LEXIS 82023, *10 (C.D. Cal. Oct. 9, 2007) (quoting *London v. Wal-Mart Stores, Inc*., 340 F.3d 1246, 1255 n.5 (11th Cir. 2003)). While the Ninth Circuit clarified that such matters are properly considered at the merits stage, the court also observed that the district court may have the power to reduce the amount in penalties as "constitutionally excessive" even if the plaintiff were to prevail. *See Bateman v. Am. Multi-Cinema, Inc*., 623 F.3d 708, 723 (9th Cir. 2010). These cases embody the hostility of some courts to these types of statutory injury claims, resulting in a denial of certification or substantially reduced penalty payments.

In light of the challenges Plaintiff faces moving forward, the proposed Settlement represents a fair and adequate resolution of these claims.

### 3.     The Risk, Expense and Complexity of the Case, Including the Risk of Decertification, Favor Approval of the Settlement

While this case is not factually complex, the uncertain legal landscape creates a substantial risk of proceeding to certification and beyond.  As mentioned, the High Court's pending decision in *Spokeo* could well change the entire legal landscape for this kind of action.  The legal uncertainty occasioned by a potentially dispositive decision pending before the Supreme Court dramatically exacerbates the risk of litigation.  The risk of legal changes supports approving this settlement.  *See Torres*, 2015 U.S. Dist. LEXIS 5136, at *14 (describing an FCRA amendment in 2008 that insulated merchants from liability on printed expiration date on a receipt).

Even if *Spokeo* did not extinguish Plaintiff's claims and if she were to prevail at certification, the costs for both parties would mount, and Plaintiff would face "substantial risk of incurring the expense of a trial without any recovery," given the lack of actual injury to class members.  *Toys 'R' Us FACTA Litig*., 295 F.R.D. at 451. As *Coleman*, *Peikoff* and *Syed* demonstrate, Plaintiff's claims, much of which rest on a showing of technical violations, have faced judicial resistance in some courts, resulting in a judgment on the pleadings or summary judgment.  On the other hand, Home Depot would have faced considerable liablity and exposure if Plaintiff had ultimately prevailed.  This type of "all-or-nothing prospect weighs in favor of approval."  *Id*. at 452.

And even if Plaintiff had succeeded in certifying the class, the "risk that a class action may be decertified at any time generally weighs in favor of settlement."  *Lane v. Facebook, Inc*., No. 08-3845-RS, 2010 U.S. Dist. LEXIS 24762, *4 (N.D. Cal. Mar. 17, 2010) (citing *Rodriguez v. West Publishing Corp*., 563 F.3d 948, 966 (9th Cir. 2009)).

Ultimately, in considering the risks of litigation, "a court may consider the vagaries of litigation and compare the significance of immediate recovery by way of compromise to the mere possibility of relief, after protracted and expensive

litigation." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (internal quotations omitted). Here, the Settlement delivers immediate recovery for all Settlement Class Members and avoids the risks and expenses of protracted litigation, including potential interlocutory appeals and an appeal after a trial. This factor supports approving the Settlement. *See In re Portal Software Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886, *3 (N.D. Cal. Nov. 26, 2007) (recognizing that the inherent risks of proceeding to… trial and appeal also support the settlement).

### 4.      The Amount Offered In Settlement Supports Approving the Settlement

The Ninth Circuit instructs that "[t]he proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625 (emphasis in original). Rather, "the very essence of a settlement is compromise." *Id.* at 624. Thus, "the fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998).

The FCRA provides statutory damages of not less than $100 and not more than $1,000 for a willful violation. 15 U.S.C. § 1781n(a)(1)(A). However, without actual injury, "it is unlikely that the class members would receive maximum statutory damages for the conduct at issue." *Torres*, 2015 U.S. Dist. LEXIS 5136, at *15. The proposed recovery for Settlement Class Members is substantial. The Claimants would only have recovered a similar amount if Plaintiff had prevailed at trial, and they now do so without the risk of further litigation. Under the *most conservative* estimate, where a Claimant ends up recovering $12, the recovery still represents 12% of the prossible $100 recovery. *See Toys 'R' Us FACTA Litig.*, 295 F.R.D. at 454 (finding that 5% to 30% of the potential $100 recovery under the FCRA is fair and

1   adequate); *see also, In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th
2   Cir. 2000) (finding a settlement that paid plaintiffs one-sixth of the potential recovery
3   to be fair and adequate).

4        Moreover, as explained, the prospect of a pro-defendant ruling in *Spokeo*
5   looms large, and that risk necessitates a discount on the settlement recovery.

6        Taking the risks into account, the Amended Settlement Agreement should be
7   approved, as it is superior to other settlements recently approved by California district
8   courts involving similar claims since Settlement Class Members here will receive
9   actual cash, rather than coupons or in-store gift cards.  *See*, *e.g.*, *Torres*, 2015 U.S.
10  Dist. LEXIS 5136, at *15-16 (gift cards to Pet Extreme of up to $45 depending on the
11  claims rate); *Toys 'R' Us FACTA Litig.*, 295 F.R.D. at 453 (transferable vouchers
12  ranging from $5 to $30 for use in store).  In short,"[g]iven the likelihood that
13  plaintiff[] would have been unable to prove actual damages and the risk that [she]
14  would have been unable to prove willfullness and recover any damages at all, […]
15  the amount of settlement weighs in favor of settlement."  *Toys 'R' Us FACTA Litig.*,
16  295 F.R.D. at 454.

     **5.    The Amended Settlement Was Finalized After a Thorough**
17
18                      **Investigation**

19       Courts may also consider the extent of discovery and the current stage of the
20  litigation to evaluate whether parties have sufficient information to make an informed
21  decision to settle the action.  *See Linney*, 151 F.3d at 1239.  A settlement negotiated
22  at an earlier stage in litigation will not be denied so long as sufficient investigation
23  has been conducted.  *See Eisen v. Porsche Cars North American, Inc.*, Case No. 11-
24  09405, 2014 U.S. Dist. LEXIS 14301, 2014 WL 439006, at *13 (C.D. Cal. Jan. 30,
25  2014) (finding that counsel had "ample information and opportunity to assess the
26  strengths and weaknesses of their claims" despite "discovery [being] limited because
27  the parties decided to pursue settlement discussions early on.").

28       Plaintiff engaged in extensive investigation and discovery, including reviewing

1    thousands of documents and deposing Home Depot's designated deponent.  (*See*

2    Friedl Decl ¶¶ 3-4.)  Based on this discovery and on their independent investigation

3    and evaluation, Plaintiff's counsel is of the opinion that this Settlement, for the

4    consideration and on the terms set forth in the Amended Settlement Agreement, is

5    fair, reasonable, and adequate, and is in the best interest of the Settlement Class in

6    light of all known facts and circumstances, including the risk of significant delay and

7    uncertainty associated with litigation of this type, as well as the various defenses

8    asserted by Home Depot.

9                    **6.    The Views of Experienced Counsel Should Be Accorded**

10                           **Substantial Weight**

11           The fact that sophisticated parties with experienced counsel have agreed to

12   settle their dispute should be given considerable weight by courts, since "parties

13   represented by competent counsel are better positioned than courts to produce a

14   settlement that fairly reflects each party's expected outcome in the litigation."  *In re*

15   *Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

16           Here, the parties achieved a settlement after a thorough review of relevant

17   documents and informatation, as well as a rigorous analysis of the parties' claims and

18   defenses.  The expectations of all parties are embodied by the Amended Settlement,

19   which, as set forth above, is non-collusive, being the product of arms'-length

20   negotiations and finalized with the assistance of an experienced mediator, with

21   certain terms re-negotiated after review by this Court.

22           Plaintiff was represented by experienced class action counsel possessing

23   significant experience in class action matters.  (*See* Friedl Decl. ¶¶ 8-10, Exh. B.)

24   Likewise, Home Depot's counsel, Quinn Emanuel Erquhart & Sullivan LLP, is one

25   of the preeminent litigation firms in the nation.  Thus, the parties' recommendation to

26   approve this Settlement should "be given great weight." *Eisen v. Porsche*, 2014 WL

27   439006, at *5 (crediting the experience and views of counsel and the involvement of

28   a mediator in approving a settlement resolving automotive defect allegations).

Based on the satisfaction of the *Churchill Village v. Gen. Elec.,* 361 F.3d 566 (9th Cir. 2004) factors, the Court should find the proposed Amended Settlement to be fair and adequate.

### 7.    The Settlment Class Has Responded Positively To The Settlement

In deciding whether to approve a class action settlement, the court may "gauge the reaction of other class members . . . [by] evaluat[ing] the number of requests for exclusions as well as the objections submitted." *In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. at 450. Of 152,535 notices mailed to Class Members in September 2015, only one Class Member filed an objection, and only 138 (0.1%) opted out. (Gyomber Decl. ¶¶ 14-15.) These minuscule numbers show that the class strongly supports the Amended Settlement. *See National Rural Tele. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (finding 0 objections and 16 opt-outs out of 329 class members [4.86%] "strongly support[] settlement"); *Garner v. State Farm Mut. Auto Ins.*, No. 08-1365-CW, 2010 U.S. Dist. LEXIS 49477, *15 (N.D. Cal. Apr. 22, 2010) (finding an opt-out rate of 0.4% supported settlement). "The fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Likewise, the single objection from a Class Member represents an infinitesimal 0.00066% of recipients, demonstrating an overwhelmingly positive reaction to the Settlement. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (affirming finding of favorable class reaction given only 54 objections [0.14%] were received after 376,301 class notices mailed); *Churchill Village, L.L.C.*

1  *v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming finding of favorable class

2  reaction when "only 45 of the approximately 90,000 notified class members [0.05%]

3  objected.").  "By any standard, the lack of objection of the Class Members favors

4  approval of the Settlement."  *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036,

5  1043 (N.D. Cal. 2007) (finding strong positive class reaction where only 3 objections

6  received out of 57,630 notices (0.005%)).

7      Moreover, the single objection should be overruled.  That Objector did not

8  raise any substantive objection.  Rather he merely wrote "I Ray C. Marshick object,"

9  along with the claim number, to the back of the Class Notice envelope.  (*See* Ex. C.)

10  His objection states nothing else and therefore provides no grounds for denying

11  approval of this Settlement.  Moreover, the Objection is procedurally defective, as it

12  was mailed directly to Home Depot's counsel rather than filed with the Court, as

13  specified under the Class Notice.  In any event, this "objection" should be overruled.

14      **B.    The Requested Payment to the Claims Administrator Is Reasonable**

15          **and Should Receive Final Approval**

16      Plaintiff requests final approval of settlement administration costs in an

17  amount to be determined.[3]  KCC has promptly and properly distributed the Class

18  Notice to all Class Members and completed its duties in accordance with the

19  settlement terms and the Court's preliminary approval Order.  (*See generally*

20  Gyomber Decl.)  Accordingly, KCC's reasonable costs and should be accorded final

21  approval along with the rest of the Settlement terms.

22  **IV.   CONCLUSION**

23      The Parties have negotiated a fair and reasonable settlement of a case that

24  provides relief that likely would never have been realized but for this class action.

25  Accordingly, final approval of the Settlement should be granted.

26  ────────────────

27  [3]The amount of KCC's costs were not available at the time of the filing of this
motion.  KCC has indicated that it will provide a supplemental, declaration detailing

28  the admisistrative costs.

1

2   Dated:  November 2, 2015                    Respectfully submitted,

3                                            Capstone Law APC

4

5                                    By:/s/ Robert K. Friedl

6                                       Jordan L. Lurie
                                        Robert K. Friedl
7                                       Tarek Zohdy
                                        Cody R. Padgett
8
                                        Attorneys for Plaintiff Irene Fernandez
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT